UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LAUSTEVEION JOHNSON,<br><br>Plaintiff,<br><br>v.<br><br>A. NUGYEN, et. al.,<br><br>Defendants. | 3:12-cv-00538-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: Doc. # 41 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Plaintiff's motion for preliminary injunction. (Doc. # 41.)[1] In this motion, Plaintiff asserts that he suffered injuries to his back and knees as a result of the alleged excessive force incident that is the subject of this action, and was denied a cane or wheelchair at Ely State Prison (ESP) because ESP has a "no cane or wheelchair policy." (Id. at 1-2.) He seeks an order that he be given a wheelchair while at Ely State Prison (ESP), or alternatively, that he be transferred to Northern Nevada Correctional Center (NNCC) and be issued a wheelchair. (*Id*. at 1.)

After a thorough review, the court recommends that Plaintiff's motion be denied.

## I. BACKGROUND

**A. Parties and Claims**

Plaintiff, a pro se inmate, is in custody of the Nevada Department of Corrections (NDOC), and brings this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl., Doc. # 7 at 1.) The allegations giving rise to this action took place while Plaintiff was housed at ESP and High Desert State Prison (HDSP). (*Id*.) Defendants are Isidro Baca, Renee Baker, Jeremy Bean, Eric

---

[1] Refers to court's docket number.

Burson, G. Carpenter, G. Holliday, John Keast, Dr. Michael Koehn, Cole Morrow, Jennifer Nash, Dwight Neven, A. Nguyen, and Evander Rivos. (Doc. # 7, Screening Order at Doc. # 6.)

In Counts I, II and IV, Plaintiff alleges: Defendant Nguyen frequently calls Plaintiff, who is Muslim, "terrorist," tells him he will "kick [Plaintiff's] ass," and has said "Muslims waged war on our American freedom and democracy," "Muslims should be killed by dropping a bomb on them," and "the Muslim god is the devil." (Doc. # 7 at 6-7.) On January 1, 2012, an officer told Plaintiff to file a grievance because he had not received his Halal/Kosher meal. (*Id.* at 8.) As Plaintiff walked over to get a grievance form, Nguyen asked Plaintiff where he was going, and Plaintiff told him he was going to get a grievance form. (*Id.* at 8, 10.) Nguyen looked at the "kuffi" Plaintiff was wearing and told Plaintiff, "let's go terrorist," and pointed Plaintiff toward the grievance forms. (*Id*.) When Plaintiff started in that direction, Nguyen suddenly and violently struck him on his upper back and shoulder, grabbed Plaintiff's left arm and violently shoved it behind and up Plaintiff's back and tried to ram Plaintiff into a concrete wall. (*Id.*) Plaintiff turned toward Nguyen, and Nguyen started punching him repeatedly. (*Id.* at 8-9, 10.) Plaintiff alleges that Nguyen targeted him because he is Muslim and was acting in retaliation for Plaintiff's attempt to file a grievance. (*Id.* at 10, 22-23.) Plaintiff freed himself and ran to the yard and voluntarily laid face down on the ground. (*Id.* at 9, 10.) Four Doe officers approached and repeatedly shoved their knees into Plaintiff's lower back.  (*Id.* at 9, 12.) He claims he was beaten, slammed to the ground and dragged for fifteen minutes and then was slammed onto a medical cart. (*Id.*) Defendant Holliday yelled at Plaintiff: "They should have killed you! Next time you get a grievance I'm gonna kill yo ass!" (*Id.*)

Plaintiff was transported to medical by cart. Nguyen came to the hospital later and told Plaintiff: "I told you I was gonna get you." (*Id.* at 12.) Later, defendant Holliday brought Plaintiff back to his cell, and violently struck him two or three times in the right jaw, causing Plaintiff (who was handcuffed) to fall. (*Id.* at 9, 12-13.) Holliday said: "No! I bet yo ass won't file another grievance." (*Id.)* Plaintiff's mouth was full of blood, he was dizzy, and his jaw was swollen and bruised for two to three weeks. (*Id.*) Plaintiff claims that Holliday targeted him because he is Muslim and retaliated against him for attempting to file a grievance. (*Id.*) He avers that a Doe

1  officer failed to intervene when Holliday attacked Plaintiff and neither officer allowed Plaintiff
2  to seek medical attention. (*Id.* at 14.) Plaintiff sustained three loose teeth as well as neck,
3  shoulder and back injuries from the attacks. (*Id.* at 10-11, 13.) He contends that his back injury
4  has made it necessary for him to use a walking cane at age 28. (Id. at 11-12.) He claims that
5  doctors and mental health staff have concluded that he developed Post Traumatic Stress Disorder
6  (PTSD) from the incident, and he suffers from nightmares, loss of appetite and insomnia. (*Id.* at
7  12.) He contends that defendants Nash, Baca, Keast and Carpenter denied his grievances
8  regarding the incident. (*Id.*) Now that he is at ESP, he claims that defendants Baker, Koehn and
9  Rivos have refused to allow him to use a walking cane, and without it, he falls repeatedly and has
10 injured his knee. (*Id.* at 14-15.) He claims that without his cane he cannot exercise. (*Id.* at 15.) In
11 addition, he is unable to shower because he does not have a cane to balance in the shower, and
12 has been forced to wash with toilet water in his cell. (*Id*. at 15.)
13         On screening Plaintiff was permitted to proceed with the following claims steaming from
14 the allegations set forth in Counts I, II, and IV: (1) Eighth Amendment conditions of
15 confinement against Baker, Koehn and Rivos; (2) Eighth Amendment excessive force against
16 Nguyen and Holliday; (3) Eighth Amendment deliberate indifference to a serious medical need
17 against Holliday, Baker, Koehn and Rivos; (4) Eighth Amendment supervisory liability claims
18 against Nash, Baca, Keast and Carpenter; (5) retaliation against Nguyen and Holliday; and (6)
19 equal protection against Nguyen and Holliday. (Doc. # 6 at 5-11.)
20         In Counts III and V, Plaintiff alleges: Nguyen filed a notice of charges against Plaintiff
21 about the incident described above, and defendants Neven, Morrow, Bean, and Burson conspired
22 to find Plaintiff guilty of the notice of charges even though they admitted he was innocent. (Doc.
23 # 7 at 19-20.) They stated that if Plaintiff was not found guilty he would file another lawsuit and
24 be able to use that against the defendants. (*Id.* at 20.) Thus, Plaintiff contends they retaliated
25 against him for the filing of other civil rights lawsuits. (*Id.*) Plaintiff had a disciplinary hearing,
26 but contends he was not given an impartial hearing officer, was not allowed to speak on his own
27 behalf to explain his side of the story, and was not allowed to call witnesses. (*Id.* at 24.)  Plaintiff
28 was found guilty and was sentenced to 572 days in disciplinary segregation, among other

1  sanctions. (*Id.* at 20-21, 24.) Thereafter, Morrow held a classification hearing, reviewed video
2  and determined Plaintiff was not at fault and ordered him released from disciplinary segregation.
3  (*Id.* at 20.) Then, three days later, Bean informed Plaintiff that he, Morrow, Burson and Neven
4  had met and determined they were not going to dismiss the charges because Plaintiff would only
5  use that as evidence in a lawsuit. (*Id.*) Plaintiff was sent back to disciplinary segregation. (*Id.*).
6       On screening, the court concluded that Plaintiff states a colorable Fourteenth Amendment
7  due process claim against defendants Neven, Morrow, Bean and Burson based on these
8  allegations. (Doc. # 6 at 13.)
9  **B. Plaintiff's Motion (Doc. # 41)**
10       Plaintiff requests an order from the court that he be provided with a wheelchair at ESP, or
11  that he be transferred to NNCC and be issued a wheelchair. (Doc. # 41 at 1.) Plaintiff contends
12  that he suffered upper and lower back injuries as a result of the alleged January 1, 2012 excessive
13  force incident that is the subject of this action. (Doc. # 41 at 3.) He states that because of his
14  injuries he experiences sharp pain and falls down. (*Id.*) Plaintiff claims that he notified HDSP's
15  medical department repeatedly that he kept falling due to his injuries, and requested a cane to
16  prevent further injuries, to no avail. (*Id.* at 3-4.) Plaintiff was then transferred to ESP on
17  February 1, 2012 to serve out his disciplinary segregation, but was not provided with a walking
18  cane. (*Id.* at 4.) Plaintiff asserts that ESP refused to give him a cane, repeatedly citing security
19  concerns, so Plaintiff requested a wheelchair, but that request was denied as well. (*Id.*) Plaintiff
20  continued to send kites requesting a cane or wheelchair as he continued to fall as a result of his
21  condition, but his requests were refused. (*Id.* at 5.)
22       Plaintiff contends that if his request for relief is not granted, he will suffer irreparable
23  harm, because without a wheelchair he will continue to fall on a daily basis, and will never be
24  able to shower. (*Id.* at 6.) He also claims he is likely to succeed on the merits on his Eighth
25  Amendment claims, as he can prove the excessive force allegations and resulting injuries that
26  have led to his condition to which Defendants have been deliberately indifferent. (*Id.* at 7-8.) He
27  states that the balance of hardships tips in his favor because the threat of harm to Plaintiff if he is
28  not provided a wheelchair is great, while Defendants will face no burden if the request for an

1  injunction is granted. (*Id*. at 9.) Finally, Plaintiff argues that this is in the public interest because
2  his current condition violates the Constitution. (*Id*. at 9-10.)
3        In support of his motion, Plaintiff filed a declaration that reiterates his version of events.
4  (Doc. # 41 at 55-57, 59-63.) He also provided a declaration of another inmate who attests that he
5  witnessed Plaintiff fall over thirty times in two months. (*Id*. at 58.)  He submitted various kites
6  and grievances where he reported having fallen as a result of his injuries, and requested a cane or
7  wheelchair. (Doc. # 41 at 14-54.)
8  **C. Defendants' Response (Doc. # 44)**
9        Defendants filed an initial response to Plaintiff's motion, arguing that Plaintiff provided
10  no medical support indicating that he needs a wheelchair. (Doc. # 44 at 4.) They likewise
11  contend that none of the grievances or kites he submitted in support of his motion provide any
12  specific details supporting his contention that he needs a wheelchair but was not provided one.
13  (*Id*.) As such, they claim Plaintiff has not established a likelihood of success on the merits, and
14  his motion should be denied. (*Id*.)
15  **D. Plaintiff's Reply (Doc. # 45)**
16        In his reply brief, Plaintiff contends that he provided sixty-two pages of support for his
17  request for an injunction, including declarations, kites and grievances, and Defendants made no
18  mention of any of this evidence in their response. (Doc. # 45 at 4.)
19  **E. Plaintiff's Request for a Hearing; Defendants' Submission of Plaintiff's Medical Records**
20  **& Objection to Hearing (Docs. # 51; # 52; # 58, # 58-1)**
21        Plaintiff filed a motion requesting a ruling or hearing on his motion. (Doc. # 51.)
22        The court set this motion for a hearing on July 28, 2014, but ordered Defendants to file
23  under seal Plaintiff's relevant medical records as they had not been filed in connection with either
24  Plaintiff's motion or Defendants' response. (Doc. # 52.) The court also permitted Defendants to
25  file a declaration by Plaintiff's treating provider(s) addressing the contentions raised in his
26  motion, as they had not done so in their responsive brief. (*Id*.) Defendants subsequently filed the
27  medical records under seal. (*See* Doc. # 55.)
28        While it is in the court's discretion to hold a hearing on any motion pursuant to Local

1. Rule 78-2, Defendants nevertheless filed an objection to Plaintiff's request for a hearing on this motion. (Doc. # 58.) They also filed a declaration from Dr. Koehn. (Doc. # 58-2.) In the objection, they assert arguments not raised in their opposition to Plaintiff's motion for preliminary injunction, including that the motion was based on collateral matters not properly before the court, and that his request for a cane and/or wheelchair was the subject of several prior lawsuits that have been settled, and that the issue is before the court in another case, *Johnson v. Cox*, 3:14-cv-0213-RCJ-WGC. (*Id*. at 1-2.) In addition, Defendants argue that Plaintiff receives adequate medical care, and filed a surveillance video which they claimed depicted Plaintiff's ability to walk without tripping, claiming that this warrants the conclusion that walking does not create a risk of serious or fatal injury to him. (*Id*. at 2-3.) Defendants also reference another video, which they contend shows Plaintiff running across the yard; however, they did not produce an authenticated version of this video to the court or even state when it was filmed. (*Id*. at 3.) Finally, Defendants argue that due to his housing status at ESP, a maximum security prison, canes are not permitted and there are strict guidelines regarding the issuance of a wheelchair. (*Id*.)

In his declaration, Dr. Koehn states that he has seen and examined Plaintiff on many occasions, and has attempted to evaluate his claims of back pain. (Doc. # 58-2 at 1.) He saw Plaintiff on February 24, 2012 related to complaints of back pain, and determined Plaintiff actually had muscle strain, and was issued "the appropriate treatment." (*Id*.) Dr. Koehn states that Dr. Rivas came to the same conclusion. (*Id*.) Plaintiff has been evaluated for the use of an ambulatory device and both Dr. Koehn and Dr. Rivas concluded that Plaintiff does not need a wheelchair or cane. (*Id*.) In addition, he contends these items pose a security risk at a maximum security prison. (*Id*.)

**F. July 28, 2014 Hearing and Order (Docs. # 59, # 61)**

The court held a hearing on Plaintiff's motion on July 28, 2014. (*See* Minutes at Doc. # 61.) Plaintiff and Dr. Koehn both appeared telephonically and were sworn to give testimony. (*Id*. at 1.) The court first noted that the DVD submitted by Defendants (Doc. # 58-1)[2], depicts an

---

[2] The DVD is retained in the Clerk's Office manual filing cabinet.

1  African American male inmate walking with a pronounced limp. (Doc. # 61 at 1.) The DVD was
2  not accompanied by an authenticating declaration; however, Plaintiff and defense counsel both
3  represented to the court at the hearing that the individual depicted in the video is in fact Plaintiff.
4  (*Id*. at 2.)

5  Dr. Koehn represented that he conducted physical examinations of Mr. Johnson on
6  March 9, 2012, and then more recently on June 20, 2014. (*Id*.) While certain brief progress notes
7  mentioned an examination of Plaintiff on June 20, 2014, the medical records filed by Defendants
8  did not include a detailed submission related to this more recent examination, which is
9  particularly relevant to the court's inquiry. (*Id*.) Nor was this examination mentioned in
10 Defendants' opposition to Plaintiff's motion. Dr. Koehn nevertheless represented that his medical
11 opinion based on Plaintiff's latest examination was that Plaintiff did not qualify for the assistance
12 of a wheelchair or cane. (*Id*.)

13 Plaintiff reiterated his argument that he needs a cane as a result of injuries stemming from
14 the January 2012 incident in order to accomplish daily tasks including utilizing the shower, and
15 going to the yard, as he continues to repeatedly fall because of his injuries. (*Id*. at 3.)

16 Prior to the end of the hearing, the court proposed that Plaintiff be seen by an outside
17 orthopedic specialist to render another opinion regarding Plaintiff's complaints of back and knee
18 pain and whether such complaints, if substantiated, necessitate the use of a cane (or wheelchair).
19 (*Id*. at 3-4.) Dr. Koehn advised the court that Dr. Long is an orthopedist who contracts to provide
20 services for  NDOC and holds monthly clinics at the Regional Medical Facility. (*Id*. at 4.)
21 Plaintiff indicated he was agreeable to proceed with this evaluation, and while Defendants did
22 not believe another opinion was necessary, agreed to refer Plaintiff to Dr. Long. (*Id*.)

23 Following the hearing, the court issued an additional order requesting further briefing
24 from Defendants addressing various issues, including: (1) submission of the records from
25 Plaintiff's June 20, 2014 physical examination; (2) a discussion of the administrative regulations,
26 operational procedures, medical directives or other NDOC guidelines addressing the topic of the
27 dissemination of ambulatory aides to inmates and procedures for assessing whether an inmate
28 will be given such an aide, and any document that discusses safety and security issues to be taken

1  into account in this assessment; (3) a discussion of the specific safety and security risks posed by
2  the issuance of a cane or wheelchair to Plaintiff; (3) a response to Plaintiff's argument that he
3  needs a cane or wheelchair to get around his cell, to get to the showers, and to get to the yard by
4  himself; and (4) whether video footage existed of Plaintiff falling on July 28, 2014, as he
5  represented at the hearing. (Doc. # 59.)
6  **G. Defendants' Supplement (Docs. # 64, # 65, # 66)**
7  Defendants filed their supplement on August 12, 2014. (Doc. # 64.) They contend that
8  Plaintiff receives regular, responsive and competent medical care for his back pain. They further
9  argue that Plaintiff cannot establish a likelihood of success on the merits because Plaintiff was
10 denied a cane because it was not medically indicated, as confirmed by various NDOC
11 physicians. (*Id*. at 5-6.) Defendants' position is that Plaintiff has, at best, presented a difference
12 of opinion regarding his treatment which does not amount to deliberate indifference. (*Id*. at 6.)
13 Next, Defendants argue that the balance of hardships weighs in their favor and Plaintiff
14 has no risk of irreparable injury. (*Id*. at 6-7.) Plaintiff was evaluated by NDOC medical on
15 numerous occasions, and none of his treating providers determined he medically required a cane,
16 and as such will not suffer irreparable injury if his motion is not granted. (*Id*. at 6.) In evaluating
17 an inmate to determine whether an ambulatory device is indicated, Dr. Koehn looks at whether
18 there is a lack of mobility, and whether this impairment would interfere with activities of daily
19 living. (Doc. # 65-4 (Koehn Decl.) at 2-3 ¶ 11.) According to Dr. Koehn, Plaintiff has been
20 evaluated by medical staff numerous times since the January 2012 incident and no physician has
21 concluded a cane or wheelchair is medically indicated. (*Id*. ¶¶ 13-22.)
22 According to Warden Baker, she has never denied an inmate a cane if it is medically
23 necessary; therefore, it Plaintiff's circumstances change and it is determined that he needs a cane,
24 he would likely receive one. (Doc. # 64 at 7; Doc. # 65-1 at 3 ¶ 11.) Defendants claim that
25 forcibly compelling them to supply Plaintiff with a cane that is not medically necessary in a
26 maximum security setting would impose a great hardship. (*Id*.) This would provide Plaintiff with
27 a potential weapon that Plaintiff could use to batter individuals or conceal contraband. (*Id*.; Doc.
28 # 65-3 at 3 ¶ 15.)

1     Defendants then address the administrative guidelines for ambulatory devices, pointing to
2 Administrative Regulation (AR) 603, ESP Operational Procedure (OP) 819, and OP 613. (*Id*.;
3 Doc. # 65-1 at 2 ¶ 7; Doc. # 64-5 at 2 ¶ 6.) AR 603 indicates that ambulatory aids will be given
4 "to inmates who have a proven medical condition for which there is medical evidence which
5 supports the use of such device as being necessary to prevent or treat a serious medical
6 condition." (*Id*.) The inmate's physician must submit the request, supported by medical evidence,
7 and it will be reviewed by the Warden, who takes into account the inmate's custody and
8 classification status to determine if there are any safety and security concerns. (*Id*. at 7-8.) If
9 there are safety and security concerns, alternative methods will be explored to assure the inmate's
10 medical needs are met. (*Id*. at 8.)

11     According to Defendants, Plaintiff is classified as a maximum security inmate subject to
12 stringent security guidelines, and cannot go anywhere within ESP without supervision. (*Id*. at 9;
13 Doc. # 65-2 at 3-4 ¶ 14-17; Doc. # 65-3 at 3 ¶ 10.) They contend that Plaintiff has been afforded
14 every opportunity to shower and exercise, but has declined to do so. (*Id*.; Doc. # 65-3 at 4 ¶ 19)

15     Further, he is escorted to and from the showers and yard so he is not at risk of falling.
16 (*Id*.) As of the time of the filing of Defendants' response, Plaintiff's classification status was
17 being reviewed for a possible transfer to HDSP. (*Id*. at 9-10; Doc. # 65-3 at 3 ¶ 10.) Defendants
18 state that Plaintiff is currently housed in a six foot by fourteen foot cell, and an inmate who is
19 "unsure on his feet would still be able to maintain three points of contact anywhere in the cell."
20 (*Id*. at 10.) Additionally, Dr. Koehn concluded that Plaintiff does not have a medical condition
21 that involves a mobility issue that interferes with his daily activities. (*Id*.)

22     Defendants conducted a search of video footage on July 28, 2014, and determined there is
23 no video footage depicting Plaintiff falling on July 28, 2014. (*Id*. at 11; Doc. # 65-3 (Byrne
24 Decl.) at 3 ¶ 16.)

25     Finally, Defendants submitted *all* of Plaintiff's medical records under seal (again), instead
26 of just the record of the June 20, 2014 physical examination, as the court directed. (Docs. # 66,
27 # 66-1, # 66-2, # 66-3.)
28 ///

**H. Plaintiff's Medical Examination (Doc. # 71)**

While the parties originally agreed that Plaintiff would see Dr. Long, in order to have Plaintiff seen as soon as possible, it was arranged that he be examined by Dr. Joseph Walls instead, and this occurred Plaintiff on September 3, 2014. (Doc. # 71.) In his declaration, Dr. Walls confirms that prior to his examination of Plaintiff, the legal complaints that are the subject of this action were not discussed with him. (Doc. # 71-1 at 2 ¶ 4.) Dr. Walls is employed by Tahoe Fracture and Orthopedic Medical Clinic in Carson City, Nevada, and has over twenty-eight years of experience in the practice of medicine and orthopedics. (*Id*. ¶ 7.) In 2013, he contracted with NDOC to provide orthopedic specialty care to inmate's at NNCC's Regional Medical Facility. (*Id*. at 3 ¶ 8.) He continues to practice privately. (*Id*. ¶ 9.)

Plaintiff reported back pain which he incurred after a fight in 2012, and left knee pain that resulted after he banged his left knee on a toilet the previous year. (*Id*. ¶ 14.) He observed Plaintiff to have a normal gait and there were no objective abnormalities in the lumbar back or knee. (*Id*. ¶ 15.) His strength was "4/5" in all muscle groups in both legs and both feet. (*Id*.) He had some "non-anatomic" findings such as reporting low back pain when his left leg was lifted to flex his hip, but which he did not report when the same test was performed while he was sitting up. (*Id*. at 4 ¶ 16.) According to Dr. Walls, if Plaintiff had a pinched lumbar nerve, the straight leg test should cause posterior leg pain whether sitting or standing up. (*Id*.) In addition he reported multiple tender sites with palpation, with tenderness reported when other areas were palpated. (*Id*. ¶ 17.) Plaintiff had full sensation in both legs and symmetric reflexes, suggesting the nerves from the back to his legs were functioning well, and he had full left knee motion and no knee swelling suggesting any injury. (*Id*. ¶ 18.) Dr. Johnson opined that Plaintiff's subjective complaints of back and knee pain were unsupported by any objective finding. (*Id*. ¶ 19.) The best course of treatment is for Plaintiff to take ibuprofen as needed for pain, and he does not need a cane or wheelchair. (*Id*. ¶ 21.)

**I. Plaintiff's Response (Doc. # 77) and Request to Consider Additional Records (Doc. # 81)**

Plaintiff filed a response where he argues that Dr. Walls' opinions were dictated by the Deputy Attorney General handling this case. (Doc. # 77.) Plaintiff also states that he was recently

- 10 -

1  seen by another doctor at NNCC who diagnosed Plaintiff with arthritis in his back and knee. (*Id*.
2  at 2; Doc. # 81 at 1.) This doctor prescribed Plaintiff pain pills, muscle pain reliever, and
3  stretching exercises to help build strength in his knee and back. (Doc. # 81 at 1.) He contends
4  that a diagnosis of arthritis in his knee and back necessitates a cane. (*Id*.)
5        Plaintiff filed a motion requesting that the court consider these medical records in
6  connection with his motion for a preliminary injunction. (Doc. # 81.) Defendants did not object,
7  and filed the records under seal. (Docs. # 85, # 86.) The court granted Plaintiff's motion.
8  **J. September 12, 2014 Medical Records (Doc. # 86)**
9        Plaintiff saw a physician on September 12, 2014, and complained of back pain for two
10 and a half years, since January 2012, as well as left knee pain. (Doc. # 86-1 at 5.) The provider
11 concluded that at that time, "a cane is not indicated." (*Id*. at 6.)

## II. LEGAL STANDARD

13       The purpose of a preliminary injunction or temporary restraining order is to preserve the
14 status quo if the balance of equities so heavily favors the moving party that justice requires the
15 court to intervene to secure the positions until the merits of the action are ultimately determined.
16 *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an
17 "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S.
18 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the
19 competing claims of injury and must consider the effect on each party of the granting or
20 withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555
21 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires
22 that the court determine whether Plaintiff has established the following: (1) he is likely to
23 succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary
24 relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.
25 *Id.* at 20 (citations omitted).
26       Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test for
27 issuing a preliminary injunction that allowed the movant to offset the weakness of a showing on
28 one factor with the strength of another. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127,

1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high...This Court has never rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or "serious questions" test "survives...when applied as part of the four-element *Winter* test." *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id*.

An even more stringent standard is applied where mandatory, as opposed to prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same general principles inform the court's analysis, "[w]here a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo pendente lite, courts should be extremely cautious about issuing a preliminary injunction." *Martin v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted). Thus, an award of mandatory preliminary relief is not to be granted unless both the facts and the law clearly favor the moving party and extreme or very serious damage will result. *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n doubtful cases" a mandatory injunction will not issue. *Id*.

Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the

principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. 18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III. DISCUSSION

The court addressed at the July 28, 2014 hearing Defendants' argument that Plaintiff's motion is not properly before the court because it relates to collateral issues; however, the court now reiterates its conclusion that Plaintiff's request for injunctive relief is directly related to his Eighth Amendment claim asserted in his Complaint that when he arrived at ESP defendants refused to allow him to use a walking cane, and without it, he falls repeatedly and has injured his knee. (Doc. # 7 at 14-15.)

Plaintiff must establish that he is likely to succeed on the merits of his Eighth Amendment claim that his physicians were deliberately indifferent to his serious medical needs when they denied his requests for a cane or wheelchair. To do so, Plaintiff must prove he has a serious medical need, and that the Defendants knew of and disregarded an excessive risk to Plaintiff's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012). "A difference of opinion between a physician and the prisoner—or between medical professionals— concerning what medical care is appropriate does not amount to deliberate indifference." *Snow v. McDaniel,* 681 F.3d 978, 987 (9th Cir. 2012) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). Instead, to establish deliberate indifference in the context of a difference of opinion between a physician and the prisoner or between medical providers, the prisoner "'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Assuming without deciding that Plaintiff's medical condition is serious, the court finds that Plaintiff has not established a likelihood of success on the deliberate indifference prong of his Eighth Amendment claim—that Defendants knew of and disregarded an excessive risk to his health. Instead, the evidence reflects that Plaintiff has been examined on many occasions in the past two years related to his complaints of back and knee pain. Some of his providers found that his subjective complaints were not supported by the objective medical findings. Nevertheless, Plaintiff was prescribed ibuprofen and analgesic balm, and subsequently stretching exercises. All of his providers to address the issue have concluded that a cane is not medically indicated.

Plaintiff was seen by Dr. Aranas at HDSP roughly a month after the January 2012 incident, and Dr. Aranas concluded that Plaintiff was in no distress, had good strength, and found no physical injuries. (Doc. # 55-1 at 136.) Plaintiff was seen by Dr. Koehn on February 24, 2012, for complaints of upper back pain. (Doc. # 55-1 at 135.) At that time, Plaintiff reported doing an average of 100 pull-ups a day at when he was at HDSP. (*Id*.) Dr. Koehn noted that Plaintiff had a normal gait and was able to get up and down from the examination table without difficulty. (*Id*.) He was diagnosed with trapezius muscle strain and prescribed ibuprofen and analgesic balm. (*Id*.)

Plaintiff was seen by Dr. Koehn for a physical examination on March 9, 2012, and nothing of note was indicated in the progress notes other than hypertension. (Doc. # 55-1 at 134, Doc. # 66-3 at 55.)

Plaintiff was then seen on June 6, 2012, by Dr. Rivas, after he had requested a cane. (Doc. # 55-1 at 134.) Plaintiff did not report numbness, tingling sensation, weakness or limping, and his deep tendon reflexes were normal. (*Id*.) Plaintiff complained of pain in his back when pressure was put on his head. (*Id*.) According to Dr. Koehn this test is performed to evaluate the patient for malingering as a complaint of back pain with compression is a strong indicator of malingering. (Doc. # 65-4 at 3 ¶ 17.) Plaintiff was prescribed ibuprofen for pain, and analgesic cream, and Dr. Rivas concluded that Plaintiff did not qualify for a cane. (Doc. # 66-3 at 36.) On June 13, 2012, it was noted that Plaintiff was moving around his cell without difficulty, and got up from his bed to the cell door without a limp. (Doc. # 55-1 at 133.) Plaintiff continued to be

1    seen regularly for his hypertension. (Doc. # 55-1 at 131-133.)

2          Plaintiff was seen by Dr. Koehn for his physical examination on June 25, 2013, and
3    nothing of significance was reported. (Doc. # 55-1 at 132, Doc. # 66-3 at 53.)

4          Dr. Koehn evaluated Plaintiff for his complaints of back pain on April 8, 2014. Plaintiff
5    was referred to William B. Ririe Hospital for an x-ray of his lumbar spine. (Doc. # 66-3 at 34,
6    49.) Plaintiff underwent the x-ray of his lumbar spine on April 15, 2014, and the results were
7    normal, with no significant degenerative changes noted. (Doc. # 55-1 at 109.)

8          Plaintiff saw Dr. Koehn for a physical examination on June 20, 2014. (Doc. # 66-3 at 25,
9    58.) Dr. Koehn noted that Plaintiff attempted to vary the strength in his left leg. (*Id.* at 58.) There
10   was no evidence of neurological impairment or atrophy. (*Id.*) Following this examination,
11   Dr. Koehn concluded that a cane was not medically indicated. (Doc. # 65-4 at 4 ¶ 22.)
12   Additionally, Dr. Koehn concluded that Plaintiff does not have a medical condition that involves
13   a mobility issue that interferes with his daily activities. (*Id.*)

14         Following the July 28, 2014 hearing on this motion, Plaintiff was examined by Dr. Walls
15   on September 9, 2014. (Docs. # 71-1, # 71-2.) Plaintiff complained of lumbar back pain and
16   anterior left knee pain, and indicated ibuprofen helped. (Doc. # 71-1 at 3 ¶ 15.) Dr. Walls
17   observed Plaintiff to have a normal gait, and did not note any objective abnormalities in the
18   lumbar back or left knee. (*Id.*) Plaintiff's strength was "4/5" in all muscle groups in both legs and
19   both feet. (*Id.*) There was no effusion on the range of motion in the left knee. (*Id.*) Dr. Walls
20   reported various non-anatomic findings including that Plaintiff reported low back pain when
21   Dr. Walls lifted his left leg to flex his hip when he was lying down, but did not report pain when
22   the same test was performed while he was sitting up. (*Id.* at 4 ¶ 16.) Dr. Walls asserts that the
23   straight leg test should have caused pain whether Plaintiff was sitting up or lying down. (*Id.*) In
24   addition, Plaintiff reported tenderness when areas not associated with the particular muscle or
25   tendon were palpated. (*Id.* ¶ 17.) Plaintiff had full sensation in both of his legs and symmetric
26   reflexes, suggesting that his nerves from his back to his legs were functioning well. (*Id.* ¶ 18.) He
27   had full left knee motion and no knee swelling to suggest an injury to the knee. (*Id.*)

28         Dr. Walls concluded that Plaintiff's subjective back and left knee pain were unsupported

by the objective medical findings. (*Id*. ¶ 19.) He opined that the best course of treatment was for Plaintiff to take ibuprofen for pain as needed, which is the course of treatment that had previously been undertaken by his physicians. (*Id*. ¶ 20.) Finally, Dr. Walls determined Plaintiff does not need the assistance of a cane or wheelchair. (*Id*. ¶ 21.)

Most recently, Plaintiff was seen by a physician on September 12, 2014, for complaints of back pain for over two years, as well as left knee pain. (Doc. # 86-1 at 5.) Plaintiff was prescribed ibuprofen, analgesic and stretching exercises that day. (Doc. # 86-1 at 4.) The physician also opined that at this time a cane is not indicated. (*Id*. at 6.)

Plaintiff clearly disagrees with the course of treatment that has been undertaken for his back and knee pain, and feels that he should be provided with a cane or wheelchair. There is no evidence, however, that Defendants' course of treatment was medically unacceptable or chosen in conscious disregard of an excessive risk to Plaintiff's health. Under these facts, the court cannot conclude Plaintiff has a likelihood of success on the merits on this aspect of his deliberate indifference claim.

Nor has Plaintiff established that he will suffer irreparable injury in the absence of injunctive relief in the face of the opinions of all of his treating medical providers that a cane is not medically indicated.

Having failed to establish these two requisites to injunctive relief, the court must recommend that Plaintiff's motion for a preliminary injunction be denied.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's motion for a preliminary injunction (Doc. # 41).

///

///

///

///

///

1     The parties should be aware of the following:

2     1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to
3     this Report and Recommendation within fourteen days of receipt. These objections should be
4     titled "Objections to Magistrate Judge's Report and Recommendation" and should be
5     accompanied by points and authorities for consideration by the district judge.
6     2. That this Report and Recommendation is not an appealable order and that any notice of
7     appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed
8     until entry of judgment by the district court.

10    DATED: November 14, 2014

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE