1

2

3

4                    UNITED STATES DISTRICT COURT

5                        DISTRICT OF NEVADA

6   LAUSTEVEION JOHNSON,                    3:12-cv-00538-MMD-WGC

7                          Plaintiff,    **REPORT & RECOMMENDATION OF**
                                         **U.S. MAGISTRATE JUDGE**
8        v.
                                         Re: Doc. # 28
9   A. NUGYEN, et. al.,

10                        Defendants.

11          This Report and Recommendation is made to the Honorable Miranda M. Du, United

12   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

13   28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is

14   Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, or in the

15   Alternative, Motion to Enforce Settlement Agreement. (Doc. # 28.)[1] Defendant Cole Morrow

16   filed a joinder to the motion. (Doc. # 35.) In addition, the court granted defense counsel's oral

17   motion for defendant Burson to join in the motion. (*See* Minutes at Doc. # 38.)

18          While Defendants alternatively seek enforcement of a settlement agreement entered into

19   with respect to five cases previously filed by Plaintiff, their own brief acknowledges that the

20   district court has power to enforce a settlement agreement "made in a case currently pending

21   before it." (Doc. # 28 at 7.) None of the five cases that are the subject of the settlement

22   agreement are presently pending before this court. Therefore, the court cannot construe

23   Defendants' motion as one to enforce the settlement agreement. Nevertheless, insofar as

24   Defendants' move for dismissal and summary judgment, the court can review the terms of the

25   settlement agreement to determine whether the release language serves as a bar to Plaintiff

26   bringing certain claims in this action, and will proceed in that fashion. The motion ultimately

27   _____

28   [1] Refers to court's docket number.

relies on materials outside of the complaint and documents the court cannot take judicial notice of (*i.e.*, grievances); therefore, the court will treat the motion as one for summary judgment. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

In their motion, Defendants argue that Plaintiff previously entered into a settlement agreement with respect to various cases which includes language that serves as a bar to Plaintiff brining the claims in this lawsuit. Defendants also contend that Plaintiff failed to exhaust his administrative remedies with respect to one of his claims. Finally, they argue that he cannot maintain his supervisory liability claims because he cannot establish conduct connecting the supervisory defendants to the alleged unconstitutional conduct.

Plaintiff filed a motion requesting a scheduling conference to address whether he could initiate discovery (Doc. # 30), as well as an initial response to Defendants' motion (Doc. # 37). The court held a hearing on December 17, 2013, and ordered, *inter alia*, Defendants to file a supplemental memorandum in support of their motion, and instructed Plaintiff to review the brief and then file a memorandum identifying what discovery he needed to undertake in order to respond to the motion. (Minutes at Doc. # 38.)

Defendants filed a supplemental brief (Doc. # 39), and Plaintiff filed his memorandum (Doc. # 40). The court held another hearing, and confirmed that Plaintiff did not need to undertake any discovery in order to respond to Defendants' motion. (Minutes at Doc. # 49 at 2.) Notwithstanding, the court directed Defendants to submit the grievances pertaining to each of Plaintiff's claims that they contend should be dismissed as a result of a prior settlement agreement entered into by Plaintiff (to determine whether they were submitted before or after February 9, 2012, when the settlement agreement was executed) . (*Id*. at 2-3.) Plaintiff was then directed to submit a memorandum explaining why his claims should not be dismissed. (*Id*. at 3.) Defendants were permitted to file a reply. (*Id*.) Because briefing was still outstanding, the court ordered that Defendants' motion (Doc. # 28) and associated joinders, as well as Plaintiff's initial response, would be denied without prejudice and administratively re-filed to allow briefing to be completed. (*Id*.)

1        In accordance with the court's order, Defendants submitted a correlation of grievances in

2   support of their motion (Doc. # 50), to which Plaintiff filed his response (Doc. # 53). Defendants

3   then filed a reply brief. (Doc. # 62.)

4        After a thorough review, the court recommends that the motion be granted in part and

5   denied in part.

6   **I. BACKGROUND**

7        Plaintiff, a pro se inmate, is in custody of the Nevada Department of Corrections

8   (NDOC), and brings this action pursuant to 42 U.S.C. § 1983. (Pl.'s Compl., Doc. # 7 at 1.) The

9   allegations giving rise to this action took place while Plaintiff was housed at Ely State Prison

10   (ESP) and High Desert State Prison (HDSP). (*Id.*) Defendants are Isidro Baca, Renee Baker,

11   Jeremy Bean, Eric Burson, G. Carpenter, G. Holliday, John Keast, Dr. Michael Koehn, Cole

12   Morrow, Jennifer Nash, Dwight Neven, A. Nguyen, and Evander Rivos. (Doc. # 7, Screening

13   Order at Doc. # 6.)

14        In Counts I, II and IV, Plaintiff alleges: Defendant Nguyen frequently calls Plaintiff, who

15   is Muslim, "terrorist," tells him he will "kick [Plaintiff's] ass," and has said "Muslims waged war

16   on our American freedom and democracy," "Muslims should be killed by dropping a bomb on

17   them," and "the Muslim god is the devil." (Doc. # 7 at 6-7.) On January 1, 2012, an officer told

18   Plaintiff to file a grievance because he had not received his Halal/Kosher meal. (*Id.* at 8.) As

19   Plaintiff walked over to get a grievance form, Nguyen asked Plaintiff where he was going, and

20   Plaintiff told him he was going to get a grievance form. (*Id.* at 8, 10.) Nguyen looked at the

21   "kuffi" Plaintiff was wearing and told Plaintiff, "let's go terrorist," and pointed Plaintiff toward

22   the grievance forms. (*Id.*) When Plaintiff started in that direction, Nguyen suddenly and violently

23   struck him on his upper back and shoulder, grabbed Plaintiff's left arm and violently shoved it

24   behind and up Plaintiff's back and tried to ram Plaintiff into a concrete wall. (*Id.*) Plaintiff turned

25   toward Nguyen, and Nguyen started punching him repeatedly. (*Id.* at 8-9, 10.) Plaintiff alleges

26   that Nguyen targeted him because he is Muslim and was acting in retaliation for Plaintiff's

27   attempt to file a grievance. (*Id.* at 10, 22-23.) Plaintiff freed himself and ran to the yard and

28   voluntarily laid face down on the ground. (*Id.* at 9, 10.) Four officers (sued as John Does)

1    approached and repeatedly shoved their knees into Plaintiff's lower back.  (*Id.* at 9, 12.) He

2    claims he was beaten, slammed to the ground and dragged for fifteen minutes and then was

3    slammed onto a medical cart. (*Id.*) Defendant Holliday yelled at Plaintiff: "They should have

4    killed you! Next time you get a grievance I'm gonna kill yo ass!" (*Id.*)

5         Plaintiff was transported to medical by cart. Nguyen came to the hospital later and told

6    Plaintiff: "I told you I was gonna get you." (*Id.* at 12.) Later, defendant Holliday brought Plaintiff

7    back to his cell, and violently struck him two or three times in the right jaw, causing Plaintiff

8    (who was handcuffed) to fall. (*Id.* at 9, 12-13.) Holliday said: "No! I bet yo ass won't file another

9    grievance." (*Id.*) Plaintiff's mouth was full of blood, he was dizzy, and his jaw was swollen and

10   bruised for two to three weeks. (*Id.*) Plaintiff claims that Holliday targeted him because he is

11   Muslim and retaliated against him for attempting to file a grievance. (*Id.*) He avers that a Doe

12   officer failed to intervene when Holliday attacked Plaintiff and neither officer allowed Plaintiff

13   to seek medical attention. (*Id.* at 14.) Plaintiff sustained three loose teeth as well as neck,

14   shoulder and back injuries from the attacks. (*Id.* at 10-11, 13.) He contends that his back injury

15   has made it necessary for him to use a walking cane at age 28. (Id. at 11-12.) He claims that

16   doctors and mental health staff have concluded that he developed Post Traumatic Stress Disorder

17   (PTSD) from the incident, and he suffers from nightmares, loss of appetite and insomnia. (*Id.* at

18   12.) He contends that defendants Nash, Baca, Keast and Carpenter denied his grievances

19   regarding the incident. (*Id.*) Now that he is at ESP, he claims that defendants Baker, Koehn and

20   Rivos have refused to allow him to use a walking cane, and without it, he falls repeatedly and has

21   injured his knee. (*Id.* at 14-15.) He claims that without his cane he cannot exercise. (*Id.* at 15.) In

22   addition, he is unable to shower because he does not have a cane to balance in the shower, and

23   has been forced to wash with toilet water in his cell. (*Id*. at 15.)

24        On screening Plaintiff was permitted to proceed with the following claims steaming from

25   the allegations set forth in Counts I, II, and IV: (1) Eighth Amendment conditions of

26   confinement against Baker, Koehn and Rivos; (2) Eighth Amendment excessive force against

27   Nguyen and Holliday[2]; (3) Eighth Amendment deliberate indifference to a serious medical need

28   _____

         [2] The screening order did not mention that Plaintiff could proceed with an Eighth Amendment excessive

1   against Holliday, Baker, Koehn and Rivos; (4) Eighth Amendment supervisory liability claims

2   against Nash, Baca, Keast and Carpenter; (5) retaliation against Nguyen and Holliday; and (6)

3   equal protection against Nguyen and Holliday. (Doc. # 6 at 5-11.)

4        In Counts III and V, Plaintiff alleges: Nguyen filed a notice of charges against Plaintiff

5   about the incident described above, and defendants Neven, Morrow, Bean, and Burson conspired

6   to find Plaintiff guilty of the notice of charges even though they admitted he was innocent. (Doc.

7   # 7 at 19-20.) They stated that if Plaintiff was not found guilty he would file another lawsuit and

8   be able to use that against the defendants. (*Id.* at 20.) Plaintiff had a disciplinary hearing, but

9   contends he was not given an impartial hearing officer, was not allowed to speak on his own

10   behalf to explain his side of the story, and was not allowed to call witnesses. (*Id.* at 24.)  Plaintiff

11   was found guilty and was sentenced to 572 days in disciplinary segregation, among other

12   sanctions. (*Id.* at 20-21, 24.) Thereafter, Morrow held a classification hearing, reviewed video

13   and determined Plaintiff was not at fault and ordered him released from disciplinary segregation.

14   (*Id.* at 20.) Then, three days later, Bean informed Plaintiff that he, Morrow, Burson and Neven

15   had met and determined they were not going to dismiss the charges because Plaintiff would only

16   use that as evidence in a lawsuit. (*Id.*) Plaintiff was sent back to disciplinary segregation. (*Id.*)

17        On screening, the court concluded that Plaintiff states a colorable Fourteenth Amendment

18   due process claim against defendants Neven, Morrow, Bean and Burson based on these

19   allegations. (Doc. # 6 at 13.)

20        Defendants subsequently filed the instant motion. (Doc. # 28.)

21   **II. LEGAL STANDARD**

22   **A. Motion for Summary Judgment**

23        "The purpose of summary judgment is to avoid unnecessary trials when there is no

24   dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

25   F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

26   judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*,

27

28   force claim against the Doe defendants. (Doc. # 6.) While Plaintiff states a colorable excessive force claim based on those facts against the Doe defendants, he cannot proceed with his claim against these defendants until they are identified. Plaintiff should be mindful of the time parameters of substituting in the names of any fictitious defendants once a scheduling order is entered in this matter.

525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986)). "The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at

issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by:
> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations,
> stipulations (including those made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary:

(1) determining whether a fact is material; (2) determining whether there is a genuine dispute as

to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

*See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of summary

judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must

come forward with evidence which would entitle it to a directed verdict if the evidence went

uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-50 (citations omitted).

///

**B. Exhaustion**

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 403 (Oct. 20, 2014) (quoting *Jones v. Block*, 549 U.S. 199, 204, 216 (2007)). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id*. (overruling *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) which stated that failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").[3] As such: "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id*., 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id*. at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)). If there are disputed factual questions, they "should be decided at the very beginning of the litigation." *Id*. at 1171.

"If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." *Id*.

"The PLRA mandates that inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." *Id*. (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006)). To be clear, "[a]n inmate is required to exhaust only *available* remedies." *Id*. (emphasis original) (citing *Booth v. Churner*, 532 U.S. 731, 736 (2001)). "To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'" *Id*. (quoting *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)).

---

[3] If, on the other hand, the failure to exhaust is clear from the face of the complaint, the defendant may raise the defense in a motion to dismiss under Rule 12(b)(6). *See id*., 1169. "[S]uch cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint." *Id*. at 1169.

1    Once a defendant shows that the plaintiff did not exhaust available administrative

2    remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is

3    something in his particular case that made the existing and generally available administrative

4    remedies effectively unavailable to him." *Id*. at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d

5    767, 778 n. 5 (9th Cir. 1996)). The ultimate burden of proof, however, remains with the

6    defendant. *Id*.

7    ### III. DISCUSSION

8    **A. Claims Asserted to be Barred by the Settlement Agreement**

9    **1. Summary of Argument**

10    Defendants argue that certain of Plaintiff's claims are barred because he entered into a

11    settlement agreement related to various other cases (referred to in the settlement agreement as the

12    "LITIGATION") which included language where he agreed to release claims that arise out of or

13    relate to the settled litigation. In addition, Defendants contend that by executing the settlement

14    agreement, Plaintiff agreed to waive his right to file a future lawsuit arising from *any* matter

15    which serves as the basis for any administrative grievance, including informal, first and second

16    level grievances, and disciplinary appeals that were filed or submitted before the settlement

17    agreement was executed on February 9, 2012.

18    For some of Plaintiff's claims, Defendants argue that they are expressly related to claims

19    asserted in the settled litigation. For others, Defendants argue that the claims were the subject of

20    grievances and/or disciplinary appeals filed or submitted before February 9, 2012. Finally, as to

21    other claims, Defendants claim that they were raised in a motion for preliminary injunction filed

22    in one of Plaintiff's cases that was subject to the settlement agreement, 2:11-cv-00484-JCM-

23    CWH, and should therefore be dismissed pursuant to the terms of the settlement agreement.

24    Plaintiff argues that his claims in this lawsuit have no relation to the claims that were

25    subject to the settlement agreement. In addition, he contends that grievances filed with respect to

26    his claims in this case were filed *after* February 9, 2012. Finally, he asserts that the claims

27    referenced in the motion for preliminary injunction in 2:11-cv-00484-JCM-CWH are not subject

28    to the terms of the settlement agreement because Judge Mahan specifically ruled Plaintiff could

1    not seek injunctive relief in that case with respect to Nguyen and Holliday because they were not

2    defendants in that case and the conduct referenced was unrelated to the claims being allowed to

3    proceed in that action.

4         **2. The Settlement Agreement**

5         On February 9, 2012, Plaintiff entered into a settlement agreement with the following

6    defendants: Dwight Neven, Brian Ward, Howard Skolnik, Brian Connett, Jennifer Nash, Julio

7    Calderon, Robert Bannister, Rick Murawski, Jerry Howell, Roy Plumlee, James Cox, Fred

8    Harms, Arthur Lindsey, Cole Morrow, Bryant Vaughn, Jack Starling, Willie Clayton, Anthony

9    Scillia, and Ronnie Thompson. (Doc. # 28-1 at 33.)

10        The "LITIGATION" subject to the settlement agreement includes the following cases:

11   3:10-cv-00197-RCJ-VPC, 2:10-cv-02143-JCM-GWF, 2:11-cv-00484-JCM-CWH, A-11-637120

12   (Eighth Judicial District Court, State of Nevada, Clark County), 11-A-001891 (Las Vegas Justice

13   Court). (*Id.* at 33.)

14        The relevant portions of the Settlement Agreement including the following:

                                              I.
15                                      STIPULATIONS

16        ...
17        8. PLAINTIFF desires to fully and finally settle, and to dismiss *with prejudice*, all
     of the actions, suits, causes of action, claims, claims for relief, and proceedings,
     which now exist in, may arise out of, or have a relationship to the LITIGATION.
18        9. PLAINTIFF desires to waive his future right to file a lawsuit arising from any
     and all matters which serve as the basis for any administrative grievances,
19        including informal level grievances, first level grievances, second level
     grievances and disciplinary appeals, filed and/or submitted on or before the date
20   this AGREEMENT is executed by PLAINTIFF in the presence of an NDOC
     employee witness.
21        ...
     12. PLAINTIFF and DEFENDNATS, wish to reach a final settlement of all
22   claims, actions, causes of action, suits, proceedings, demands, damages, costs,
     expenses and fees, whether known or unknown, arising out of and relating to the
23   alleged violations of PLAINTIFF'S rights which serve as the basis for the
     LITIGATION, and any and all matters which serve as the basis for any
24   administrative grievances, including informal level grievances, first level
     grievances, second level grievances and disciplinary appeals, filed and/or
25   submitted on or before the date this AGREEMENT is executed by PLAINTIFF in
     the presence of an NDOC employee witness.
26
     13. It is understood and agreed that this settlement is intended to resolve all
27   claims, actions, causes of action, suits, proceedings, demands, damages, costs,
     expenses and fees, whether known or unknown, arising out of and relating to the
28   alleged violations of PLAINTIFF'S rights which serve as the basis for the
     LITIGATION; specifically including those pled against DEFENDANTS and all

other individuals or entities named as defendants in the LITIGATION.

14. It is understood and agreed that this settlement is intended to resolve all claims, actions, causes of action, suits, proceedings, demands, damages, costs, expenses and fees, whether known or unknown, arising out of and relating to any and all matters which serve as the basis for any administrative grievances, including informal level grievances, first level grievances, second level grievances and disciplinary appeals, filed and/or submitted on or before the date this AGREEMENT is executed by PLAINTIFF in the presence of an NDOC employee witness.

...

## II.
## PROMISES AND PAYMENTS OF THE DEFENDANTS

...

3. [The promises made by Defendants]... shall constitute consideration for the full settlement and compromise of all claims, actions, causes of action, suits, proceedings, demands, damages, costs, expenses and fees, whether known or unknown, arising out of and relating to the alleged violations of PLAINTIFF'S rights which serve as the basis for the LITIGATION, and for PLAINTIFF'S agreement to waive his future right to file a lawsuit arising from any and all matters which serve as the basis for any administrative grievances, including informal level grievances, first level grievances, second level grievances and disciplinary appeals, filed and/or submitted on or before the date this AGREEMENT is executed by PLAINTIFF in the presence of an NDOC employee witness.

...

## III.
## PROMISES OF THE PLAINTIFF

NOW, THEREFORE, for the, valid consideration proffered by DEFENDANTS, and in return for the settlement and compromise of all claims, actions, causes of action, proceedings, demands, damages, costs, expenses and fees, whether known or unknown, arising out of and relating to the alleged violations of PLAINTIFF'S rights which serve as the basis for the LITIGATION, and the future right to file a lawsuit arising from any and all matters which serve as the basis for any administrative grievances, including informal level grievances, first level grievances, second level grievances and disciplinary appeals, filed and/or submitted on or before the date this AGREEMENT is executed by PLAINTIFF in the presence of an NDOC employee witness, PLAINTIFF, LAUSTEVEION JOHNSON (#82138), agrees and promises as follows:

...

6. To waive my future right to file a lawsuit arising from any and all matters which serve as the basis for any administrative grievances, including informal level grievances, first level grievances, second level grievances and disciplinary appeals, filed and/or submitted on or before the date this AGREEMENT is executed by PLAINTIFF in the presence of an NDOC employee witness.

7. To release and forever discharge DEFENDANTS, all other individuals or entities named as defendants in the LITIGATION, the State of Nevada, and all of their legal representatives, heirs, successors, assigns, agencies, divisions, departments, boards, commissions, political subdivisions, legislators, officials, members, agents, contractors, officers, and employees of any kind or nature whatsoever, from any and all claims, actions, causes of action, suits, proceedings, demands, damages, costs, expenses and fees, whether known or unknown, arising out of and relating to the alleged violations of PLAINTIFF'S rights which serve as the basis for any administrative grievances, including informal level grievances,

1      first level grievances, second level grievances and disciplinary appeals, filed
2      and/or submitted on or before the date this AGREEMENT is executed by Plaintiff
    in the presence of an NDOC employee or witness.
    ...
3      12. That PLAINTIFF acknowledges that he has carefully read and fully
    understands all of the provisions and terms of this AGREEMENT, is freely and
4      voluntarily entering into this AGREEMENT, and expressly consents to be bound
    by this AGREEMENT.

5

6      (Doc. # 28-1 at 35-40.)

7      To summarize, the settlement agreement bars Plaintiff from bringing future lawsuits that

8  arise from or are related to the settled litigation, and further bars Plaintiff from bringing a future

9  lawsuit that arises from or relates to matters contained in grievances (at any level) or disciplinary

10 appeals that were submitted or filed prior to February 9, 2012.

11     **3. 2:11-cv-00484-JCM-CWH and the Motion for Preliminary Injunction**

12     Plaintiff's complaint in 2:11-cv-00484-JCM-CWH related to incidents alleged to have

13 occured at HDSP, and on screening the court concluded that Plaintiff could proceed with the

14 following claims: (1) a First Amendment claim that he was denied the right of free exercise of

15 his religion against defendants Lindsey, Calderon, Nash, Day, Hinds, Harms, Baker, Schaff,

16 Carpenter, Fowler, and Neven; (2) a claim under the Religious Land Use and Institutionalized

17 Persons Act (RLUIPA) against defendants Lindsey, Nash, Scillia, Cox, Day, Hinds, Harms,

18 Morrow, Carpenter, Baker, Schaff, Neven, Calderon, and Fowler; (3) an Eighth Amendment

19 excessive force claim against defendant Miller related to an incident on April 18, 2010; (4) an

20 Eighth Amendment deliberate indifference to safety claim against defendants Nash and Triggs

21 related to his assignment to job positions that allegedly exceeded his physical abilities; (5) an

22 Eighth Amendment deliberate indifference to serious medical need claim against defendants

23 Alvarez, Nash, Cox, and Scillia related to injuries he sustained on October 20, 2009 when he fell

24 off of his top bunk; (6) an Eighth Amendment deliberate indifference to serious medical need

25 claim against defendants Miller, Neven, Scillia, Carpenter, Cox and Skolnik stemming from

26 Plaintiff's head injury allegedly suffered as a result of the excessive force incident on April 18,

27 2010; (7) an Eighth Amendment deliberate indifference to serious medical need claim against

28 Nevens and Scillia related to the alleged denial of mental health treatment; and (8) various

retaliation claims for the exercise of his religious rights and right to file grievances against
defendants Lindsey, Nash, Day, Hinds, Alvarez, Miller, Harms, Baker, Schaff, and Neven. (2:11-
cv-00484-JCM-CWH Doc. # 10.)

Defendants are correct that Plaintiff filed a motion for preliminary injunction in 2:11-cv-
00484-JCM-CWH on January 17, 2012. (2:11-cv-00484-JCM-CWH Doc. # 14.) In that motion,
Plaintiff discussed, *inter alia,* incidents that occurred over the course of December 30, 2011 and
January 1, 2012. (2:11-cv-00484-JCM-CWH Doc. # 14 at 4-7.) Specifically, Plaintiff stated that
when he was returning to his unit from an Islamic prayer service on December 30, 2011, A.
Nguyen made the following comment to him: "You fucking terrorist! I'll kick your ass sooner
than later." (*Id*.) Plaintiff went on to describe the alleged assault by Nguyen on January 1, 2012,
that is also alleged in this action. (*Id*. at 5-6.) Plaintiff also referred to Holliday, whom he claims
made the following threatening statement to him: "Next time you want a grievance Imma kill
you. Yeah we gone kill yo muther fucking ass." (*Id*.) Plaintiff asserted that he had been attacked
because he is Muslim and because he was exercising his right to try to file a grievance. (*Id*.)

Next, Plaintiff stated that A. Nguyen wrote a notice of charges against him. (*Id*.) He
suffered injuries as a result of the attack by Nguyen, and indicated that he "mite [sic] need a cane
to walk around with." (*Id*.) The relief sought included a request for a walking cane. (*Id*. at 11.)
He also asked that Holliday not be allowed to kill him for filing grievances, and that A. Nguyen
not be allowed to attack him for being a Muslim and for filing grievances. (*Id*.)

District Judge Mahan issued an order denying Plaintiff's motion for preliminary
injunction. (2:11-cv-00484-JCM-CWH Doc. # 21.) First, Judge Mahan noted that Plaintiff
improperly sought injunctive relief against Nguyen and Holliday, who were not named as parties
in that lawsuit, and as such, the court could not fashion injunctive relief affecting their rights. (*Id*.
at 3-4.)

Second, Judge Mahan concluded that Plaintiff sought to enjoin conduct that was not
related to the underlying lawsuit. (2:11-cv-00484-JCM-CWH Doc. # 21 at 4-6.) He specifically
noted that Plaintiff's request for an order to prevent Holliday and Nguyen from harming him was
beyond the scope of the complaint. (*Id*. at 6.) Judge Mahan correctly advised Plaintiff that he

1  "may not file a complaint in federal court and then use the action as a forum for airing unrelated

2  grievances concerning his incarceration. Such complaints are properly addressed through the

3  prison grievance system, and if they remain unresolved, by filing a new civil rights action." (*Id.*)

4        Third, Judge Mahan addressed Plaintiff's contentions relative to disciplinary proceedings

5  initiated against him. (*Id.* at 6-8.) As it relates to this motion, Judge Mahan discussed the

6  disciplinary proceeding initiated by Nguyen on January 1, 2012. (*Id.* at 7.) While the disciplinary

7  proceeding was beyond the scope of the complaint in 2:11-cv-00484-JCM-CWH, Judge Mahan

8  nonetheless ruled that the disciplinary charge and finding of guilt did not appear to be based on

9  malicious animus, as Plaintiff had suggested, and declined to enter an order enjoining any NDOC

10  employee from filing disciplinary reports against Plaintiff. (*Id.* at 7-8.) The court also addressed

11  Plaintiff's allegation that his right to file grievances was being impeded by correctional staff. (*Id.*

12  at 8.) The court pointed to a submission by the defendants in that case that reflected 259

13  grievances filed by Plaintiff, and concluded that Plaintiff's right to file grievances had not been

14  impeded, and he had not met the standard for preliminary injunctive relief as to that allegation.

15  (*Id.*)

16        Fourth, Judge Mahan discussed Plaintiff's claims of alleged violence and threats of

17  violence. (*Id.* at 8-9.) With respect to Plaintiff's reference in the motion for preliminary

18  injunction that Nguyen threatened violence against him on December 30, 2011, and inflicted

19  violence on him on January 1, 2012, Judge Mahan noted that the video recordings of the incident

20  and notice of charges submitted by the defendants in that action contradicted Plaintiff's unsworn

21  allegations. (*Id.* at 9.) Judge Mahan ultimately concluded that in light of this and because Nguyen

22  was not a defendant in that action, Plaintiff had not met the standard necessary for obtaining

23  preliminary injunctive relief. (*Id.* at 9.)

24        Finally, insofar as it relates to this motion, Judge Mahan addressed Plaintiff's alleged

25  need for medical treatment. (*Id.* at 9-10.)  In his motion, Plaintiff asked that he be provided with

26  pain pills for his back and neck injuries allegedly received from Nguyen, and also asked for

27  Skolnik, Neven, Morrow and Nash to issue him a walking cane because he claimed that some

28  days it was hard to stand up straight and hold his balance due to his "new" back injury. (*Id.* at 9.)

1  Again, while this request was beyond the scope of the complaint, Judge Mahan reviewed a video

2  of the incident and a declaration from HDSP's Director of Nursing. (*Id.* at 10.) Judge Mahan

3  concluded that Plaintiff received a medical evaluation following the altercation on January 1,

4  2012, and received pain medication for his complaints of lower back pain. (*Id.*) According to the

5  nurse, Plaintiff sent a kite on January 12, 2012, requesting pain medication and a walking cane,

6  and was scheduled to be seen by a medical provider to address these complaints. (*Id.*) Judge

7  Mahan concluded that Plaintiff's request for a cane would presumably be addressed at his next

8  visit with prison medical staff, and as such, determined that injunctive relief was not warranted.

9  (*Id.*)

10  **4. Eighth Amendment Conditions of Confinement Claim Against Baker, Dr. Koehn**

11  **and Dr. Rivas**

12        First, Defendants argue that this claim is barred because it was raised in the motion for

13  preliminary injunction in 2:11-cv-00484-JCM-CWH. (Doc. # 28 at 8.)[4]

14        Plaintiff asserts that he did not raise the issue of not being able to exercise or shower, or

15  being forced to bathe in toilet water in the motion for preliminary injunction in 2:11-cv-00484-

16  JCM-CWH. (Doc. # 53 at 6-7.)

17        Plaintiff is correct that he did not raise the issue of being unable to exercise or shower or

18  being forced to use toilet water to bathe in the motion for preliminary injunction. Defendants

19  argue that this claim should be construed broadly as relating to Plaintiff's assertion that he was

20  denied a cane, which led to his inability to shower and exercise and being forced to use toilet

21  water to bathe. Even if the court construed Plaintiff's claim as broad as Defendants suggest—as

22  referring generally to the denial of the cane—in the motion for preliminary injunction, Plaintiff

23  only stated that he "mite [sic] need a cane to walk around with" and then requested the issuance

24  of a walking cane because "some days it's hard for [him] to stand up straight or hold his balance

25  because of this <u>new</u> back injury[.]" (2:11-cv-00484-JCM-CWH at Doc. # 14 at 7, 11.)

26        Moreover, the court disagrees with Defendants that simply referencing a request for a

27
_____

28        [4] Defendants separately argue that the claim related to having to bathe with toilet water should be
dismissed because Plaintiff failed to exhaust his administrative remedies. (Doc. # 28 at 8-9.) This argument will be
addressed, *infra*.

- 15 -

1    walking cane in the motion for preliminary injunction in 2:11-cv-00484-JCM-CWH means that

2    Plaintiff was barred from bringing the conditions of confinement claim in this action as a result

3    of the terms of the settlement agreement. The settlement agreement provides: "PLAINTIFF

4    desires to fully and finally settle, and to dismiss *with prejudice*, all of the actions, suits, causes of

5    action, claims, claims for relief, and proceedings, which now exist in, may arise out of, or have a

6    relationship to the LITIGATION." The inability to exercise or shower and being forced to bathe

7    in toilet water while at *ESP* were certainly not claims asserted in 2:11-cv-00484-JCM-CWH. As

8    Judge Mahan pointed out, Plaintiff was precluded from seeking injunctive relief against Nguyen

9    because he was not a party to that lawsuit, and the incident was not related to the claims

10    proceeding in that action. This court regularly receives motions seeking injunctive relief in pro se

11    inmate civil rights cases on issues unrelated to the claims proceeding in the action in which the

12    motion is filed. The court routinely denies these requests, and advises the plaintiff, as Judge

13    Mahan did in this instance, that he cannot use his lawsuit to air unrelated grievances. Instead, the

14    court directs the plaintiff to utilize the prison grievance system to resolve these complaints, and if

15    unsuccessful, to file a new lawsuit.

16         The Attorney General's Office frequently cites this same authority in opposing motions

17    for injunctive relief on collateral issues. Here, however, the Attorney General's Office is

18    advocating that referencing a collateral claim in a motion for injunctive relief (filed in an earlier

19    case) has a preclusive effect on the inmate's ability to raise the claim in a new lawsuit. This is

20    simply unsupported by the law.  Defendants' position that this result is justified in view of the

21    settlement agreement language is similarly untenable. The settlement agreement is clear that it

22    precludes Plaintiff from brining future claims arising from or related to causes of action or

23    claims for relief asserted in the "LITIGATION"; however, this claim was indisputably not raised

24    in that action and the request for injunctive relief was collateral and was not asserted in the

25    complaint.

26         In their supplemental briefing, Defendants contend that this claim is barred by the

27    settlement agreement because it arose out of the denial of a walking cane, which Plaintiff

28    actually alleged in his complaint in 2:11-cv-00484-JCM-CWH. (Doc. # 39 at 4-5; Doc. # 50 at

5.) A review of that complaint in 2:11-cv-00484-JCM-CWH, however, indicates that Plaintiff requested a walking cane as a result of *an April 2010 alleged incident of excessive force* involving Correctional Officer Miller. No reasonable interpretation of this claim would result in the dismissal of a claim for a walking cane related to a completely separate and distinct allegation of excessive force involving Correctional Officers Nguyen and Holliday on January 1, 2012.

In their second supplemental brief, Defendants maintain their position that this claim relates to Plaintiff's request for a cane, and then argue for the first time that Plaintiff submitted a grievance on January 1, 2012 (number 20062936293), related to the denial of a cane; therefore, they maintain that this claim should be dismissed as a result of Plaintiff's waiver of his right to bring a future lawsuit related to any grievance filed before February 9, 2012. (Doc. # 50 at 6.) Defendants acknowledge that Plaintiff submitted a subsequent grievance on this issue, number 20062938396; but, argue it is duplicative of grievance number 20062936293, and assert that the claim must still be dismissed because the initial grievance on this topic was submitted prior to February 9, 2012. (*Id.* at 6.)

Plaintiff states that this claim revolves around the denial of the cane by these defendants at ESP, and his subsequent inability to exercise or shower and being forced to bathe using toilet water did not present itself until after he was transferred to ESP on February 1, 2012. (Doc. # 53 at 7.) He maintains that he did not initiate the grievance on this issue until February 24, 2012, in grievance 20062939452. (*Id.*)

Grievance 20062936293 is dated January 1, 2012, and in it Plaintiff asserts that he was attacked by Nguyen on the HDSP Unit 10 tier because he is Muslim and because he was attempting to file a grievance. (Doc. # 50-6 at 2, 7-10.) There is no mention of a request for a cane in the informal level grievance. (*Id.*) The informal level grievance was denied, with a statement that Plaintiff was found guilty of a disciplinary charge related to this incident. (Doc. # 50-6 at 3.) Moreover, Plaintiff points out that the alleged excessive force incident involving Nguyen occurred on January 1, 2012 at *HDSP*, while the alleged inability to shower or exercise and being forced to use toilet water to bathe did not occur until after Plaintiff was transferred to

1    *ESP*. According to Plaintiff he did not grieve this issue until February 24, 2012, after the

2    execution of the settlement agreement on February 9, 2012.

3            In sum, the court concludes that Defendants' motion should be denied as to this claim.

4            **5. Eighth Amendment Excessive Force Claim against Nguyen**

5            First, Defendants argue that this claim is barred because it was raised in Plaintiff's

6    January 17, 2012 motion for preliminary injunction in 2:11-cv-00484-JCM-CWH. (Doc. # 28 at

7    9.) Plaintiff acknowledges that he referenced the assault claim involving Nguyen in the motion

8    for preliminary injunction, but Nguyen was not a defendant in that action and the assault incident

9    was not one of the claims proceeding there. (Doc. # 53 at 11-12.)

10           The court's analysis, *supra*, with respect to the reference to claims in the motion for

11   preliminary injunction applies equally to all of Plaintiff's claims, and does not provide a reasoned

12   basis for dismissal.

13           In their supplemental brief, Defendants present the additional argument that this claim is

14   barred by the settlement agreement because the settlement agreement Plaintiff executed also

15   contained a waiver of Plaintiff's right to file a future lawsuit "arising from any and all matters

16   which serve as the basis for any administrative grievances (at any level) ... and disciplinary

17   appeals, filed and/or submitted on or before (February 9, 2012) ..." (Doc. # 39 at 4.) They

18   contend Plaintiff filled out an informal level grievance on January 11, 2012 against Correctional

19   Officer Nguyen, alleging assault and battery. (*Id*. at 5; Doc. # 39-1 at 83.) In their second

20   supplemental brief, they point to grievance number 20062936293, signed on January 1, 2012, as

21   barring this claim. (Doc. # 50 at 6-7.) They acknowledge that Plaintiff filed subsequent

22   grievances on this topic, but maintain that the claim must still be dismissed because the initial

23   grievance was filed prior to February 9, 2012. (*Id*. at 7.)

24           Plaintiff admits that he filed a grievance on January 1, 2012, number 20062936293,

25   which alleges that Nguyen assaulted and battered him; however, he contends that he did not

26   exhaust that grievance number. (*Id*.)

27           Plaintiff acknowledges that he did in fact file a grievance which explicitly addresses this

28   excessive force claim prior to February 9, 2012. While Plaintiff argues that the claim should not

1    be dismissed because he did not complete all levels of the grievance process for that grievance

2    (*i.e.,* by submitting informal, first and second level grievances), that is immaterial under the

3    terms of the settlement agreement. It provides that Plaintiff cannot file a future claim  arising

4    from any matter which services as the basis for an administrative grievance, no matter what level

5    of grievance it is raised in. It does not require complete exhaustion for the waiver to apply.

6    Because the informal level grievance directly relates to it, the Eighth Amendment excessive

7    force claim against Nguyen should be dismissed pursuant to the terms of the settlement

8    agreement.

9        **6. First Amendment Retaliation Claim against Nguyen**

10       First, Defendants argue that this claim is barred because it was raised in Plaintiff's

11   January 17, 2012 motion for preliminary injunction in 2:11-cv-00484-JCM-CWH. (Doc. # 28 at

12   9; Doc. # 39 at 7; Doc. # 50 at 9.)

13       The court has already rejected the argument that the settlement agreement mandates

14   dismissal of a claim because it was mentioned in the motion for preliminary injunction in 2:11-

15   cv-00484-JCM-CWH.

16       In their reply, Defendants point out that Plaintiff concedes this claim was raised in

17   grievance number 20062936293. (Doc. # 62 at 8.) Plaintiff again states that he did not fully

18   exhaust his administrative remedies when he filed his grievance on this issue so it is not barred

19   by the settlement agreement. (Doc. # 53 at 18-19.)

20       In his informal level grievance in grievance number 20062936293 Plaintiff did raise the

21   issue of Nguyen attacking him because he is Muslim and because he was attempting to file a

22   grievance. Again, Plaintiff's failure to complete the grievance process is immaterial under the

23   terms of the settlement agreement. Therefore, this claim should be dismissed.

24       **7. Fourteenth Amendment Equal Protection Claim against Nguyen**

25       First, Defendants argue that this claim is barred because it was raised in Plaintiff's

26   January 17, 2012 motion for preliminary injunction in 2:11-cv-00484-JCM-CWH. (Doc. # 28 at

27   9.)

28       In their second supplemental brief, Defendants also point to grievance number

- 19 -

1   20062936293, where Plaintiff averred that he was attacked because he was Muslim. (Doc. # 50

2   at 10.) This was signed on January 1, 2012; therefore, Defendants argue this claim should be

3   dismissed pursuant to the terms of the settlement agreement. (*Id.*)

4         Plaintiff acknowledges that the Nguyen incident was referenced in grievance

5   20062936293. (Doc. # 53 at 20.)

6         This claim should be dismissed as it is barred by the terms of the settlement agreement.

7   **8. Eighth Amendment Excessive Force Claim against Holliday**

8         First, Defendants argue that this claim is barred because it was raised in Plaintiff's

9   January 17, 2012 motion for preliminary injunction in 2:11-cv-00484-JCM-CWH. (Doc. # 28 at

10   9.) Plaintiff, on the other hand, states that there was no discussion of the excessive force incident

11   with respect to Holliday in the motion for preliminary injunction. (Doc. # 53 at 11-12.)

12         Plaintiff did mention Holliday's alleged threat to kill him for filing grievances in the

13   motion for preliminary injunction (2:11-cv-00484-JCM-CWH Doc. # 14 at 6, 10, 11); however,

14   the court has already concluded that the reference to this claim in an action where Holliday was

15   not a defendant and his alleged conduct was not related to claims proceeding in that action does

16   not result in dismissal of the claim pursuant to the terms of the settlement agreement.

17         In their supplemental brief, Defendants present the additional argument that the Eighth

18   Amendment excessive force claim against Holliday is barred by the settlement agreement

19   because Plaintiff filled out an informal level grievance on January 11, 2012 against Correctional

20   Officer Nguyen, alleging assault and battery. (*Id.* at 5; Doc. # 39-1 at 83.) In their second

21   supplemental brief, they point to grievance number 20062936293, signed on January 1, 2012, as

22   barring this claim. (Doc. # 50 at 6-7.)

23         Plaintiff admits that he filed a grievance on January 1, 2012, number 20062936293,

24   which alleges that Nguyen assaulted and battered him; however, he contends that he did not

25   exhaust that grievance number. (Doc. # 53 at 11-12.) Moreover, he maintains he did not

26   reference the assault by Holliday in that grievance. (*Id.*) According to Plaintiff, he did not file a

27   grievance about the incident with Holliday until February 12, 2012, number 20062938396. (*Id.*)

28         The first grievance page pointed to by Defendants (Doc. # 39-1 at 83) contains no

reference to Holliday, and instead only mentions the alleged assault by Nguyen. The second grievance pointed to by Defendants, number 20062936293, also fails to discuss the alleged excessive force incident involving Holliday. (Doc. # 50-6 at 7-10.) The grievance does not contain any reference to the excessive force claim against Holliday; therefore, Defendants' motion should be denied with respect to this claim.

**9. First Amendment Retaliation Claim against Holliday**

First, Defendants argue that this claim is barred because it was raised in Plaintiff's January 17, 2012 motion for preliminary injunction in 2:11-cv-00484-JCM-CWH. (Doc. # 28 at 9; Doc. # 50 at 9.) They reiterate this argument in their supplemental briefing, where they contend that in that motion, Plaintiff asserted that he was attacked on January 1, 2012 because he is Muslim and for attempting to file a grievance. (Doc. # 39 at 7; Doc. # 50 at 9.) Plaintiff maintains that this claim was not mentioned in the motion for preliminary injunction. (Doc. # 53 at 18-19.)

Once again, the court concludes that the reference to Holliday in the preliminary injunction does not provide a basis for dismissing the claim pursuant to the terms of the settlement agreement. Therefore, Defendants' motion should be denied with respect to this claim.

**10. Fourteenth Amendment Equal Protection Claim against Holliday**

First, Defendants argue that this claim is barred because it was raised in Plaintiff's January 17, 2012 motion for preliminary injunction in 2:11-cv-00484-JCM-CWH. (Doc. # 28 at 9.)  The court rejects this argument for the reasons stated above.

Defendants also point to grievance number 20062936293, where Plaintiff averred that he was attacked because he was Muslim. (Doc. # 50 at 10.) This was signed on January 1, 2012; therefore, Defendants argue this claim should be dismissed pursuant to the terms of the settlement agreement. (*Id.*)

Plaintiff contends that he did not mention this claim in the motion for preliminary injunction or in this grievance, and did not grieve the Holliday incident until February 12, 2012, in grievance 20062938396. (Doc. # 53 at 20.)

In their reply, Defendants acknowledge that the claim against Holliday was not grieved

1    until after February 9, 2012. (Doc. # 62 at 9.)

2         In light of the acknowledgement by Defendants that Plaintiff did not grieve this claim as

3    to Holliday until after February 9, 2012, Defendants motion should be denied as to this claim.

4         **11. Eighth Amendment Deliberate Indifference to Serious Medical Needs Claim**

5    **Against Holliday**

6         This claim is based on Holliday's alleged failure to allow Plaintiff to seek medical

7    attention after assaulting him.

8         Defendants argue in their supplemental briefs that this claim is barred because it was

9    raised in the motion for preliminary injunction in 2:11cv-00484-JCM-CWH. (Doc. # 39 at 6;

10   Doc. # 50 at 7.) Defendants acknowledge that the motion did not mention the denial of medical

11   care by Holliday, but argue that it stems from the altercation and facts that *are* the subject of the

12   motion for preliminary injunction. (Doc. # 39 at 6.)

13        Plaintiff asserts that simply because he mentioned that Holliday threatened him in the

14   motion for preliminary injunction in 2:11-cv-00484-JCM-CWH does not mean that claim should

15   be dismissed in this action. (Doc. # 53 at 14.) Plaintiff contends he first grieved the denial of

16   medical care by Holliday in grievance number 20062938396, which he filed on February 12,

17   2012. (Doc. # 53 at 14.)

18        For the reasons stated above, the court rejects Defendants' argument that Plaintiff's

19   mention of Holliday in the motion for preliminary injunction results in its dismissal pursuant to

20   the terms of the settlement agreement.

21        In their reply brief, Defendants contend that this claim stems from the alleged assault that

22   occurred on January 1, 2012, for which a disciplinary hearing was held on January 12, 2012.

23   (Doc. # 62 at 6.) They assert that at the disciplinary hearing, evidence was presented and argued

24   regarding the medical treatment Plaintiff received. (*Id*. at 6-7.) The medical treatment was also

25   discussed in the disciplinary report. (*Id*.) Plaintiff subsequently appealed the disciplinary action

26   in grievance number 20062936770. (*Id*.) As a result, they argue that this claim should be

27   dismissed because it stems from a disciplinary appeal filed before February 9, 2012, which is

28   barred by the terms of the settlement agreement.

The court likewise rejects the argument that the disciplinary hearing related to the assault incidents on January 1, 2012 bars this claim under the terms of the settlement agreement. First, the disciplinary hearing was just that—a hearing to determine whether Plaintiff should be disciplined as a result of his conduct that occurred on January 1, 2012. The purpose was to determine Plaintiff's guilt or innocence, not to address his grievance related to the alleged denial of medical care by Holliday. The disciplinary hearing did not serve the purpose of determining the adequacy of medical treatment of Plaintiff in connection with the alleged assaults.

Second, Defendants represent that at the hearing, evidence was presented and argued regarding Plaintiff's medical treatment after the altercation with officers. (Doc. # 50 at 8; Doc. # 62 at 7.) To support this representation they point the court to Exhibit D filed in connection with Doc. # 50. These documents merely mention that infirmary nurses responded and that Plaintiff was evaluated. (Doc. # 50-5.) They do not establish that Plaintiff's medical care claim was considered in connection with the disciplinary hearing.

Finally, Defendants interpretation of the effect of the disciplinary hearing on this claim distorts the purpose of the disciplinary proceeding, where Plaintiff's guilt or innocence was determined, not the adequacy of any medical care provided. It similarly obscures the disciplinary appeal process, which provides a mechanism for Plaintiff to contest his finding of guilt. Therefore, the court concludes that Defendants' motion should be denied as to this claim.

**12. Eighth Amendment Deliberate Indifference to Serious Medical Needs Claim Against Baker, Dr. Koehn and Dr. Rivas**

This claim is based on the failure of these Defendants to provide Plaintiff with a walking cane at ESP. While Defendants do not explicitly mention this claim in their initial motion, they impliedly argue that it is barred because the request for a walking cane was referenced in the motion for preliminary injunction in 2:11-cv-00484-JCM-CWH. (Doc. # 28 at 8.) In their supplemental brief, they argue this claim is barred because the request for a walking cane was raised in prior litigation. (Doc. # 39 at 6.)

The court has already rejected these two arguments in connection with Plaintiff's other claims that Defendants contend relate to the request for a cane.

1    In their second supplemental brief, Defendants contend that Plaintiff submitted a

2    document he self-titled as a "Disciplinary Appeal" on January 19, 2012, number 20062936670,

3    which addressed his medical treatment. (Doc. # 50 at 8; Doc. # 50-9.) Therefore, they conclude

4    this claim is barred as a result of the release language which precluded Plaintiff from filing future

5    lawsuits based on claims asserted in disciplinary appeals filed before February 9, 2012. (*Id.*)

6    As to Baker, Dr. Koehn and Dr. Rivas, Plaintiff confirms that his claim alleges that they

7    were aware that Plaintiff had back and neck injuries that caused him to repeatedly fall, and they

8    denied his resulting request for a cane. (*Id.* at 14-15.) He says that they did so on February 24,

9    2012, citing a "no cane policy." (*Id.* at 15.) He asserts that he originally grieved this issue on

10   February 24, 2012, number 20062939452, as he had no knowledge of the "no cane policy" prior

11   to this time. (*Id.*) He further argues that this claim is not subject to the settlement agreement and

12   was not the subject of the motion for preliminary injunction because the claim did not occur until

13   February 24, 2012. (*Id.* at 15.) He also contends that this claim had nothing to do with a

14   disciplinary appeal. (*Id.*)

15   The subject of the self-titled disciplinary appeal Plaintiff filed that Defendants rely on

16   was Plaintiff's request that he be found not guilty of the charges against him related to the

17   incident on January 1, 2012 (interfering, assault, and running from staff) and resulting sanction

18   of 575 days in disciplinary segregation, 90 day phone loss, stat referral, restitution and transfer.

19   (*See* Doc. # 50-9 at 2, 9-12.) The disciplinary appeal did not mention the alleged failure to

20   provide a cane, and as Plaintiff points out, that claim did not arise until he was informed on

21   February 24, 2012, that there was a "no cane policy" and he would not be receiving the

22   ambulatory aid. As a result, Defendants' motion should be denied with respect to this claim.

23   **13. Supervisory Liability Claims Against Nash, Baca, Keast and Carpenter**

24   On screening, the court determined that Plaintiff stated an Eighth Amendment

25   supervisory liability claim against these defendants related to Plaintiff's allegation that they

26   denied his grievances regarding the January 1, 2012 incident. (Doc. # 6 at 4, 8-9.)

27   Defendants first argue that Plaintiff's supervisory liability claims against Nash, Baca,

28   Keast and Carpenter must be dismissed because Plaintiff cannot establish that these defendants

- 24 -

1   were personally involved in any decisions related to Plaintiff's claims. (Doc. # 28 at 10.)

2         With respect to this argument, Defendants contend Plaintiff cannot *establish* his claims

3   against them, yet provide absolutely no support for their position. Ruled 56 requires:

4         A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
5         (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
6         (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
7

8   Fed. R. Civ. P. 56(c)(1)(A), (B).

9         Defendants simply provide the conclusory statement that Plaintiff cannot establish his

10  claims without pointing to any material in the record to bolster their claim. Therefore, they have

11  not met their burden under Rule 56 insofar as this argument is concerned.

12        In their supplemental brief, Defendants argue for the first time that Plaintiff's supervisory

13  liability claims against defendants Nash, Baca, Keats and Carpenter are barred because they were

14  covered by the prior release. (Doc. # 39 at 7.) Specifically, they contend that insofar as the

15  claims relate to the January 1, 2012 excessive force incident, this claim "was previously

16  dismissed pursuant to the February 9, 2012 release." (*Id*.) This is because Plaintiff filed an

17  informal level grievance related to that incident on January 11, 2012, and Plaintiff's release

18  waived his right to file a future lawsuit stemming from any grievance filed prior to execution of

19  the release. (*Id*.)

20         In their second supplemental brief, they further argue that the underlying conduct for the

21  supervisory liability claims was the subject of the preliminary injunction in 2:11-cv-00484-JCM-

22  CWH, and should therefore be dismissed. (Doc. # 50 at 9.) The court has concluded, *supra*, that

23  this does not justify the dismissal of these claims.

24        Plaintiff states that Nash, Baca, Keast and Carpenter violated the Eighth Amendment by

25  setting in motion the Eighth Amendment violations alleged and by refusing to terminate a series

26  of acts by lower-ranking prison officials, which they knew or should have known would cause

27  others to violate his rights. (Doc. # 37 a 29.) He goes on to argue that they knew he was being

28  retaliated against because he was Muslim and a litigant, and failed to prevent him from being

1    attacked; they knew he needed a walking cane; they knew he had a history of psychological

2    problems and needed mental health care; and knew that HDSP had a problem of inmates being

3    assaulted by staff. (*Id*. at 29-30.)

4           In his second brief, Plaintiff states that this claim centered around the allegation that these

5    defendants knew HDSP prison guards were becoming more violent and were assaulting inmates,

6    and set in motion and failed to correct the actions of HDSP officials' which caused Plaintiff to be

7    attacked on three occasions. (Doc. # 53 at 16.) He also asserts that they were aware that he had a

8    history of mental illness and caused him to remain on lockdown twenty-four hours a day for a

9    long period of time which exacerbated his mental health problems. (*Id*. at 17.) He claims he filed

10   his first grievance on this issue on March 6, 2012, number 20062939638. (*Id*.)

11          In their reply, Defendants point out that Plaintiff now argues that these claims are based

12   on his history of mental health problems, contrary to the screening order's interpretation of this

13   claim. (Doc. # 62 at 7-8.) They maintain, rather, that this claim centers on the allegation that

14   these defendants denied Plaintiff's grievances related to the January 1, 2012 incident, and are

15   therefore liable for the Eighth Amendment violations of their subordinates and should be

16   dismissed because this was the subject of the motion for preliminary injunction. (*Id*.)

17          The court agrees with Defendants' characterization of Plaintiff's supervisory liability

18   claim; however, the court does not wholly agree with Defendants' conclusion that the

19   supervisory liability claims should be dismissed. Defendants' motion should be granted as to

20   these Defendants insofar as the court has already recommended granting the motion as to certain

21   alleged constitutional violations that form the underlying basis for the supervisory liability

22   claims against these defendants (*i.e.*, he Eighth Amendment excessive force claim against

23   Nguyen; the First Amendment retaliation claim against Nguyen; and the Fourteenth Amendment

24   equal protection claim against Nguyen.) Insofar as the other claims that provide the basis for

25   Plaintiff's supervisory liability claims against these defendants are concerned, Defendants'

26   motion should be denied. The fact that the claims were mentioned in the motion for preliminary

27   injunction is immaterial, and the remaining claims are not otherwise subject to the terms of the

28   settlement agreement.

1      **14. Fourteenth Amendment Due Process Claim against Neven, Morrow, Bean and**

2 **Burson**

3      In this claim, Plaintiff alleges that these defendants conspired to find Plaintiff guilty even

4 though they admitted he was innocent.

5      First, Defendants argue that this claim is barred because it was raised in Plaintiff's

6 January 17, 2012 motion for preliminary injunction in 2:11-cv-00484-JCM-CWH. (Doc. # 28 at

7 9.)

8      Second, Defendants argue in their supplemental briefing that this claim is barred by the

9 prior settlement agreement because the disciplinary hearing occurred before Plaintiff executed

10 the release, and by executing the settlement agreement, Plaintiff waived his right to file a future

11 lawsuit related to a disciplinary appeal that occurred prior to February 9, 2012. (Doc. # 39 at 8-9;

12 Doc. # 50 at 11.) In their second supplemental brief, Defendants further point out that Plaintiff

13 filed a document on January 19, 2012, which he titled "disciplinary appeal," and alleged a

14 conspiracy to find him guilty. (Doc. # 50 at 11.)

15      Plaintiff concedes that this claim was in fact addressed prior to the execution of the

16 February 9, 2012 settlement agreement. (Doc. # 53 at 21.)

17      The court agrees that this claim was the subject of Plaintiff's disciplinary appeal with

18 respect to the January 1, 2012 incident; therefore, this claim should be dismissed pursuant to the

19 terms of the settlement agreement.

20 **B. Exhaustion**

21      With respect to his Eighth Amendment claim that he was forced to use his toilet water to

22 bathe, Defendants also argue that Plaintiff failed to exhaust his administrative remedies. (Doc. #

23 28 at 8-9.)

24      Plaintiff argues that this claim was exhausted through grievance number 20062939452.

25 (Doc. # 37 at 22, Exhibit A.)

26      Defendants once again run afoul of Rule 56(c) in failing to point to anything in the record

27 that supports their statement that none of Plaintiff's grievances relate to using toilet water to

28 bathe himself. (Doc. # 28 at 8:23-24.) For example, they do not provide a declaration from a

records custodian who has performed a search of the records and concluded that there are no grievances on this topic. The mere inclusion of a conclusory statement that it is the case is insufficient to meet their burden on summary judgment. As such, their motion should be denied as to this claim.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Defendants' motion (Doc. # 28), as follows:

The motion should be **DENIED** as to:

(1) Plaintiff's Eighth Amendment conditions of confinement claim against Baker, Dr. Koehn and Dr. Rivas;

(2) Plaintiff's Eighth Amendment excessive force claim against Holliday;

(3) Plaintiff's First Amendment retaliation claim against Holliday;

(4) Plaintiff's Fourteenth Amendment equal protection claim against Holliday;

(5) Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim against Holliday;

(6) Plaintiff's Eighth Amendment deliberate indifference to serious medical needs claim against Baker, Dr. Koehn and Dr. Rivas;

(7) The supervisory liability claims against Nash, Baca, Keast and Carpenter that are predicated on the alleged civil rights violations committed by Holliday, Baker, Dr. Koehn and Dr. Rivas; and

(8) the Eighth Amendment conditions of confinement claim that he was forced to use toilet water to bathe (insofar as Defendants' argue that Plaintiff failed to exhaust his administrative remedies with respect to this claim);

The motion should be **GRANTED** as to the following claims which should be **DISMISSED WITH PREJUDICE**:

(1) The Eighth Amendment excessive force claim against Nguyen;

(2) The First Amendment retaliation claim against Nguyen;

(3) The Fourteenth Amendment equal protection claim against Nguyen;

- 28 -

(4) The supervisory liability claims against Nash, Baca, Keast and Carpenter that are predicated on the alleged excessive force, retaliation and equal protection violations by Nguyen; and

(5) The Fourteenth Amendment due process claim against Neven, Morrow, Bean and Burson.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: November 24, 2014

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE