1

2

3

4                    UNITED STATES DISTRICT COURT

5                         DISTRICT OF NEVADA

6  LAUSTEVEION JOHNSON,                    Case No. 3:12-cv-00538-MMD-WGC

7                           Plaintiff,     Re:  ECF Nos. 56 and 59 filed in
                                           Case No. 3:14-cv-00213-MMD-WGC
8        v.
                                           **REPORT & RECOMMENEDATION OF**
9  A. NUGYEN, et. al.,                     **U.S. MAGISTRATE JUDGE**

10                          Defendants.

11

12        This Report and Recommendation is made to the Honorable Miranda M. Du, United

13  States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14  28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is

15  Plaintiff's Motion for Summary Judgment. (ECF No. 56.)[1] Defendants' filed a response and

16  Cross-Motion for Summary Judgment (ECF Nos. 58, 59).[2] Plaintiff filed a reply in support of his

17  motion (ECF No. 64), as well as a response to Defendants' cross-motion (ECF No. 63).[3]

18  Defendants filed a reply in support of their motion. (ECF No. 65.)

19        After a thorough review, the court recommends that Plaintiff's motion be denied, and that

20  Defendants' motion be granted in part and denied in part.

21                            **I. BACKGROUND**

22        At all relevant times, Plaintiff was an inmate in the custody of the Nevada Department of

23  Corrections (NDOC). (Pl.'s Am. Compl., ECF No. 11.) He is a pro se litigant and brings this

24  _____

25        [1] Refers to court's electronic case filing (ECF) number.  The motions were filed in case 3:14-cv-00213-
    RCJ-WGC, which was subsequently consolidated into case 3:12-cv-00538-MMD-WGC. (*See* ECF No. 66.)
26  Defendants have filed a motion for summary judgment in 3:12-cv-00538-MMD-WGC, which the court will address
    in due course once the matter is fully briefed. (*See* 3:12-cv-00538-MMD-WGC, ECF No. 131.)
27
          [2] These documents are identical.
28
          [3] These documents are also identical.

action pursuant to 42 U.S.C. § 1983. (*Id.*) The events giving rise to this action took place while Plaintiff was housed in Ely State Prison (ESP). (*Id.*) Defendants are ESP Warden Renee Baker, NDOC Director James Greg Cox, Dr. Michael Koehn, and Correctional Officers Kenneth Spiers, and Rita Little. (*Id.*; Screening Order, ECF No. 10.)[4]

Plaintiff was allowed to proceed with the following claims: (1) a claim for deliberate indifference in violation of the Eighth Amendment against Dr. Koehn, Baker, and Cox related to sexual abuse allegations; (2) a claim for deliberate indifference in violation of the Eighth Amendment in Count I against defendants Baker, Cox, Dr. Koehn, Spiers, and Little related to allegations that the defendants knew he had back and knee injuries but refused to treat Plaintiff by issuing him a cane or wheelchair, causing him to fall repeatedly and further injure himself; (3) an equal protection claim in Count III against defendants Dr. Koehn, Baker and Cox related to allegations that Defendants applied a no-cane and no-wheelchair policy differently to white and black inmates; and (4) a retaliation claim in Count IV against Dr. Koehn, Baker and Cox based on allegations that Dr. Koehn refused to provide Plaintiff medical care and threatened Plaintiff because of his past grievances and lawsuits against Dr. Koehn, and that Baker and Cox knew about these actions. (Screening Order, ECF No. 10.)

Plaintiff contends that since April 2012, Dr. Koehn and Baker have refused to issue him a cane or wheelchair because ESP has a no cane and no wheelchair policy for security reasons. (ECF No. 11 at 5.) Plaintiff asked to be transferred to Northern Nevada Correctional Center (NNCC) or a prison that permits the use of canes and wheelchairs to prevent him from falling, but Cox and Baker told him he could not leave ESP until he completed his disciplinary segregation. (*Id.*) He avers that he completed his disciplinary segregation in March 2013, but Baker, Dr. Kohen, and Cox continued to deny him a transfer and the use of a cane or wheelchair.

---

[4] Defendant Rivas was dismissed without prejudice due to Plaintiff's failure to timely serve him pursuant to Federal Rule of Civil Procedure 4(m). (*See* ECF No. 48.) In addition, defendant Spiers was mistakenly identified by Plaintiff in the amended complaint as Spears. (*See* ECF No. 38.) Finally, Plaintiff had also identified Jane Doe Nurse # 1 and Jane Doe Nurse # 2 in the amended complaint, but did not timely seek leave to amend his pleading to identify and substitute the true defendants in for the doe defendants by the February 21, 2015 deadline set forth in the scheduling order. (*See* ECF No. 20.)

1   (*Id.*) He contends that Baker, Dr. Koehn, Rivas and Cox knew about his medical needs through

2   kites, grievances and lawsuits that had been filed against them. (*Id.*)

3           He then contends that on March 20, 2014, he fell down in his cell and severely injured his

4   knee. (*Id.*) He was in extreme pain and pushed his medical emergency button. (*Id.*) Spiers

5   answered the call. (*Id.* at 5-6.) Plaintiff told Spiers what happened and asked Spiers for a medical

6   emergency grievance and to call medical and tell them to bring a wheelchair because he could

7   not walk. (*Id.* at 6.) Spiers refused to get the grievance or call medical. (*Id.*) Spiers told Plaintiff

8   he had to put a kite in and then when the nurse came around for her rounds, Spiers would have

9   the nurse go to Plaintiff's cell. (*Id.*) When Spiers' shift ended, he told the incoming shift about

10  Plaintiff. (*Id.*)

11          Plaintiff pushed his medical emergency button again, and told Little (who had now come

12  on shift) what happened, and asked her to call medical. (*Id.*) Little said she could not because

13  they would not come for a knee injury. (*Id.*) She told Plaintiff to fill out a kite and she would tell

14  the nurse to go to his cell to pick it up. (*Id.*) Little did not send the nurse to his cell. (*Id.*) He

15  asked her why not, and Little said that the nurse informed her she could not assess or even look

16  at Plaintiff's injuries because he did not have a medical kite in. (*Id.*) Plaintiff responded: "What!?

17  Are y'all trying to kill me? I have a kite filled out and I have many medical kites already in! I

18  can't walk!" (*Id.*) Little said she would tell the next nurse to speak to Plaintiff, but she did not.

19  (*Id.*) When Plaintiff asked her why, Little responded that Plaintiff had "to put in a medical kite

20  and wait to go to sick call like everybody else." (*Id.* at 6-7.)

21          Later that evening, Plaintiff claims that Little told a correctional officer on the tier to

22  order Plaintiff to turn his lights on in his cell. (*Id.*) Plaintiff had to hop and limp to turn on the

23  lights. (*Id.* at 7.) Before he could reach the lights, he fell in front of the officer and hit his left

24  knee on the concrete and his head on the metal sink and toilet. (*Id.*) Plaintiff filed another

25  medical emergency grievance and requested immediate care in the form of a wheelchair, neck

26  brace and pain pills. (*Id.*) Jane Doe Nurse # 2 and a sergeant came to Plaintiff's cell. (*Id.*) Jane

27  Doe Nurse # 2 ordered Plaintiff to go to the door. (*Id.*) Plaintiff tried to stand up but fell on the

28  ground in front of the nurse and had to crawl the rest of the way. (*Id.*) The nurse told Plaintiff,

1   "even though you can't walk, you can crawl so it is not an emergency." (*Id*.) She told Plaintiff to

2   file a kite and he would be seen the next day. (*Id*. at 8.) She denied him pain pills, a wheelchair,

3   and a neck brace. (*Id*.)

4        On March 21, 2014, a nurse came to Plaintiff but she would only address Plaintiff's

5   hypertension and blood pressure issues. (*Id*.) Plaintiff wrote kites to Dr. Koehn and Baker. (*Id*.)

6   Dr. Koehn responded there was no such thing as chronic knee pain and refused to examine

7   Plaintiff. (*Id*.) On April 7, 2014, Dr. Koehn visited Plaintiff. (*Id*.) He said he was there only for

8   Plaintiff's hypertension issues and did not come to assess his head, knee or neck injury. (*Id*.) The

9   nurse with Dr. Koehn asked Plaintiff why he was limping. (*Id*.) Plaintiff started to explain the

10   reasons, but Dr. Koehn interjected, stating Plaintiff had not "been provided with a cane because

11   it could be used in litigation to get [Plaintiff] out of Ely State Prison. (*Id*.)

12        Dr. Koehn told Plaintiff if he kept complaining about falling due to his back and knees,

13   Dr. Koehn would stick his index finger up Plaintiff's rectum and see if Plaintiff still complained

14   about falling and needing a cane. (*Id*.) He also told Plaintiff to beware of requesting a cane,

15   because he would take all of Plaintiff's property and put him in the infirmary for six months to a

16   year. (*Id*.) Plaintiff has not asked for a cane or wheelchair since because of these threats. (*Id*. at

17   9.) Plaintiff asserts that he told Baker and Cox about the threats. (*Id*. at 13.)

18        On June 20, 2014, Plaintiff alleges that Dr. Koehn called him into a side room where

19   Plaintiff thought he was going to have his hypertension checked. (*Id*.) Instead, Dr. Koehn

20   ordered Plaintiff to sit on a table with his eyes closed. (*Id*.) Dr. Koehn then "slowly and sensually

21   rubbed the lower inner part of Plaintiff's thighs." (*Id*.) Dr. Koehn had turned off the lights and

22   placed his head at Plaintiff's crotch level. (*Id*. at 12.) Plaintiff believes Dr. Koehn will sexually

23   assault him, but Baker and Cox still permit Dr. Koehn to examine Plaintiff. (*Id*. at 9, 13.)

24        Both parties move for summary judgment. (ECF Nos. 56, 59.)

25                        **II. LEGAL STANDARD**

26        "The purpose of summary judgment is to avoid unnecessary trials when there is no

27   dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18

28   F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary

judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof. *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of material fact, the opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Id*. Instead, the opposition must go  beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine dispute of material fact for trial. *See Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all

1    justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is

2    merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-

3    50 (citations omitted).

4                                    ### III. DISCUSSION

5    **A. EXTRANEOUS DOCUMENTS IN PLAINTIFF'S MOTION**

6          Plaintiff's motion (ECF No. 56) is interwoven with pages from other cases, and random

7    documents which Plaintiff has drawn an "x" through. This occurs approximately every other

8    page, resulting in the court's needless scrolling through documents to ascertain Plaintiff's

9    arguments and evidence. Plaintiff shall not include these extraneous materials in his filings in the

10   future.

11   **B. NANCY DUNN**

12         Plaintiff's motion contains several references to Nancy Dunn as the nurse he identified in

13   the amended complaint as Jane Doe Nurse #2. (*See, e.g.,* ECF No. 56 at 1.) Plaintiff did not seek

14   to identify and substitute Nancy Dunn in place of Jane Doe Nurse #2 in this case within the time

15   parameters set forth in the scheduling order. (*See* ECF No. 20.) She has not been served with the

16   summons and complaint; therefore, this action is not proceeding against her.

17   **C. MISCELLANEOUS ARGUMENTS IN PLAINTIFF'S OPPOSITION/REPLY BRIEFS**

18         First, Plaintiff states that he was not able to review all of his medical records, study his

19   records, examine them, take notes, or submit his medical records. (ECF No. 63 at 1, 2.) In view

20   of the court's experience with Plaintiff in this and other actions, Plaintiff is a seasoned pro se

21   litigant and is well aware of NDOC's policy of kiting the warden to review medical records. In

22   any event, Plaintiff was specifically advised in Defendants' motion for leave to file the exhibits

23   under seal that he could review the exhibits by submitting a kite. (ECF No. 57 at 2-3.) He is

24   permitted to review and take notes on the records and tab those that he wishes to be copied and

25   submitted to the court in support of a filing.

26         Moreover, as Defendants point out in their reply brief, Plaintiff was in fact able to kite to

27   review his medical records. (ECF No. 65 at 4; Ex. M, ECF No. 65-1.) He was specifically

28   informed when he arrived at Southern Desert Correctional Center that he had exhibits and

1  documents from his legal cases, including the medical records attached as Defendants' Exhibit A

2  in this case, waiting for his review, but he took no action to review them. (ECF No. 65-1.)

3        Second, Plaintiff asserts he was unable to take depositions of defendants and their

4  witnesses. (ECF No. 63 at 2.) Plaintiff could have filed a motion to depose a witness in

5  connection with these motions, but did not do so.[5]

6        Third, he contends that he was transferred from ESP, so he was unable to investigate the

7  facts of the case or get affidavits from witnesses, but does not state what facts he was unable to

8  investigate or identify witnesses from whom he would have obtained affidavits. (ECF No. 63 at

9  2.)

10       Fourth, Plaintiff states that he has evidence he was unable to submit because he was

11 barred him from receiving legal copy work. (ECF No. 63 at 2.) Plaintiff does not describe what

12 additional evidence he has. Moreover, as Plaintiff is well aware, he could have filed a motion for

13 a copy work extension. In addition, his motion for summary judgment is 248 pages, half of

14 which consist of extraneous pieces of paper, so the court is not persuaded by this argument as it

15 appears that he chose not to use his copy work allotment judiciously.

16       Finally, Plaintiff argues that Defendants' motion should be denied because he lacks legal

17 knowledge and training and was not appointed counsel. (ECF No. 63 at 2.) Unfortunately, this is

18 the predicament of almost every pro se inmate litigant. The court has previously found that

19 Plaintiff does not meet the standard for appointment of counsel, and is tasked with doing his best

20 under the circumstances. (*See* ECF No. 40. )The court finds, as it has in the past, that Plaintiff

21 has been able to present his claims and arguments adequately throughout this litigation.

22 ///

23 ///

24 ///

25 ///

26 _____

27    [5] If he did so, he would have been financially responsible for procuring a deposition officer to transcribe the witnesses' testimony and other expenses associated with the deposition. *See Hadsell v. Comm'r Internal Revenue Serv.*, 107 F.3d 750, 752 (9th Cir. 1997); *Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993); *Merchant v. Lopez*, 09CV856WQHNLS, 2010 WL 1948922 (S.D. Cal. May 12, 2010); Fed. R. Civ. P. 31.

28

**D. COUNT 1- EIGHTH AMENDMENT ALLEGED SEXUAL ABUSE-DR. KOEHN, COX, BAKER**

### 1. Standard

"The Eighth Amendment prohibits cruel and unusual punishment in penal institutions." *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012). Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Sexual harassment or abuse of an inmate by a prison official violates the Eighth Amendment. *See Schwenk v. Hartford*, 204 F.3d 1187, 1196-96 (9th Cir. 2000) ("In the simplest and most absolute of terms...prisoners [have a clearly established Eighth Amendment right] to be free from sexual abuse..."); *see also Wood,* 692 F.3d at 1046; *Women Prisoners of the Dist. of Columbia Dep't of Corr. v. Dist. of Columbia*, 877 F.Supp. 634, 665 (D.D.C. 1994) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *aff'd in part and vacated in part*, 93 F.3d 901 (D.C. Cir. 1996). ("[U]nsolicited touching of...prisoners' [genitalia] by prison employees [is] 'simply not part of the penalty that criminal offenders pay for their offenses against society.'").

In evaluating a prisoner's claim, courts consider whether "the officials act[ed] with a sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Wood*, 692 F.3d at 1046 (quoting *Hudson*, 503 U.S. at 8).

Where there is no legitimate penological purpose for a prison official's conduct, courts presume malicious and sadistic intent. *Id*. at 1050. Sexual contact between a prison and a prison guard serves no legitimate role and "is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). In sexual contact cases, there is no lasting physical injury requirement because the only requirement is that the officer's actions be offensive to human dignity. *Schwenk*, 204 F.3d at 1196. The Eighth Amendment's protections do not generally extend to mere verbal sexual harassment. *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

///

1    **2. Analysis**

2         While Defendants argue that there is no genuine dispute of material fact and that they are

3    entitled to summary judgment as a matter of law with respect to this claim, their briefing actually

4    acknowledges a genuine dispute of material fact exists given the parties' differing version of

5    events.

6    **a. Dr. Koehn**

7         The alleged threat of sexual assault made to Plaintiff in April 2014 does not rise to the

8    level of a violation of the Eighth Amendment in and of itself, *see Austin*, 367 F.3d at 1171, but it

9    is a fact relevant to Plaintiff's claim that Dr. Koehn engaged in inappropriate sexual conduct on

10   June 20, 2014. So preliminarily, the parties dispute whether Dr. Koehn threatened Plaintiff with

11   sexual assault in April 2014.

12        According to Plaintiff, Dr. Koehn and a nurse came to treat Plaintiff for chronic care for

13   hypertension on April 7 or 8, 2014. (ECF No. 56 at 7, 11; Pl.'s Aff., ECF No. 56 at 269 ¶ 12.)

14   The nurse asked Plaintiff why he was limping, and he told her about his back injury and two falls

15   on March 20, 2014, and that it would have been prevented if he had a cane or wheelchair. (ECF

16   No. 56 at 7, 11; Pl.'s Aff, ECF No. 56 at 269 ¶ 12.) Instead of treating Plaintiff's injuries,

17   Plaintiff claims that Dr. Koehn told Plaintiff that if he kept complaining about falling, he would

18   take all of his property and stick him in the infirmary for six months to a year, and that he would

19   stick his finger up Plaintiff's rectum. (ECF No. 56 at 5,7; Pl.'s Aff, ECF No. 56 at 269 ¶ 12.)

20        Then, on June 20, 2014, Plaintiff contends that Dr. Koehn called him into a side medical

21   room while in leg and wrist restraints, and in nothing but his boxers, for what Plaintiff thought

22   was to check on his hypertension. (ECF No. 56 at 7, 11, 13; Pl.'s Aff, ECF No. 56 at 271 ¶ 13.)

23   Dr. Koehn then ordered Plaintiff to sit on an elevated table and spread his legs and close his eyes.

24   (ECF NO. 56 at 7, 11, 13; Pl.'s Aff, ECF No. 56 at 271 ¶ 13.) Dr. Koehn got in a lowered chair

25   and pushed it close to Plaintiff so that his head was between Plaintiff's knees and his eyes were

26   level with his "crotch." (Pl.'s Aff, ECF No. 56 at 271 ¶ 13.) As a result of the way Plaintiff was

27   sitting and because he only had short boxers on, his penis was exposed to Dr. Koehn, who looked

28   into Plaintiff's eyes and smiled. (ECF No. 56 at 7, 11, 13; Pl.'s Aff, ECF No. 56 at 271 ¶ 13.)

1    Dr. Koehn asked the correctional officer in the room to turn off the lights. (ECF No. 56 at 7, 11,

2    13; Pl.'s Aff, ECF No. 56 at 271 ¶ 13.) Dr. Koehn then began to slowly and sensually rub his

3    inner thighs for five to seven minutes, causing Plaintiff to unwillingly become aroused. (ECF

4    No. 56 at 7, 11, 13; Pl.'s Aff, ECF No. 56 at 271 ¶ 13.) He asserts that because the lights were

5    off, the officer in the room was barely paying attention and could not see what Dr. Koehn was

6    doing with his hands. (ECF No. 56 at 7, 11, 13.)

7            Defendants, on the other hand, argue that Plaintiff was not sexually assaulted or

8    threatened. According to Defendants, in April 2014, Plaintiff asked whether there were other

9    medical tests which could be performed to evaluate his complaints of back pain. (ECF No. 59 at

10   11; Koehn Decl., ECF No. 59-2 ¶ 22.) Dr. Koehn told Plaintiff he had conducted a variety of

11   tests to objectively evaluate his complaints of back and knee pain, in addition to the x-ray

12   performed by radiologists. (*Id*.) Dr. Koehn advised Plaintiff that if he wanted, a digital rectal

13   exam could be conducted to evaluate his back complaints. (*Id*.) He was informed the test was

14   quick and useful to evaluate trauma by measuring an individual's sphincter tone. (*Id*.) According

15   to Dr. Koehn, when the spinal cord has been negatively affected there is a loss of rectal tone and

16   sphincter reflexes. (*Id*.) Plaintiff informed Dr. Koehn that he was not interested in performing the

17   exam to evaluate his complaints of back pain. (Koehn Decl., ECF No. 59-2 ¶ 23.) Dr. Koehn has

18   no other recollection of speaking to Plaintiff of this procedure. (*Id*.)

19           Defendants assert Dr. Koehn's responses to Plaintiff's questions about additional medical

20   procedures are corroborated by Officer Mingo, who was present during the exam. (ECF No. 59

21   at 12; Mingo Decl., ECF No. 59-7 ¶¶ 4-6.) Dr. Koehn maintains that he did not threaten Plaintiff

22   with the rectal exam, to confiscate his property or to house Plaintiff in the infirmary without

23   cause. (ECF No. 59 at 12; Koehn Decl., ECF No. 59-2 ¶ 25; Mingo Decl., ECF No. 59-7 ¶¶ 6-7.)

24   Defendants assert that Dr. Koehn did advise Plaintiff that if he continued to fall, he would be

25   placed in the infirmary so he could be monitored for his own protection. (ECF No. 59 at 12.)[6]

26           In addition, Defendants argue that Plaintiff was never sexually assaulted or improperly

27   touched on June 20, 2014. (ECF Nos. 58/59 at 7, 13; Ex. B; Ex. K; Ex. G.) During all visits with

28

_____

[6] This statement is not set forth in Dr. Koehn's declaration, however. (*See* ECF No. 59-2.)

Dr. Koehn, they assert that Plaintiff was always accompanied by correctional officers and medical staff. (ECF Nos. 58/59 at 13; Ex. C ¶ 15; Ex. K ¶ 3.) On June 20, 2014, they contend Plaintiff was given a routine physical including evaluation of his hypertension, back and knee complaints, and symptoms related to his alleged falls. (ECF Nos. 58/59 at 13; Koehn Decl., ECF No. 59-2 ¶ 20.)

Dr. Koehn maintains that during the neurological portion of the exam the lights were briefly turned off, but everyone in the room could still be seen, and Plaintiff's eyes were evaluated. (ECF Nos. 58/59 at 13; Koehn Decl., ECF No. 59-2 ¶ 21.) Turning the light off for the portion of the eye exam improves the use of the ophthalmoscope. (*Id*.) Dr. Koehn also performed tests to measure muscle strength in Plaintiff's legs and back, where he touched Plaintiff's arms, back and legs as necessary, with the light on. (*Id*.) The tests that required the touching of Plaintiff's back and legs used the application of minimal opposing pressure to evaluate strength. (*Id*.) Dr. Koehn asserts that he did not touch Plaintiff in an inappropriate sexual manner. (ECF Nos. 58/59 at 13; Koehn Decl., ECF No. 59-2 ¶ 25.) Dr. Koehn argues that his position is corroborated by Officer Crounk, who was present for the entire exam. (ECF Nos. 58/59 at 13; Crounk Decl., ECF No. 59-11 ¶ 5.) According to Officer Crounk, Plaintiff remained clothed for the entirety of the exam, and the officer was clearly able to see and hear Plaintiff throughout the exam. (*Id*. ¶¶ 3, 5, 6.) He asserts that any physical touching between Plaintiff and Dr. Koehn was minimal and only to conduct normal medical tests such as leg lift resistance tests. (*Id*. ¶ 5.) He confirms that the lights were turned off briefly to evaluate Plaintiff's eyes, but the room remained sufficiently illuminated for him to see. (*Id*.)

In light of the differing versions of events, it is not appropriate to grant summary judgment in favor of Plaintiff or Dr. Koehn, and both parties' motions should be denied as to the sexual abuse claim in Count I.

**b. Baker and Cox**

The court must now address the sexual abuse claim insofar as it is asserted against defendants Baker and Cox.

Plaintiff argues that Baker and Cox were aware or should have been aware that

1    Dr. Koehn threatened to sexually assault Plaintiff in April 2014, but continued to allow

2    Dr. Koehn to examine Plaintiff until he was transferred out of ESP on November 20, 2014. (ECF

3    No. 56 at 7, 9, 15, 17; Pl.'s Aff, ECF No. 56 at 271, 273 ¶¶ 14-15.) In addition, he contends that

4    prior to April 7, 2014, Baker and Cox were aware that there were other allegations of sexual

5    misconduct by inmates against Dr. Koehn. (ECF No. 56 at 9, 15, 17; Pl.'s Aff, ECF No. 56 at

6    273 ¶ 15.)

7         Defendants only argument related to Baker and Cox's alleged involvement with this

8    claim is that there can be no supervisory liability on the part of Baker or Cox based on conduct

9    that did not happen. (ECF Nos. 58/59 at 24; ECF No. 65 at 16.) The court has found that a

10   genuine dispute of material fact exists as to what occurred on June 20, 2014; therefore, this

11   argument is inapposite. Moreover, this argument does not directly address the basis of the claim

12   allowed to go forward on screening against Baker and Cox: that Baker and Cox knew about

13   Dr. Koehn's actions, but did not take any action to prevent Dr. Koehn from examining Plaintiff

14   in the future. (*See* ECF No. 10 at 7:26-28, 8:1.)

15        In her declaration, Warden Baker does assert that she did not learn of Plaintiff's

16   allegations that Dr. Koehn threatened him and sexually assaulted him or touched him

17   inappropriately until he filed his grievances. (Baker Decl., ECF No. 59-3 ¶ 13.) She states that

18   when the grievance was received, it was forwarded to the Inspector General's Office for

19   investigation. (*Id*.) In addition, she claims that Plaintiff was aware of his right to refuse treatment

20   by Dr. Koehn, which he has done on many occasions. (ECF No. 59 at 13; Baker Decl., ECF No.

21   59-3 ¶ 15; Ex. A at 136-154.) Moreover, she asserts that all medical appointments are conducted

22   in designated exam areas with custody officers present. (ECF No. 59 at 13; Baker Decl., ECF

23   No. 59-3 ¶¶ 15-16.)

24        In her responses to Plaintiff's interrogatories, Baker acknowledges Plaintiff filed a

25   grievance (20062977300) alleging that Dr. Koehn threatened to take Plaintiff's property for six

26   months to a year, put him in the infirmary and that he would sexually assault Plaintiff. (Baker's

27   Response to Pl.'s Interrogatory No. 8 (Set One), ECF No. 56 at 94.) The informal level grievance

28   in this case is dated by Plaintiff April 8, 2014. (ECF No. 56 at 231, 235-239.) The informal level

grievance was assigned to "DAJONES," and the response contains a transaction date of May 2, 2014. (ECF No. 56 at 229.) The first level grievance is dated June 3, 2014. (ECF No. 56 at 241.) The grievance coordinator signed it on June 6, 2014. (*Id*.) The first level grievance was assigned to "JGARNER," but the inmate grievance report contains the signature of Warden Baker. (ECF No. 56 at 227.) The report has a transaction date of June 20, 2014. (*Id*.) It advises Plaintiff that the grievance would be referred to the Inspector General. (*Id*.)

In his responses to Plaintiff's interrogatories, Cox also admits that Plaintiff filed grievance 20062977300 which alleged that Dr. Koehn threatened to take his property for six months to a year, put him in the infirmary and sexually assault him, but Cox contends he was not made aware of the allegations that Dr. Koehn threatened Plaintiff. (Cox's Response to Pl.'s Interrogatory Nos. 8, 9 (Set One), ECF No. 56 at 106.) This is consistent with the grievance documentation which shows no involvement by Cox. (ECF No. 56 at 225-243.)

One of Plaintiff's exhibits is a kite made out to Warden Baker's attention in April 2014 (the court is unable to determine the exact day written in the kite), stating that Dr. Koehn threatened to sexually assault him that day because he requested a cane and because of his litigation. (ECF No. 56 at 177.) He requested that she preclude Dr. Koehn from examining him again. (*Id*.) Another exhibit is a kite addressed to Warden Baker's attention that is dated May 2, 2014, and asks her to stop Dr. Koehn from being able to interview or examine him. (ECF No. 56 at 185.) He then includes a third another kite sent to Warden Baker's attention that is dated June 3, 2014, which again asks her not to allow Dr. Koehn to call Plaintiff to the infirmary or examine him because he promised to sexually assault Plaintiff. (ECF No. 56 at 183.) There is nothing written in the response portion of the form on any of these kites. (ECF No. 56 at 177, 185.)

When asked whether Dr. Koehn was prohibited from examining Plaintiff after April 2014, Baker responded to Plaintiff's interrogatories that unit medical rooms are only utilized when custody and medical staff are present; that Dr. Koehn is ESP's only physician; and that records indicate Plaintiff was examined by Dr. Koehn on July 25, 2014 and September 25, 2014. (Baker's Response to Pl.'s Interrogatory Nos. 10, 11 (Set One), ECF No. 56 at 95.) Cox likewise

1    acknowledges that Plaintiff's records indicate Plaintiff was examined in unit rooms with officer

2    escort after April 2014, and states that Plaintiff was seen by Dr. Koehn three times after April 8,

3    2014. (Cox's Response to Pl.'s Interrogatory Nos. 10, 11 (Set One), ECF No. 56 at 107; Cox's

4    Response to Pl.'s Interrogatory No. 4 (Set Three), ECF No. 56 at 77-78.) Baker and Cox both

5    state that Plaintiff had a right to refuse to be seen. (Baker's Response to Pl.'s Interrogatory No.

6    15 (Set One), ECF No. 56 at 96-97; Cox's Response to Pl.'s Interrogatory No. 4 (Set Three),

7    ECF No. 56 at 78.)

8         On June 20, 2014, Plaintiff filed a grievance (20062984957), asserting that Dr. Koehn

9    sexually molested him in an ESP exam room. (*See* ECF No. 56 at 247-261.) Plaintiff's exhibits

10   do not contain a response to the informal level grievance. In response to the first level grievance,

11   Baker advised that there was no record of receiving the informal level grievance, but informed

12   Plaintiff that his grievance would be referred to the Inspector General's Office. (ECF No. 56 at

13   249.) There is no evidence Cox received or had any involvement with this grievance. (*See* ECF

14   No. 247-261.)

15        Finally, Plaintiff includes a November 16, 2014 kite addressed to Warden Baker, where

16   he asked to be immediately submitted for transfer related to his allegations against Dr. Koehn.

17   (*Id*. at 169.)

18        With respect to Baker, Plaintiff has produced evidence that he advised Baker via kites

19   and grievances of his allegation that Dr. Koehn threatened to sexually assault him, and requested

20   that she not allow Dr. Koehn to interview or examine him. Plaintiff maintains that he was

21   subsequently sexually molested by Dr. Koehn on June 20, 2014, which Baker could have

22   prevented by precluding Dr. Koehn from examining him. It is undisputed that Dr. Koehn was

23   allowed to see Plaintiff after he submitted these kites and grievances. A genuine dispute of

24   material fact exists, however, as to whether Dr. Koehn threatened Plaintiff with sexual assault in

25   April 2014, and whether Dr. Koehn sexually molested him in June of 2014. Baker's liability

26   under this claim hinges on those factual determinations; therefore, the court cannot recommend

27   that summary judgment be granted in favor of either Plaintiff or Baker.

28

1    With respect to Cox, there is no evidence in the record demonstrating that Cox was made

2  aware of Plaintiff's allegation that Dr. Koehn threatened to sexually assault him or sexually

3  molested him. Plaintiff argues that he advised Cox of this through kites and grievances, but the

4  documents that he relies on do not reveal Cox's involvement.

5    Plaintiff also argues that Cox and Baker are liable because they knew that two other

6  inmates alleged sexual misconduct claims against Dr. Koehn prior to April 2014. In support of

7  this argument he relies on Cox's responses to his interrogatories. Plaintiff asked Cox whether

8  prior to April 8, 2014, there were inmates who reported incidents of sexual misconduct against

9  Dr. Koehn. and Cox responded that two other inmates alleged sexual misconduct against

10  Dr. Koehn prior to April 8, 2014. (Cox's Response to Pl.'s Interrogatory No. 17 (Set One), ECF

11  No. 56 at 109; Cox's Response to Pl.'s Interrogatory No. 3 (Set Three), ECF No. 56 at 77.)

12    Absent from the evidence, however, is any indication that Plaintiff made Cox aware of

13  *his* allegations against Dr. Koehn. Without this evidence, Cox could not have acted to prevent

14  any alleged future incident. There is also no evidence in the record that Baker was aware of these

15  allegations by other inmates.

16    **c. Conclusion**

17    In sum, both Plaintiff's and Defendants' motions should be denied as to the alleged

18  sexual abuse claim in Count I as to Dr. Koehn and Baker. Plaintiff's motion should be denied as

19  to Cox, and Cox's motion should be granted.

20  **D. COUNT I-DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS-**

21  **DR.KOEHN, BAKER, COX, SPIERS, LITTLE**

22    To avoid confusion, the court will set forth the legal standard for evaluating an Eighth

23  Amendment claim that Defendants were deliberately indifferent to Plaintiff's serious medical

24  needs, and then will analyze: (1) Plaintiff's theory that defendants Dr. Koehn, Baker and Cox

25  were deliberately indifferent in denying Plaintiff a cane or wheelchair; and (2) whether

26  defendants Dr. Koehn, Baker, Cox, Little or Spiers were deliberately indifferent insofar as the

27  events of March and April 2014 are concerned.

28  ///

**1. Standard**

A prisoner can establish an Eighth Amendment violation arising from deficient medical care if he can prove that prison officials were deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the examination of two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin*, 974 F.2d at 1059; *see also Akhtar v. Mesa*, 698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (citing *Estelle*, 429 U.S. at 104); *see also Akhtar*, 698 F.3d at 1213.

If the medical need is "serious," the plaintiff must show that the defendant acted with deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally interfere[s] with medical treatment, or it may be shown by the way in which prison officials provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citation omitted). "'[A] prisoner need not prove that he was completely denied medical care' in order to prevail" on a claim of deliberate indifference. *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012) (quoting *Lopez*, 203 F.3d at 1132), *overruled on other grounds*, *Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014). Where delay in receiving medical

1   treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*,

2   974 F.2d at 1060.

3        "A difference of opinion between a physician and the prisoner—or between medical

4   professionals—concerning what medical care is appropriate does not amount to deliberate

5   indifference." *Snow*, 681 F.3d at 987 (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

6   Instead, to establish deliberate indifference in the context of a difference of opinion between a

7   physician and the prisoner or between medical providers, the prisoner "'must show that the

8   course of treatment the doctors chose was medically unacceptable under the circumstances' and

9   that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's

10   health.'" *Snow*, 681 F.3d at 988 (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

11       **2. Cane/Wheelchair-Dr. Koehn, Baker, Cox**

12        Plaintiff alleges that since 2012, Dr. Koehn, Cox and Baker have refused to issue Plaintiff

13   a cane or wheelchair because ESP has a no cane or no wheelchair policy for security reasons.

14   (ECF No. 11 at 5.) He says that Cox and Baker refused to let Plaintiff transfer to Northern

15   Nevada Correctional Center or a prison that permits the use of canes and wheelchairs to prevent

16   him from falling. (*Id.*)

17        First, the court finds that there is a genuine dispute of material fact as to whether Plaintiff

18   suffered from a serious medical need.

19        Plaintiff maintains that he suffers from chronic back pain which causes him to fall

20   frequently. (Pl.'s Aff., ECF No. 56 at 267 ¶¶ 1-2.) He contends that he did in fact fall twice on

21   March 20, 2014, which resulted in his knee injury. (ECF No. 56 at 23; Pl.'s Aff, ECF No. 56 at

22   267 ¶ 4.)

23        Defendants, on the other hand, say the medical evidence does not support Plaintiff's

24   claims of back and knee injuries. (ECF Nos. 58/59 at 7-10.) Defendants assert that Plaintiff

25   frequently complained of back pain, but his subjective complaints were not supported by

26   objective medical findings. They point to the fact that Dr. Koehn ordered an x-ray of the lumbar

27   spine and the radiologist's findings were normal. In addition, when an outside orthopedic

28

surgeon, Dr. Joseph Walls, examined Plaintiff, he similarly found that Plaintiff's subjective complaints that he needed the assistance of a cane or wheelchair were objectively unsupported.

Defendants disregard that when Plaintiff saw Dr. Rivas on June 6, 2012, he noted tenderness in Plaintiff's back and did in fact prescribe him ibuprofen for pain, analgesic cream and range of motion exercises to strengthen his back. (ECF No. 60-1 at 9-10.) When Plaintiff was seen by an outside orthopedic surgeon, Dr. Walls, for his complaints of lumbar back pain and anterior left knee pain, Dr. Walls concluded that the subjective complaints were unsupported by objective medical findings and that Plaintiff did not need the assistance of a cane or wheelchair, but nevertheless opined that the best course of treatment was for Plaintiff to take ibuprofen as needed for pain, which at the least acknowledges Plaintiff's complaints of pain. (*See* Dr. Walls Decl., ECF No. 59-4.)

Defendants claim there is no support for Plaintiff's claims that he "blew out his knee" in his medical records (and this was Dr. Koehn's finding, Koehn Decl., ECF No. 59-2 ¶ 17.) Plaintiff asserts, however, that he never received any medical care in relation to this injury. (ECF No. 63 at 4, 11.)

Second, even assuming Plaintiff suffered from a serious medical need, the record reveals that this claim is centered on a difference of opinion between Plaintiff and Dr. Koehn as to the treatment or lack thereof that Plaintiff received. Plaintiff is adamant that he needed a cane or wheelchair to prevent future injuries. Dr. Koehn, on the other hand, maintains that an ambulatory aid was not medically indicated.

In the context of a difference of opinion, there must be evidence that the course of treatment chosen by the defendant was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health. The court simply cannot make that conclusion on the record before it. That is to say, the court cannot find Dr. Koehn's decision to deny Plaintiff a cane or wheelchair was medically unacceptable under the circumstances when every single physician to evaluate Plaintiff reached the same conclusion.

On June 6, 2012, Plaintiff was evaluated by Dr. Rivas pursuant to his request for a cane. (ECF No. 59 at 8; Ex. A, ECF No. 60-1 at 9-10.) He did not report numbness, tingling, weakness

or limping and his deep tendon reflexes were normal. (*Id*.) Dr. Rivas did note tenderness in the lower back. (*Id*.) Plaintiff argues that Dr. Rivas told him he did need a cane, but that he could not issue it to Plaintiff due to safety and security risks (ECF No. 63 at 3), but this statement is unsupported by the medical evidence, and is inadmissible hearsay. Importantly, this argument ignores that while Dr. Rivas mentioned that the cane presented a safety issue, Dr. Rivas also clearly stated that that Plaintiff "does not qualify for this." (ECF No. 60-1 at 9-10.)

Plaintiff saw orthopedic surgeon Dr. Walls on September 12, 2014, for complaints of back and knee pain. (Walls Decl., ECF No. 59-4 ¶ 14.) As indicated above, Dr. Walls concluded that Plaintiff's subjective complaints were unsupported by objective medical findings. (*Id*. ¶¶ 16-19.) He opined that the best course of treatment was for Plaintiff to take ibuprofen as needed for pain, but that Plaintiff did not need the assistance of a cane or wheelchair. (*Id*. ¶¶ 20-21.) Plaintiff argues that Dr. Walls was hand-picked by Dr. Koehn to examine him, (ECF No. 63 at 4), but this is unsupported by any evidence and ignores Dr. Walls' statement in his declaration that prior to the examination he was not contacted by any NDOC physician or staff other than to schedule the appointment. (Walls Decl., ECF No. 59-4 ¶ 4.)

Plaintiff saw Dr. Mar on September 12, 2014, for complaints of prolonged back pain and left knee pain. (ECF No. 59 at 10; Ex. A, ECF No. 60-1 at 4-5.) Dr. Mar noted some evidence of arthralgia, but stated it was due to Plaintiff's inactivity. (*Id*.) Plaintiff was prescribed ibuprofen, analgesic balm and range of motion exercises. (*Id*.) Dr. Mar clearly stated that a cane is not indicated. (ECF No. 59 at 10; Ex. A, ECF No. 60-1 at 4.)

In light of these facts, Dr. Koehn's decision to deny Plaintiff a cane or wheelchair cannot be said to have been medically unacceptable under the circumstances or made in conscious disregard of an excessive risk to Plaintiff's health.

Insofar as Plaintiff alleges that Dr. Koehn and Baker told Plaintiff that ESP had a no cane policy, Plaintiff's own briefing refutes that such a policy exists as he specifically asserts that he has seen other inmates at ESP with canes. Moreover, the evidence demonstrates that Plaintiff was denied a cane or wheelchair by each physician to evaluate him because it was not medically indicated, not because of an alleged no cane policy.

1    Therefore, summary judgment should be granted to Dr. Koehn, as well as defendants Cox

2    and Baker as to this claim.

3    **3. March 20, 2014 and April 2014 Events**

4    **a. Spiers**

5    Plaintiff contends that on March 20, 2014, he fell down in his cell severely injuring his

6    knee. (ECF No. 11 at 5; ECF No. 56 at 23; Pl.'s Aff, ECF No. 56 at 267 ¶ 4.) He pushed the

7    emergency medical button and told Spiers he filled out an emergency medical grievance, but

8    Spiers refused to get the grievance. (ECF No. 11 at 6; ECF No. 56 at 3, 23; Pl.'s Aff, ECF No. 56

9    at 267 ¶ 5; ECF No. 56 at 157.) In addition, he asked Spiers to call medical and have them bring

10    a wheelchair, but Spiers told Plaintiff he had to submit a kite. ( ECF No. 11 at 6; ECF No. 56 at

11    3, 23; Pl.'s Aff, ECF No. 56 at 267 ¶ 5.) Plaintiff contends that he already had multiple kites in

12    about his back getting worse, and about needing a cane/wheelchair. (ECF No. 56 at 3, 23; Pl.'s

13    Aff, ECF No. 56 at 267 ¶ 5.) When Spiers' shift ended, he informed the incoming shift about

14    Plaintiff. (ECF No. 11 at 6; ECF No. 56 at 5, 23; Pl.'s Aff, ECF No. 56 at 267 ¶ 5.)

15    According to Spiers, when Plaintiff pushed his emergency medical call button and

16    informed Spiers he had fallen on his knee and requested medical attention, Spiers immediately

17    contacted medical and conveyed Plaintiff's concerns. (Spiers Decl., ECF No. 59-10 at ¶¶ 4-5.)

18    Medical instructed Spiers to have Plaintiff submit a medical kite. (*Id.*) Spiers then instructed

19    Plaintiff to submit a medical kite to be evaluated. (ECF *Id.* ¶ 6.) He maintains that he did not

20    deny Plaintiff a medical kite or inhibit medical from evaluating him. (*Id.* ¶ 8.)

21    There is no dispute that Spiers told Plaintiff he needed to submit a kite to be evaluated by

22    medical, and then his shift came to an end and he advised the incoming shift of Plaintiff's

23    situation. While Plaintiff disputes whether Spiers actually called medical and received this

24    directive or came up with it himself, the court finds that Spiers' conduct does not rise to the level

25    of deliberate indifference.

26    Deliberate indifference requires that the defendant know of and disregard an excessive

27    risk to the plaintiff's health or safety. Spiers did not act with disregard; instead, he advised

28    Plaintiff what he needed to do to obtain care from the medical department and then advised the

1   incoming shift of the situation. Plaintiff's motion for summary judgment should be denied, and

2   Spiers' motion for summary judgment should be granted.

3             **b. Little**

4         Plaintiff contends that he pushed his emergency medical button again, told Little what

5   happened and asked her to call medical to bring pain pills and a wheelchair. (ECF No. 11 at 6;

6   ECF No. 56 at 5, 23; Pl.'s Aff, ECF No. 56 at 267 ¶ 6.) Plaintiff claims that Little told him she

7   would not call medical because they would not come for a knee injury. (ECF No. 11 at 6; ECF

8   No. 5, 23; Pl.'s Aff, ECF No. 56 at 267 ¶ 6.)  Plaintiff pushed the medical emergency button

9   again to get medical care because the nurse was on the tier, and Little told him that the nurse said

10  she could not evaluate Plaintiff because he did not have a kite in, even though he did have kites

11  in. (ECF No. 56 at 5, 23, 25; Pl.'s Aff, ECF No. 56 at 267-68 ¶ 7.) After the nurse left, Plaintiff

12  reiterated that he could not walk, and Little told him to put in a kite and go to sick call like

13  everyone else. (ECF No. 56 at 25; Pl.'s Aff, ECF No. 56 at 269 ¶ 8.)

14        According to Officer Little, he was briefed by Officer Spiers regarding Plaintiff's

15  complaints and the desire to be seen by medical. (ECF Nos. 58/59 at 6, 18; Little Decl., ECF No.

16  59-8 ¶ 4; Spiers Decl., ECF No. 59-10 ¶ 7.) Spiers advised Little that he had contacted medical

17  and that Plaintiff was ordered to fill out the appropriate medical kite and submit it. (*Id*.)  Little

18  instructed Plaintiff to file the appropriate kite to be seen by the next nurse to visit the unit, and

19  that she would ensure its delivery to medical. (ECF Nos. 58/59 at 6, 18; Ex. J ¶¶ 3-7; Little Decl.,

20  ECF No. 59-8 ¶ 5.) Little states that this was because the unit nurses visit many units, and

21  generally only stop at the cells of inmates to disperse prescribed medications or in response to

22  medical kites. (ECF Nos. 58/59 at 18; Little Decl., ECF No. 59-8 ¶ 6.) Plaintiff asked Officer

23  Little to bring him a cane or wheelchair; however, canes and wheelchairs can only be issued by

24  the medical department pursuant to policy. (ECF Nos. 58/59 at 18; Little Decl., ECF No. 59-8 ¶

25  7; Ex. F, ECF No. 59-6.) Little maintains that she did not witness Plaintiff fall or deny Plaintiff a

26  grievance or medical kite or refuse to submit a grievance or kite. (ECF Nos. 58/59 at 18; Little

27  Decl., ECF No. 59-8 at ¶¶ 8, 12,13.)

28

As with Spiers, it is undisputed that Little reiterated to Plaintiff that he needed to fill out a medical kite in order to be seen by medical. The court cannot conclude that this conduct, by an officer who is not a medical professional, amounts to deliberate indifference. Instead of disregarding Plaintiff's medical needs, the officer advised Plaintiff of the step he needed to take to be seen by medical. While Plaintiff asserts that he had previously submitted kites pertaining to his back, there is no evidence that he had filled out a kite related to the alleged fall that occurred on March 20, 2104.

Plaintiff then asserts that later that evening, Little told another officer to order Plaintiff to turn on his light in his cell. (ECF No. 11 at 6-7; ECF No. 56 at 5, 25; Pl.'s Aff, ECF No. 56 at 269 ¶ 9.) Plaintiff had to hop and limp to turn on his lights. (ECF No. 11 at 7.) Before he could reach the lights, he fell in front of the officer and hit his knee on the concrete and hit his head on the metal sink and toilet, causing pain to his left knee, a knot on his head and pain to his neck. (ECF No. 56 at 5, 25; Pl.'s Aff, ECF No. 56 at 269 ¶ 9.)

In his motion, it is clear that Plaintiff contends that the officer is the one who ordered Plaintiff to get up and turn on his light. Moreover, there is no evidence that Little had any involvement with any complaints regarding Plaintiff's medical care insofar as this fall is concerned. This is consistent with Little's responses to Plaintiff's interrogatories, where she indicated that she did not recall being notified by any floor officer that Plaintiff fell, and that could not see the incident from the control room. (Little's Response to Pl.'s Interrogatory No. 7 (Set One), ECF No. 56 at 124.) Therefore, Little's liability cannot be predicated on these allegations.

Plaintiff then asserts that later that day, he filled out another medical emergency grievance and requested immediate medical care in the form of a wheelchair, neck brace and pain pills. (ECF No. 11 at 7; ECF No. 56 at 5, 25; Pl.'s Aff, ECF No. 56 at 269 ¶ 10; ECF No. 56 at 155.) Jane Doe Nurse # 2 (identified in his motion as Dunn) and a sergeant came to his cell, and the nurse ordered Plaintiff to go to the door. (ECF No. 56 at 5, 25; Pl.'s Aff, ECF No. 56 at 269 ¶ 10.) Plaintiff tried to stand up but fell on the ground in front of the nurse, and had to crawl the rest of the way. (ECF No. 56 at 5, 25; Pl.'s Aff, ECF No. 56 at 269 ¶ 10.) The nurse told him

1   that even though he could not walk, he could crawl, so it was not an emergency." (*Id.*) She told

2   Plaintiff to file a kite and he would be seen the next day, and denied him pain pills, a wheelchair

3   and neck brace. (ECF No. 11 at 7.)

4        These allegations are directed to Jane Doe Nurse # 2, whom Plaintiff never timely moved

5   to identify and substitute in as a defendant in the case. The allegations in no way implicate

6   defendant Little; therefore, no liability can be premised on these averments.

7        For these reasons, Plaintiff's motion for summary judgment should be denied and Little's

8   motion should be granted.

9             **c. Dr. Koehn**

10        Plaintiff alleges that he wrote kites to Dr. Koehn about the injuries he suffered on

11   March 20, 2014, but he responded that there was no such thing as chronic knee pain and refused

12   to examine Plaintiff because he did not know who he was. (ECF No. 11 at 8; ECF No. 56 at 5,

13   7.)

14        The evidence submitted by Plaintiff, however, does not reflect that Dr. Koehn told him

15   there was no such thing as chronic care. Instead, Plaintiff submits a kite that he sent to

16   Dr. Koehn's attention on March 17, 2014, asking to be seen for chronic care "ASAP" because

17   his knee and back were getting much worse. (ECF No. 56 at 161.) On March 20, 2014, Nurse

18   Carpenter responded that there was no such thing as chronic care for knee and back pain, and

19   told Plaintiff he could re-kite to be seen. (*Id.*) Nor does Plaintiff submit evidence of any response

20   by Dr. Koehn that he would not treat him because he did not know who he was.

21        Plaintiff also argues that when he saw Dr. Koehn and a nurse in April 2014, Dr. Koehn

22   told him he was only there for Plaintiff's hypertension issues and did not come to assess his

23   head, knee or neck injury. (ECF No. 11 at 8.) He contends that the nurse asked Plaintiff why he

24   was limping, and he began to tell her about his back injury and two falls on March 20, 2014,

25   which he felt could have been prevented if he had a cane or wheelchair. (ECF No. 11 at 8; ECF

26   No. 56 at 7, 11; Pl.'s Aff, ECF No. 56 at 269 ¶ 12.) At that point, he claims that Dr. Koehn

27   interjected that he was not provided a cane because it could be used in litigation to get Plaintiff

28   out of ESP, and then threatened that if kept complaining about falling due to his back and knees,

1    he would stick his finger up Plaintiff's rectum. (*Id.*) He alleges that Dr. Koehn also threatened to

2    take all of his property and put him in the infirmary for six months to a year. (*Id.* at 8-9.) Plaintiff

3    did not ask for a cane or wheelchair after that point because he was afraid of Dr. Koehn. (Pl.'s

4    Aff, ECF No. 56 at 271 ¶ 12.)

5          On the other hand, Dr. Koehn asserts that he evaluated Plaintiff's complaints of back and

6    knee pain when he saw Plaintiff on April 8, 2014, but found no objective signs of injury. (ECF

7    No. 60-1 at 20; Koehn Decl., ECF No. 59-2 ¶ 17.) Nevertheless, Dr. Koehn ordered x-rays of

8    Plaintiff's back, asked for labs to be completed and set a follow up appointment. (*Id.*) He notes

9    that the x-rays were taken on April 14, 2014, and the results were normal. (ECF No. 60-1 at 96;

10   Koehn Decl., ECF No. 59-2 ¶ 18.) Dr. Koehn maintains that at no time did he threaten Plaintiff.

11   (Koehn Decl., ECF No. 59-2 ¶ 25.) This is supported by his responses to Plaintiff's

12   interrogatories, where he states that on April 7, 2014, he advised Plaintiff that an evaluation of

13   patient health and welfare is one of the purposes of the infirmary, and if he continued to fall he

14   might need to be observed in the infirmary. (Dr. Koehn's response to Pl.'s Interrogatory No. 10,

15   ECF No. 56 at 85.) In addition, Dr. Koehn stated that he had no recollection of telling Plaintiff

16   on April 7, 2014, that if he kept complaining about a back injury and falling, he would stick his

17   finger up Plaintiff's rectum, but noted that if an inmate complains of neurological damage

18   associated with spinal injury, he may have explained to him that sphincter tone is a method of

19   assessing neural function of the lower extremities, particularly in the event of spinal trauma.

20   (Dr. Koehn's response to Pl.'s Interrogatory No. 11, ECF No. 56 at 85.)

21         A genuine dispute of material fact exists as to whether Dr. Koehn was deliberately

22   indifferent to Plaintiff's complaints of back and knee pain when he examined Plaintiff in April

23   2014. Plaintiff maintains that Dr. Koehn completely ignored his asserted injuries, instead telling

24   Plaintiff that he did not have a cane because he would use it in litigation to get out of ESP, and

25   threatening him with sexual assault, property deprivation and a lengthy stay in the infirmary. At

26   the same time, Dr. Koehn maintains that he did evaluate Plaintiff's complaints and found no

27   objective signs of injury. Dr. Koehn likewise states that he never threatened Plaintiff. A fact

28   finder must determine whose version of events to believe. Therefore, both Plaintiff's and

1   Defendants' motions for summary judgment should be denied as to Dr. Koehn insofar as this

2   claim is concerned.

3                              **d. Baker & Cox**

4          Plaintiff alleges that he wrote kites to Baker about the injuries he suffered on March 20,

5   2014 (ECF No. 11 at 8). (*Id.* at 13.)

6          Defendants argue that Warden Baker and Director Cox are not doctors, and there is no

7   evidence showing their personal culpable action or inaction with respect to Plaintiff's medical

8   treatment, or that they instructed his doctors to deny him a cane or medical treatment. (ECF Nos.

9   58/59 at 24-25; Baker Decl., ECF No. 59-3 ¶ 8; Cox Decl., ECF No. 59-9 ¶ 5.) When a medical

10  complaint is brought to their attention, they get in touch with the medical division to determine

11  the legitimacy of the complaint. (Cox Decl., ECF No. 59-9 ¶ 5.)

12         The record reveals that Plaintiff filed an informal level grievance (20062976441) on

13  March 21, 2014, detailing the events of March 20, 2014. (ECF No. 56 at 203, 205, 207, 209.)

14  Only the response to the first level grievance is provided, which states that Plaintiff was seen by

15  the provider and x-rays were ordered on April 14, 2014, and the results were normal. (ECF No.

16  56 at 197.) He was advised to kite if he was having other problems or concerns. (*Id.*) The

17  response is signed by D. Jones, CN III. (*Id.*) There is no evidence that Baker or Cox were

18  involved in this grievance, or that they otherwise participated in the alleged constitutional

19  violations that took place on March 20, 2014.

20         Insofar as the examination in April 2014 is concerned, the court has already found that

21  there is no evidence in the record that Plaintiff made Cox aware of his allegations concerning the

22  April 2014 examination. While there is evidence that Plaintiff alerted Baker to what he contends

23  transpired during the April 2014 examination through kites and grievances filed after the fact,

24  there is no evidence that Baker personally participated in the alleged constitutional violation

25  when it occurred, or any other evidence of a causal connection between Baker and what occurred

26  during the examination in April 2014. *See Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir.

27  1989). Therefore, summary judgment should be granted in Cox and Baker's favor insofar as this

28

- 26 -

1   deliberate indifference claim in Count I is concerned, and Plaintiff's motion should be denied as

2   to these defendants.

3   **E. COUNT III-EQUAL PROTECTION-DR. KOEHN, COX, BAKER**

4       The Fourteenth Amendment prohibits the denial of "the equal protection of the laws."

5   U.S. Const.  amend XIV, § 1. It "commands that no State shall deny to any person within its

6   jurisdiction the equal protection of the laws, which is essentially a direction that all persons

7   similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.

8   2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "Prisoners

9   are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious

10   discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Under section

11   1983, an inmate Plaintiff must present evidence of an intent to discriminate against the plaintiff

12   based upon his membership in a protected class. *See Washington v.  Davis*, 426 U.S. 229, 239-40

13   (1976); *Serrano v.  Francis*, 345 F.3d 1071, 1082 (9th Cir.  2003); *Lee v.  City of Los Angeles*,

14   250 F.3d 668, 686 (9th Cir.  2001) (citation omitted).  "Intentional discrimination means that a

15   defendant acted at least in part because of a plaintiff's protected status." *Serrano*, 345 F.3d at

16   1082 (citation omitted).

17       Plaintiff's motion does not address his equal protection claim; therefore, his motion for

18   summary judgment should be denied insofar as this claim is concerned.

19       In their motion, Defendants argue that NDOC does not have a racially-based no cane

20   policy. (ECF Nos. 58/59 at 20-21.) They contend Plaintiff has no evidence that Defendants acted

21   with an intent or purpose to discriminate against him. (*Id*. at 21.) Instead, Plaintiff was not given

22   a cane because it was not medically indicated, and Plaintiff is treated no differently than other

23   inmates with respect to his custody, classification or medical concerns. (*Id*.; Baker Decl., ECF

24   No. 59-3 ¶ 9.)

25       In his response, Plaintiff asserts that he discovered that white inmates were issued canes

26   and wheelchairs at ESP, but that he has not seen a black inmate at ESP with a cane or wheelchair

27   . (ECF No. 63 at 12, 23, 24.)

28

1    There is no evidence in the record that Defendants denied Plaintiff a cane or wheelchair

2    because of his race. While Plaintiff may have observed white inmates at ESP with canes or

3    wheelchairs, the evidence is clear that Plaintiff was denied a cane by multiple physicians because

4    it was not medically indicated, with absolutely zero suggestion that race was a factor in this

5    decision. As a result, Defendants' motion for summary judgment should be granted as to the

6    equal protection claim in Count III.

7    **F. COUNT IV- RETALIATION-DR. KOEHN, COX, BAKER**

8        **1. Standard**

9        For a claim of retaliation, an inmate must establish: (1) a state actor took some adverse

10   action against the inmate; (2) because of; (3) the inmate's protected conduct, and that such

11   action; (4) chilled the inmate's exercise of his First Amendment rights; and (5) the action did not

12   reasonably advance a legitimate correctional goal. *See Jones v. Williams*, 791 F.3d 1023, 1025

13   (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). "The First Amendment

14   guarantees a prisoner a right to seek redress of grievances from prison authorities as well as a

15   right of meaningful access to the courts." *Jones*, 791 F.3d at 1035 (citing *Bradley v. Hall*, 64

16   F.3d 1276, 1279 (9th Cir. 1995)).

17       An inmate must submit evidence, either direct or circumstantial, to establish a link

18   between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt*, 65 F.3d at

19   806-07. "[A] plaintiff must show that his protected conduct was 'the "substantial" or

20   "motivating" factor behind the defendant's conduct.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271

21   (quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The plaintiff

22   "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to

23   him, presents a genuine issue of material fact as to [the defendant's] intent[.]'" *Id*. (quoting

24   *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). Timing of the events surrounding the alleged

25   retaliatory action may constitute circumstantial evidence of retaliatory intent. *See Sorrano's

26   Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989). A plaintiff's mere speculation that

27   there is a causal connection is not enough to raise a genuine issue of material fact.  *See Nelson v.

28   Pima Community College*, 83 F.3d 1075, 1081-82 (9th Cir.  1996) ("mere allegation and

1    speculation do not create a factual dispute for purposes of summary judgment") (citation

2    omitted).

3           "[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show

4    that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue

5    'would chill or silence a person of ordinary firmness from future First Amendment activities.'"

6    *Brodheim v.  Cry*, 584 F.3d 1262, 1271 (9th Cir.  2009) (quoting *Rhodes v. Robinson*, 408

7    F.3d559, 568-69 (9th Cir. 2005)). "To hold otherwise 'would be unjust' as it would 'allow a

8    defendant to escape liability for a First Amendment violation merely because an unusually

9    determined plaintiff persists in his protected activity.'" *Brodheim*, 584 F.3d at 1271 (quoting

10   *Rhodes*, 408 F.3d at 569).

11          Finally, "a prisoner must show that the challenged action 'did not reasonably advance a

12   legitimate correctional goal.'" *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568).

13          **2. Summary of Argument**

14          Plaintiff argues that on multiple occasions between 2012 and 2014, Dr. Koehn refused to

15   issue Plaintiff a cane or wheelchair despite knowing Plaintiff needed them. (ECF No. 56 at 29.)

16   He states that prior to April 7, 2014, he filed multiple grievances and a lawsuit against

17   Dr. Koehn, and requested medical care including pills, a neck brace, a cane and a wheelchair, all

18   of which constitute protected conduct. (ECF No. 56 at 31.) He maintains that Dr. Koehn refused

19   to provide Plaintiff with medical care, threatened to take his property and put him in the

20   infirmary, threatened him with sexual assault, and sexually molested him, which amounts to

21   adverse conduct. (ECF No. 56 at 21; ECF No. 63 at 6, 14.) He claims that the adverse action was

22   motivated by Plaintiff's protected conduct of filing grievances, a lawsuit and requesting medical

23   care because of the chronology of events. (ECF No. 56 at 31.) He also points out that Dr. Koehn

24   made reference to Plaintiff's lawsuit when he refused to treat Plaintiff on April 7, 2014. (ECF

25   No. 56 at 31; ECF No. 56 at 177.) He argues that this conduct would chill a person of ordinary

26   firmness from future First Amendment activities. (ECF No. 56 at 31; ECF No. 63 at 15.) Finally,

27   he contends that this conduct does not serve any legitimate penological interest. (ECF No. 56 at

28   31; ECF No. 63 at 15.)

1     Plaintiff also argues that Baker and Cox are liable under this claim as supervisors because

2     they were aware of the conditions and denied Plaintiff a transfer, a cane, a wheelchair, pills, and

3     refused to stop Dr. Koehn's retaliatory acts of denying Plaintiff medical care, and refused to

4     transfer Plaintiff from ESP until forced by the Inspector General. (ECF No. 56 at 31.)

5     First, Defendants argue that Plaintiff was denied a cane because it was not medically

6     required. (ECF Nos. 58/59 at 22.) Second, they contend that Dr. Koehn did not sexually threaten

7     or assault Plaintiff; therefore, his claim of retaliation cannot be premised on those events. (*Id.* at

8     23.) Third, they assert that the fact that Dr. Koehn notified Plaintiff he could be placed in the

9     infirmary for observation if his condition worsened is not retaliatory. (*Id.*)

10     Next, Defendants contend that Plaintiff's ability to engage in First Amendment activities

11     has not been chilled as Plaintiff continues to file grievances and litigate various actions. (*Id.*)

12     They further argue that AR 603 and OP 819, which govern ambulatory devices at ESP,

13     are designed to protect the safety and security of inmates and staff and to provide

14     accommodation to inmates where warranted. (*Id.*) Therefore, actions taken by Defendants

15     pursuant to those regulations further legitimate correctional goals. (*Id.*)

16     Finally, they contend there is no evidence to establish the requisite causal link with any

17     conduct on the part of Cox and Baker in connection with this claim.

18     **3. Analysis**

19     First, Plaintiff argues that he was not provided a cane (or wheelchair) at ESP because of

20     his litigation against Dr. Koehn, Baker, and Cox; however, the court has already concluded that

21     all of the evidence in the record demonstrates that Plaintiff was not provided a cane or

22     wheelchair because it was not medically indicated. This was the conclusion of every physician

23     who examined Plaintiff regarding this issue. Therefore, the court cannot conclude that Plaintiff

24     was not provided a cane or wheelchair *because of* his litigation against Dr. Koehn, Cox or

25     Bannister.

26     Next, Plaintiff contends that Dr. Koehn threatened to sexually assault him and sexually

27     molested him because of his protected activity. Plaintiff contends that he previously filed a

28     lawsuit against Dr. Koehn, Baker and Cox, *Johnson v. Nguyen*, 3:12-cv-00538-MMD-WGC, but

1    the fact that he had a prior case against these defendants does not provide a sufficient causal

2    connection between the conduct that he alleges occurred in April and June of 2014.

3         Plaintiff does provide evidence, however, that Dr. Koehn threatened to sexually assault

4    him if he continued to complain about his back and knee injuries and needing a cane or

5    wheelchair. Plaintiff contends that Dr. Koehn told him that if he continued to make such

6    complaints he would sexually assault him, would take his property, and put him in the infirmary

7    for six months to a year. Dr. Koehn disputes that these statements were made, but Plaintiff's

8    evidence is sufficient to raise a genuine dispute of material fact as to whether this occurred.

9    While Defendants contend that there was no chilling of Plaintiff's First Amendment activity, the

10   court finds the evidence submitted by Plaintiff is sufficient to establish that a person of ordinary

11   firmness would have been chilled by this conduct, if it occurred.

12        For these reasons, the court recommends that Plaintiff's motion for summary judgment

13   be denied as to this claim, and that Defendants' motion be granted in part and denied in part.

14   Defendants' motion should be granted insofar as it is predicated on the allegation that Plaintiff

15   was retaliated against in the denial of a cane or wheelchair. It should be denied insofar as it is

16   predicated on the allegation that Dr. Koehn threatened to and did sexually abuse Plaintiff

17   because of his complaints concerning his medical care.

18        Defendants' motion should be granted, however, as to defendants Baker and Cox, as

19   there is no evidence that they were involved in the threats allegedly made by Dr. Koehn.

20   **G. QUALIFIED IMMUNITY**

21        Defendants Baker, Cox, Spiers and Little argue that they are entitled to qualified

22   immunity. (ECF Nos. 58/59 at 25-27.) They contend there is no clearly established law that

23   would put Defendants on notice that their actions were unlawful. (*Id*. at 26.) They assert that

24   non-medical personnel can rely on the findings and advice of medically trained doctors and

25   nurses. (*Id*.)

26        The court has recommended that summary judgment be granted in favor of defendants

27   Cox, Spiers and Little on all claims asserted against them. Therefore, the court need only

28   consider whether defendant Baker is entitled to summary judgment. The court only

1   recommended that one claim proceed against defendant Baker: the Eighth Amendment claim

2   involving the allegations that Dr. Koehn sexually molested him. The court concluded that a

3   genuine dispute of material fact exists as to defendant Baker's liability under this claim;

4   therefore, the court cannot find that she is entitled to qualified immunity at this juncture. *See*

5   *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003).

6   **H. DAMAGES**

7        Defendants argue that Plaintiff's claims are restricted to nominal damages, as

8   compensatory damages must be based on proof demonstrating actual injury. (ECF Nos. 58/59 at

9   27.) They maintain Plaintiff cannot prove actual injury, because his claims are frivolous and

10  vexatious. (*Id*.)

11       With respect to the claims the court has recommended be allowed to proceed, Plaintiff

12  will have the opportunity to prove actual injury and any accompanying damages at trial.

13  **I. DEFENDANTS' REQUEST FOR A STRIKE**

14       Defendants request that the court issue a strike under 29 U.S.C. § 1915(g) for each

15  abusive and harassing claim filed by Plaintiff.

16       The court is required to dismiss a case  filed in forma pauperis if it determines the action

17  is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or

18  (iii) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C.

19  § 1915(e)(2)(B).

20       Under 28 U.S.C. § 1915(g), a prisoner may not bring an action if the court has found that

21  on three prior occasions he has brought an action that was dismissed as frivolous or malicious or

22  for failing to state a claim on which relief may be granted, unless he is under imminent danger of

23  serious physical injury.

24       In addition, as Defendants point out, the court may enter pre-filing orders against

25  vexatious litigants after giving the plaintiff notice and an opportunity to be heard and creating an

26  adequate record. *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1057 (9th Cir. 2007).

27       Here, the court has not found that Plaintiff fails to state a claim upon which relief may be

28  granted. Instead, the court has evaluated evidence in connection with competing motions for

1   summary judgment to determine whether each party has met their burden, and whether the

2   opposing party has set forth evidence sufficient to raise a genuine dispute of material fact. Nor

3   would the court be issuing an "pre-filing" orders at this juncture. While Defendants dispute

4   Plaintiff's version of events, this is not a sufficient basis for deeming a plaintiff's action to be

5   frivolous, malicious or vexatious.

6       As a result, the court declines to recommend the issuance of a strike against Plaintiff

7   under 28 U.S.C. § 1915(g).

8                    **IV. RECOMMENDATION**

9       **IT IS HEREBY RECOMMENDED** that the District Judge enter an order **DENYING**

10  Plaintiff's motion for summary judgment and **GRANTING IN PART AND DENYING IN**

11  **PART** Defendants' motion as follows:

12      (1) Defendants' motion should be **DENIED** as to the sexual abuse claim in Count I as to

13  defendants Dr. Koehn and Baker;

14      (2) Defendants' motion should be **GRANTED** as to the sexual abuse claim in Count I as

15  to Cox;

16      (3) Defendants' motion should be **GRANTED** in favor of Cox and Baker with respect to

17  the Eighth Amendment deliberate indifference to serious medical needs claims in Count I;

18      (4) Defendants' motion should be **GRANTED** in favor of Spiers and Little with respect

19  to the Eighth Amendment deliberate indifference to serious medical needs claim against them in

20  Count I;

21      (5) Defendants' motion should be **DENIED** insofar as Plaintiff alleges in Count I that

22  Dr. Koehn was deliberately indifferent to his serious medical needs when he refused to evaluate

23  Plaintiff's complaints of knee and back injuries in April 2014;

24      (6) Defendants' motion should be **GRANTED** as to the equal protection claim in Count

25  III;

26      (7) As to the retaliation claim in Count IV, Defendants' motion should be **GRANTED**

27  **IN PART AND DENIED IN PART** as follows:

28          (a) It should be **GRANTED** as to defendants Baker and Cox;

1          (b) It should be **<u>GRANTED</u>** as to Dr. Koehn insofar as it is predicated on the

2  allegation that Plaintiff was retaliated against in the denial of a cane or wheelchair; and

3          (c) It should be **<u>DENIED</u>** as to Dr. Koehn insofar as it is predicated on the

4  allegation that Dr. Koehn threatened to and did sexually abuse Plaintiff because of his

5  complaints concerning his medical care.

6        The parties should be aware of the following:

7        1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

8  this Report and Recommendation within fourteen days of receipt. These objections should be

9  titled "Objections to Magistrate Judge's Report and Recommendation" and should be

10  accompanied by points and authorities for consideration by the district judge.

11        2. That this Report and Recommendation is not an appealable order and that any notice of

12  appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

13  until entry of judgment by the district court.

14  DATED: January 20, 2016.

15                                    WILLIAM G. COBB

16                                    UNITED STATES MAGISTRATE JUDGE