1

2

3

4

5

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| LAUSTEVEION JOHNSON, | Case No. 3:12-cv-00538-MMD-WGC |
| Plaintiff, | Consolidated with 3:14-cv-00213-RCJ-WGC |
| v. | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| A. NGUYEN, et. al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is Defendants' Motion for Summary Judgment. (ECF No. 131.) Plaintiff filed a response (ECF No. 139) and Defendants filed a reply (ECF No. 140).

After a thorough review, the court recommends that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

This action and case 3:14-cv-213-RCJ-WGC were consolidated, with 3:12-cv-00538-MMD-WGC becoming the lead case number. (ECF No. 125.) The parties filed cross-motions for summary judgment in 3:14-cv-00213-RCJ-WGC prior to consolidation, and those motions were addressed in a separate report and recommendation that is currently pending before District Judge Du. (*See* ECF No. 138.) The court now addresses Defendants' dispositive motion filed in 3:12-cv-00538-MMD-WGC.

Plaintiff is an inmate in custody of the Nevada Department of Corrections (NDOC). The events giving rise to this action took place while Plaintiff was housed at Ely State Prison (ESP) and High Desert State Prison (HDSP).

**A. Original Complaint**

Plaintiff filed his initial pro se civil rights complaint in October 2012 (ECF No. 1-1), along with a motion for leave to file an amended complaint stating that he had filed his complaint in state court and wished to "federalize" it and add allegations and defendants.  (ECF Nos. 1-3, 4). The court granted the motion for leave to amend, and gave Plaintiff thirty days to file an amended complaint, or the court would screen the original complaint. (ECF No. 3.) Plaintiff did not file an amended complaint; therefore, the court screened and filed the original complaint. (Screening Order, ECF No. 6; Compl., ECF No. 7).

The original complaint named the following defendants: Isidro Baca, Renee Baker, R. Bannister, Lt. Bean, Eric Burson, Mike Byrne, G. Carpenter, Greg Cox, G. Holliday, John Keast, Dr. Koehn, Cole Morrow, Jennifer Nash, Dwight Neven, A. Nguyen, Rivos (later referred to as Dr. Rivas), and John Does 1-6. (ECF No. 7 at 2.) The court concluded Plaintiff could proceed with the following claims: (1) Eighth Amendment conditions of confinement against Baker, Dr. Koehn, and Dr. Rivas; (2) Eighth Amendment excessive force against Nguyen and Holliday; (3) Eighth Amendment deliberate indifference to a serious medical need against Holliday, Baker, Dr. Koehn, and Dr. Rivas; (4) Eighth Amendment supervisory liability against Nash, Baca, Keast, and Carpenter; (5) retaliation against Nguyen and Holliday; (6) equal protection against Nguyen and Holliday; (7) Fourteenth Amendment due process against Neven, Morrow, Bean, and Burson . (ECF No. 6 at 5-13.) The screening order dismissed Cox, Byrne and Bannister entirely, finding that Plaintiff set forth no allegations against those defendants. (*Id*.)

**B. Defendants' Initial Motion to Dismiss/Motion for Summary Judgment**

Defendants filed a motion to dismiss/motion for summary judgment, arguing that many of Plaintiff's claims were barred by a prior settlement agreement, and that he did not exhaust his administrative remedies with respect to other claims. (ECF No. 28.) The undersigned recommended that the motion be granted in part and denied in part, and this was adopted by District Judge Du. (ECF Nos. 92, 95.)

As a result, the following claims remained in the original complaint: (1) the Eighth Amendment excessive force claim against Holliday; (2) the retaliation claim against Holliday;

(3) the equal protection claim against Holliday; (3) the Eighth Amendment deliberate indifference to serious medical needs claim against Holliday; (4) the Eighth Amendment deliberate indifference to serious medical needs claim against Baker, Dr. Koehn and Dr. Rivas, as well as the Eighth Amendment conditions of confinement claim against these defendants; and (5) the supervisory liability claims against Nash, Baca, Keast and Carpenter, to the extent based on the above-referenced claims.

**C. Plaintiff's Motion for Leave to Amend**

Plaintiff filed a motion for leave to amend and proposed amended complaint on July 24, 2015. (ECF No. 107, 107-1.) The proposed amended complaint by and large omitted the allegations that were dismissed, except insofar as they included necessary background facts supporting the remaining claims. In addition, Plaintiff indicated that he knew the identity of the officers involved in the excessive force incidents previously alleged to be committed by Doe officers. The undersigned granted Plaintiff leave to amend the complaint to substitute defendants Collette, Hageman[1] and Osbun for the Doe defendants previously named in connection with the second alleged excessive force incident on January 1, 2012. (ECF No. 115 at 7.) Plaintiff was also given leave to substitute defendant Sevier in for the Doe defendant previously named as having witnessed defendant Holliday allegedly beat Plaintiff without intervening, and in failing to provide Plaintiff with medical care after this event. (ECF No. 115 at 7-8.) The court clarified that although the amended complaint referenced Nguyen and Cox, those defendants would remain dismissed from the action. (ECF No. 115 at 8.) The court also confirmed Plaintiff could not amend his allegations as to defendant Morrow. (*Id*.) The amended complaint was filed on August 25, 2015. (ECF No. 116.)

The undersigned's order on Plaintiff's motion for leave to amend erroneously stated that the Fourteenth Amendment due process claims against Neven, Morrow, Bean and Burson would proceed, when in fact these claims had been dismissed. (*See* ECF No. 115 at 3:18-19, ECF No. 92 at 27.)

///

---

[1] Erroneously identified by Plaintiff as Hagena.

**D. Status of Claims and Defendants At this Juncture**

Because the parties' briefs have raised some question as to the status of the claims and parties at this juncture, the court will now address the allegations of the amended complaint and the parties implicated.

**1. Claims**

**a. Excessive Force Against Collette, Hageman and Osbun**

Plaintiff alleges that after an incident of excessive force involving Correctional Officer Nguyen on January 1, 2012 (described in the original complaint and subsequently dismissed), at approximately 3:18 p.m., Plaintiff ran away from Nguyen and when he felt he was a sufficient distance away from Nguyen, he voluntarily got down on the ground. (ECF No. 116 at 4, 6.) At that point, he claims that Collette, Hageman, and Osbun approached him and repeatedly shoved their knees into his back, and proceeded to drag him across the blacktop for approximately fifteen minutes, and then slammed him into the medical cart, causing injuries to his back. (ECF No. 116 at 4, 6.) Plaintiff avers that Nash, Neven, and Carpenter violated the Eighth Amendment by denying Plaintiff's grievances on this issue. (ECF No. 116 at 6.)

Based on these allegations, Plaintiff states a colorable Eighth Amendment claim of excessive force against Collette, Hageman, and Osbun. The supervisory liability allegations will be addressed, *infra*.

**b. Retaliation Claim Against Holliday**

Plaintiff goes on to allege that at approximately 3:20 p.m. on January 1, 2012, while Plaintiff was handcuffed and lay on the ground, Holliday threatened Plaintiff after he learned that Nguyen had assaulted Plaintiff for requesting a grievance, by stating: "They should of killed yo' ass! Next time you get a grievance I'm gone kill yo' ass! Yeah we gone kill you ass!!!" (ECF No. 116 at 4-5, 11.)

Plaintiff states a colorable retaliation claim against Holliday based on these allegations.

**c. Eighth Amendment Excessive Force and Denial of Medical Care Against Holliday and Sevier**

Next, Plaintiff alleges that at approximately 6:45 p.m. on January 1, 2012, Holliday and Sevier escorted Plaintiff from the HDSP infirmary, where he was receiving treatment due to the aforementioned assaults, to the segregation unit. He avers that Holliday ordered Plaintiff into the cell, and began to violently punch Plaintiff in his jaw multiple times while Plaintiff was handcuffed behind his back, causing Plaintiff to fall to the ground. Plaintiff suffered dizziness, a bloody mouth, three loose teeth, and felt as if his jaw was broken. He alleges that Sevier stood by and failed to intervene. (ECF No. 116 at 5, 6, 7.)

Plaintiff states a colorable Eighth Amendment excessive force claim against Holliday and Sevier based on these allegations.

Plaintiff also alleges that Sevier and Holliday refused Plaintiff's requests for medical treatment following this incident, with Holliday telling him: "No! I bet you' ass won't file another grievance." (ECF No. 116 at 5, 7, 11.)

Plaintiff states a colorable Eighth Amendment claim for deliberate indifference to a serious medical need against Holliday and Sevier based on these allegations.

### d. Eighth Amendment Medical Care and Conditions Deliberate Indifference

Plaintiff then alleges that Warden Baker, Dr. Koehn, and Dr. Rivas were deliberately indifferent when they denied Plaintiff a walking cane after he suffered these injuries because ESP has a "no cane" policy, even though they knew he had fallen down many times since January 1, 2012, which has caused further injury to his knees. (ECF No. 116 at 7-8.)[2]

Plaintiff states a colorable Eighth Amendment claim for deliberate indifference to a serious medical need against Warden Baker, Dr. Koehn and Dr. Rivas based on these allegations.

Plaintiff also claims that Warden Baker, Dr. Koehn and Dr. Rivas were deliberately indifferent in denying him a cane in violation of the Eighth Amendment because as a result of that denial, Plaintiff has not been able to exercise or take a shower, and was forced to use the water in his toilet to wash. (ECF NO. 116 at 8.)

---

[2] This is duplicative of his claim asserted in 3:14-cv-00213-RCJ-WGC, against Baker, Dr. Koehn and Cox (as well as Dr. Rivas, who was dismissed pursuant to Federal Rule of Civil Procedure 4m). As will be discussed, *infra*, the undersigned has recommended that summary judgment be granted in Defendants' favor as to this claim in 3:14-cv-00213-RCJ-WGC. (ECF No. 138.) Plaintiff did not file an objection to this recommendation.

1    Plaintiff states a colorable Eighth Amendment conditions of confinement claim against

2    Warden Baker, Dr. Koehn and Dr. Rivas based on these allegations.

3                    **e. Neven and Morrow and Plaintiff's Psychological Issues**

4    Plaintiff then avers that Neven and Morrow violated the Eighth Amendment when they

5    knew of Plaintiff's history of psychological issues, but allowed Plaintiff to be found guilty of a

6    notice of charges where he was sentenced to eighteen months in lockdown at ESP, which he

7    claims exacerbated his mental health issues. (ECF No. 116 at 8.)

8    The court did not specifically comment on this allegation in screening the original or

9    amended complaint. Neven and Morrow were at HDSP, and Plaintiff alleges that they approved

10   the decision to sentence him to eighteen months in disciplinary segregation at ESP, a maximum

11   security facility. Plaintiff goes on to allege that while at ESP he was subjected to inmates who

12   yelled and kicked their doors and threatened to harm him, which he claims exacerbated his

13   mental health issues. Neven and Morrow, who were employed at HDSP and not ESP, could not

14   have known of the specific conditions Plaintiff would allegedly face at ESP, or that they would

15   exacerbate his mental health symptoms, as Plaintiff alleges. Therefore, any error in failing to

16   specifically discuss these allegations is harmless because the allegations do not state a colorable

17   claim for relief against Neven and Morrow. The Eighth Amendment claim that Neven and

18   Morrow exacerbated Plaintiff's mental health condition should be dismissed with prejudice.

19                  **f. Neven, Morrow, Bean and Burson and Due Process**

20   Plaintiff alleges that Neven, Morrow, Bean and Burson knew Plaintiff was innocent of

21   the charges, but found him guilty anyway. (ECF No. 116 at 8.)

22   These allegations of a due process violation by these defendants were dismissed in

23   connection with the initial motion to dismiss/motion for summary judgment, and it was

24   confirmed in the order granting Plaintiff leave to amend that this claim would not proceed in the

25   amended complaint.

26             **g. Baker, Byrne, Neven, Nash and Baca-Denial of Transfer to Another Prison**

27   Plaintiff then claims he was denied his request to be sent to another prison by Baker,

28   Byrne, Neven, Nash and Baca. (ECF No. 116 at 9.)

1   This allegation was not specifically addressed in the screening of the original or amended

2   complaint, but again the error is harmless because Plaintiff does not state a cognizable claim for

3   relief, as there is no right to be placed in any particular facility within a state's prison system. *See*

4   *Meachum v. Fano*, 427 U.S. 215, 223-24 (1976).

5   **h. Baker, Nash, Carpenter, Neven, Baca, Cox, Morrow & One-on-One**

6   **Mental Health Sessions**

7   Plaintiff avers that Baker, Nash, Carpenter, Neven, Baca, Cox and Morrow violated his

8   Eighth Amendment rights when they denied his requests for one-on-one mental health sessions

9   on the basis that the facility was short-staffed. (ECF No. 116 at 9.)

10   The screening order and order granting Plaintiff leave to amend his complaint did not

11   specifically discuss this allegation.

12   First, the amended complaint does not address how denying a request for one-on-one

13   counseling sessions rose to the level of deliberate indifference: that defendants knew of and

14   disregarded an excessive risk to Plaintiff's health. *See Farmer v. Brennan*, 511 U.S. 825, 837

15   (1994).

16   Second, Plaintiff's opposition to the motion for summary judgment before the court

17   directly contradicts this allegation. The evidence Plaintiff submitted with his opposition reveals

18   that when Plaintiff sent a kite on April 2, 2013, requesting psychiatric care and one-on-one

19   counseling, he was advised that when he saw the psychologist he denied having mental health

20   issues and was re-classified with no mental health classification. (ECF No. 139 at 187.) The

21   responder advised him that he would nevertheless be scheduled to see the provider. (*Id*.) Records

22   submitted by Defendants indicate Plaintiff was seen by the psychiatrist on March 13, 2012. (ECF

23   No. 142-1 at 2.)

24   Plaintiff sent another kite on November 11, 2013, asking for one-on-one mental health

25   sessions, and was again advised that he would be scheduled for a one-on-one session as soon as

26   possible, in two to four weeks. (ECF No. 139 at 188.) It does not appear that any of these kites

27   were directed to or responded by any of these defendants, and in any event, those who received

28   his requests indicated he would be scheduled for one-on-one sessions. Therefore, it is

recommended that to the extent the amended complaint includes an Eighth Amendment claim against Baker, Nash, Carpenter, Neven, Baca, Cox and Morrow based on the allegation that they denied his requests for one-on-one counseling sessions, summary judgment should be granted in their favor.

### i. Supervisory Liability Against Neven, Cox, Nash, Baca, Keast and Carpenter

Finally, the amended complaint, like the original complaint, contains a brief allegation that Neven and Cox created an atmosphere, custom and practice at HDSP which allowed Plaintiff to be assaulted on January 1, 2012. (ECF No. 116 at 9.) In an apparent effort to support this allegation, Plaintiff then mentions: an incident in April 18, 2010, where Correctional Officer J. Miller slammed his head inside a heavy metal cell door causing him injury; an incident in March 2010, where he was written up for participating in Ramadan; that on August 10, 2010, Correctional Officer Schaff promised to kill Plaintiff for being a Muslim; and the confiscation of his clock radio in 2011 by Correctional Starling, pursuant to an order by Nash. (*Id*.) He also avers that Neven created a policy of correctional officer brutality against inmates at HDSP, where officers would not report other officers; and that Cox was informed of this. (*Id*. at 9-10.) The court will also address here the brief allegations of the amended complaint concerning liability of Nash, Baca, Keast and Carpenter.

"'Under section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability.'" *Snow v. McDaniel*, 681 F.3d 978, 989 (9th Cir. 2012) (en banc) (quoting *Hansen v. Black*, 885 F.2d 642, 645-46 (9th Cir. 1989)). "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Id*. (quoting *Hansen*, 885 F.2d at 646).

The causal connection can include: "1) [the supervisor's] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) conduct that showed a reckless or callous indifference to the rights of others." *Lemire v. Cal. Dep't of Corr.*, 726 F.3d 1062, 1085 (9th Cir.

1    2013) (citations and internal quotation marks omitted). "The requisite causal connection can be

2    established by setting in motion a series of acts by others, or by knowingly refusing to terminate

3    a series of acts by others, which the supervisor knew or should have known would cause others

4    to inflict a constitutional injury." *Id.* (citing *Starr v. Baca*, 652 F.3d 1202, 1207-08 (9th Cir.

5    2011), *cert. denied*, 132 S.Ct. 2101 (Apr. 30, 2012)) (internal quotation marks omitted).

6            In addition, "[s]upervisory liability exists even without overt personal participation in the

7    offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a

8    repudiation of constitutional rights' and is 'the moving force of a constitutional violation.'"

9    *Crowley v. Bannister,* 734 F.3d 967, 977 (9th Cir. 2013) (quoting *Hansen*, 885 F.2d at 646)

10   (internal quotation marks omitted).

11           While the screening order and the order granting Plaintiff leave to amend did not discuss

12   the brief allegations against Neven and Cox in detail, neither the order screening the original

13   complaint nor the order granting him leave to amend permitted Plaintiff to proceed with any

14   claim against Neven or Cox based on these allegations. The court will expand on that conclusion

15   now.

16           Essentially, Plaintiff alleges a supervisory liability claim against Cox and Neven to hold

17   them responsible for the alleged assaults he endured on January 1, 2012, based on the averment

18   that HDSP's Warden Neven created a custom of brutality against inmates, and that Cox was

19   informed of this custom before Plaintiff was assaulted. (ECF No. 7 at 17.)

20           The threadbare allegations that Neven created an environment at HDSP that condoned

21   violence and that Cox knew about it, without any *factual* allegations about how Neven did this,

22   how Cox knew about it, and importantly, how this caused Plaintiff to be assaulted in January

23   2012, are insufficient.

24           Plaintiff's references in the amended complaint to various incidents that occurred in 2010

25   and 2011 involving other officers include no allegations that connect those incidents to Neven or

26   Cox.

27

28

1    While a plaintiff would normally be given leave to amend to try to cure such deficiencies,

2    Plaintiff tried to assert this supervisory claim in the original complaint, but was not permitted to

3    proceed, and did not expand on his allegations in the amended complaint.

4    Moreover, Plaintiff addresses these allegations in his opposition to the motion for

5    summary judgment, and demonstrates that granting leave to amend at this juncture would be

6    futile.

7    To support the allegations against Neven and Cox, Plaintiff submitted the following with

8    his opposition to Defendants' dispositive motion: a vague citation to news stories in Nevada

9    regarding Nevada prisons leading the country in inmate shootings; a statement that Cox was

10   forced to resign in 2015 after an inmate was shot to death by HDSP guards for fighting; and 2011

11   letters from an organization called Nevada Cure that referenced a claim by a young ESP prisoner

12   of inhumane conditions and treatment, as well as a request by Nevada Cure to NDOC inmates

13   for information supporting a claim that NDOC prisoners were being subject to abuse. (ECF No.

14   139 at 70, 172-175.)

15   The evidence Plaintiff has submitted to support the claims against Neven and Cox is

16   simply too tenuous to establish any policy, custom or practice created by Neven at HDSP, or that

17   Cox had any knowledge about the alleged conditions at HDSP, and that this caused Plaintiff to

18   be assaulted in January 2012. The vague references to news stories about shootings at NDOC

19   and Cox's departure from NDOC in connection with a 2015 shooting are not enough to connect

20   Cox to Plaintiff's alleged assault in January 2012. The letters from Nevada Cure similarly fail to

21   establish any connection between Cox and Neven and the alleged incidents of excessive force in

22   January 2012. The letters simply reference claims of abusive conduct, but do nothing to

23   substantiate those claims. For these reasons, it is recommended that the supervisory liability

24   claims against Neven and Cox be dismissed with prejudice.

25   The court will now address the supervisory liability claims aimed at Nash, Baca, Keast

26   and Carpenter.

27   Insofar as the amended complaint predicates these defendants' liability on the denial of

28   grievances concerning an Eighth Amendment excessive force claim, the court concludes that this

1    cannot serve as a basis for supervisory liability under these circumstances. The responses of

2    Defendants to grievances concerning an alleged incident of excessive force could not have

3    contributed to the use of excessive force, as the alleged excessive force had already taken place,

4    meaning that the Defendants could not have personally participated in the violation. In addition,

5    the record is devoid of evidence that the Defendants played a role in their subordinates' training

6    that contributed to the underlying constitutional violation or implemented a policy that itself was

7    a repudiation of the Constitution.

8        To the extent Plaintiff's supervisory liability claim against Carpenter and Keast is based

9    on the allegation that they responded to grievances concerning Dr. Koehn's and Dr. Rivas' denial

10   of a request for a cane, the court concludes, *infra*, that summary judgment should be granted with

11   respect to the underlying Eighth Amendment claim. Moreover, Carpenter was employed as a

12   nurse (ECF No. 131 at 19), and did not exercise supervisory authority over Dr. Koehn or

13   Dr. Rivas. Therefore, there is no basis for supervisory liability against these defendants.

14       As a result, the supervisory liability claims against these defendants should be dismissed

15   with prejudice.

16       Notably, the amended complaint did not carry forward the equal protection claim against

17   Holliday from the original complaint.

18       **2. Defendants**

19       The court will now address the status of the parties at this juncture, keeping in mind the

20   preceding conclusion that the amended complaint only states colorable claims against the

21   following defendants:  Collette, Hageman, Osbun, Holliday, Sevier, Baker, Dr. Koehn, and

22   Dr. Rivas.

23       The Office of the Attorney General accepted service of the amended complaint on behalf

24   of Baker, Collette, Holliday, Dr. Koehn, and Evander Rivas (as well as Baca, Carpenter, Keast,

25   and Nash, who the court has recommended should be dismissed). (ECF No. 117.) It did not

26   accept service on behalf of Sevier, as he is deceased. (ECF No. 117, ECF No. 117-1.) It also did

27   not accept service on behalf of Osbun or Hageman as they are former employees, but filed their

28

1   last known addresses under seal. (ECF Nos. 117, 118.) To date, Plaintiff has not served Osbun,

2   Hageman, or Sevier's successor-in-interest.

3          The court recommends that Osbun and Hageman be dismissed from this action without

4   prejudice pursuant to Federal Rule of Civil Procedure 4(m).

5          Rule 25 of the Federal Rules of Civil Procedure, governing the substitution of parties,

6   provides in relevant part:

7          If a party dies and the claim is not extinguished, the court may order substitution
           of the proper party. A motion for substitution may be made by any party or by the
8          decedent's successor or representative. If the motion is not made within 90 days
           after service of a statement noting the death, the action by or against the decedent
9          must be dismissed.

10  Fed. R. Civ. P. 25(a)(1).

11         Defense counsel filed a notice of Sevier's death on September 8, 2015, which was served

12  on Plaintiff. (ECF No. 117.) It has been well over ninety days since this filing, and Plaintiff has

13  not filed a motion for substitution and service of Sevier's successor-in-interest or representative.

14  Accordingly, the court recommends that Sevier be dismissed with prejudice as a defendant to

15  this action.

16         Defendants' counsel points out that in becoming acquainted with this case in preparing to

17  brief this motion, it was discovered that the wrong defendant Rivas has been involved in this

18  case for some time. (ECF No. 131 at 5 n. 5.) Counsel points out that Evander Rivas, on whose

19  behalf service was accepted by the Attorney General, is a correctional officer at HDSP. (ECF

20  No. 131-10 at 9.) The defendant Rivas referred to in the pleadings was a physician at ESP.

21  Therefore, counsel requests that Evander Rivas be dismissed from the action. (*Id*.) Dr. David

22  Rivas no longer worked at ESP at the time the screening order issued. (*Id*.) Counsel states that

23  while the court may allow Plaintiff the opportunity to serve the correct defendant Rivas, the

24  Attorney General would not accept representation on his behalf unless contacted by him after he

25  was properly served. (*Id*.)

26         The court accepts counsel's representation that it accepted service on behalf of the wrong

27  defendant Rivas, and that Dr. David Rivas is no longer employed by ESP; therefore, the court

28  recommends that Evander Rivas be dismissed from this action with prejudice. As a result of the

court's finding, *infra*, that summary judgment should be granted in Defendants' favor with respect to the two claims in which Dr. Rivas is named, it is not necessary to grant Plaintiff leave to serve Dr. Rivas.

The court will now address Defendants' motion for summary judgment with respect to the remaining claims and defendants.

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

1   *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

2   the outcome of the suit under the governing law will properly preclude the entry of summary

3   judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

4         In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

5   "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

6   come forward with evidence which would entitle it to a directed verdict if the evidence went

7   uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

8   the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

9   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

10   omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

11   defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

12   an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party

13   failed to make a showing sufficient to establish an element essential to that party's case on which

14   that party will bear the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-

15   25 (1986).

16         If the moving party satisfies its initial burden, the burden shifts to the opposing party to

17   establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

18   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of

19   material fact, the opposing party need not establish a genuine dispute of material fact

20   conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a

21   jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*

22   *v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation

23   omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

24   non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith*

25   *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid

26   summary judgment by relying solely on conclusory allegations that are unsupported by factual

27   data. *Id*. Instead, the opposition must go  beyond the assertions and allegations of the pleadings

28

1  and set forth specific facts by producing competent evidence that shows a genuine dispute of

2  material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address
> another party's assertion of fact as required by Rule 56(c), the court may: (1) give
> an opportunity to properly support or address the fact; (2) consider the fact
> undisputed for purposes of the motion; (3) grant summary judgment if the motion
> and supporting materials—including the facts considered undisputed—show that
> the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine

the truth but to determine whether there is a genuine dispute of material fact for trial. *See*

*Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all

justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is

merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249-

50 (citations omitted).

### III. DISCUSSION

**A. Preliminary Matters**

As Plaintiff has done in other filings in these consolidated cases, he asserts that he was

not able to review all of his medical records. (*See* ECF No. 139 at 6, 61.) As the court

commented in connection with the dispositive motion filed in case No. 3:14-cv-00213-MMD-

WGC, Plaintiff is a seasoned pro se litigant who is well aware of NDOC's policy of kiting the

warden to review medical records, and was specifically advised that he could review the records

filed under seal by submitting a kite. (*See* ECF No. 138 at 7; ECF No. 130 at 3.)

In addition, he states that Exhibits J, K, L, and M to Defendants' motion are blacked out

so that he could not review them. (ECF No. 139 at 61.) These exhibits contain NDOC employee

listings, with the duty location and title of employees, and Defendants blocked out the names of

employees who are not defendants to this action; therefore, there is no issue with the redaction.

(*See* ECF Nos. 131-10, 131-11, 131-12, and 131-13.)

He also mentions, as he has in other filings, that he lacks legal knowledge and training

and was not appointed counsel. As the court has previously advised Plaintiff, this is the

1    predicament of almost every pro se inmate litigant. The court has found Plaintiff does not meet

2    the standard for appointment of counsel; therefore, he is tasked with doing his best under the

3    circumstances. (ECF No. 40.) The court finds, as it has in the past, that Plaintiff has been able to

4    sufficiently present his claims and arguments throughout this litigation.

5    **B**. **Eighth Amendment Excessive Force Against Collette**

6           Plaintiff contends that he was assaulted by Collette on January 1, 2012, at HDSP.  He

7    claims that after he lay down on the ground following the assault by Nguyen, Collette came up

8    and started kneeing him in the lower back, and then he was dragged across the yard and slammed

9    onto the medical cart, and suffered injuries including severe back pain. (ECF No. 116 at 4-5;

10    ECF No. 139 at 7, 8, 62-63, 66.) He asserts that following this incident he was driven to the

11    HDSP hospital and was given pain pills for the injuries caused by Collette. (ECF NO. 139 at 7, 8,

12    67.)

13           Plaintiff contends that the officers used force maliciously and sadistically to cause him

14    pain, and caused a severe lower back injury. (ECF No. 139 at 4, 5, 70.) He asserts that he did not

15    disobey Nguyen or Collette's orders prior to being attacked, and instead he was not disorderly or

16    resisting, but was on the ground being submissive. (ECF No. 139 at 8, 9, 61-62.)

17           A grievance dated January 1, 2012, reported the incident involving Nguyen, and

18    mentioned that correctional officers jumped on his back and started violently shoving their knees

19    into his back, threw him around, and then threw him onto the medical cart. (ECF No. 139 at 103-

20    106.) Another grievance dated in April of 2012, mentioned that officers kneed him in the back on

21    January 1, 2012, and that he suffered injuries. (ECF No. 139 at 111-114.)

22           According to Defendants, on January 1, 2012, Correctional Officer Nguyen had ordered

23    Plaintiff to accompany him to the sally port, and Plaintiff refused and fled. (ECF No. 131 at 9-

24    10; Ex. A, ECF No. 131-1.) The officers present were: Sergeant Giancola, Sergeant Ferber,

25    Correctional Officers Palalay, Sevier, Ortiz, Nguyen, Osbun, Hageman, and Collette. (*Id*.) The

26    incident was caught on video. (ECF No. 131 at 10; Ex. B (filed manually).) They maintain that

27    during his flight, Plaintiff ran into Officer Collette, who was in the hallway outside of the unit.

28    (ECF No. 131 at 14; Ex. A, ECF No. 131-1.) Collette ordered Plaintiff to get on the ground, but

1   he disregarded the order and ran from officers from the tier out to the yard. (*Id.*) Upon exiting the

2   unit, Collette witnessed Hageman, Osbun and Nguyen restrain Plaintiff, and Collette proceeded

3   to unit control to obtain leg restraints. (*Id.*)

4         Defendants go on to assert that medical staff arrived on the medical cart as Plaintiff was

5   subdued on the ground. (*Id*; Ex. C, ECF No. 134-1 at 17.) Plaintiff was then placed on the

6   medical cart. (ECF No. 131 at 10.) Plaintiff was evaluated by medical. (ECF No. 131 at 10; Ex.

7   C, ECF No. 134-1 at 17.)  Medical noted no head injury, bleeding, or observable bruising,

8   though there was possible back pain. (*Id.*; ECF No. 134-1 at 10, 17.) Plaintiff could ambulate

9   without issue and was prescribed pain medication and was released. (ECF No. 131 at 10; Ex. C,

10   ECF No. 134-1 at 9, 17.) On January 31, 2012, Plaintiff was evaluated by Dr. Aranas who noted

11   Plaintiff had no complaints regarding his legs, no distress, good strength, and found no physical

12   injuries. (ECF No. 131 at 10; Ex. C, ECF No. 134-1 at 9.)

13         Defendants claim that Plaintiff's allegation that Osbun, Hageman and Collette assaulted

14   him is belied by the video.

15         Plaintiff states that he was not able to review the altercation between him and Nguyen

16   and with Collette, as he was told the prison's video system was incompatible. (ECF No. 139 at 5,

17   60.) He concedes he has seen the footage from the handheld camera, but states that this was

18   taken after the Nguyen and Collette attacks, so it is not relevant. (ECF No. 139 at 60, 61.) He

19   also contends that Defendants admit they discarded the relevant video footage captured by the

20   yard's stationery cameras where Plaintiff was attacked by Collette. (ECF No. 139 at 5, 61.)

21         The Eighth Amendment prohibits the imposition of cruel and unusual punishment.  U.S.

22   Const.  amend.  VIII. It "embodies broad and idealistic concepts of dignity, civilized standards,

23   humanity, and decency." *Estelle v.  Gamble*, 429 U.S. 97, 102 (1976) (citation and internal

24   quotations omitted). The "unnecessary and wanton infliction of pain...constitutes cruel and

25   unusual punishment forbidden by the Eighth Amendment." *Id.* (quoting *Whitley v.  Albers*, 475

26   U.S. 312, 319 (1986)).

27         "[W]henever prison officials stand accused of using excessive physical force in violation

28   of the [Eighth Amendment], the core judicial inquiry is...whether force was applied in a good-

1    faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."

2    *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *see also Whitley*, 475 U.S. at 320-21; *Watts v.*

3    *McKinney*, 394 F.3d 710, 711 (9th Cir.  2005); *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th

4    Cir.  2003). "When prison officials maliciously and sadistically use force to cause harm,

5    contemporary standards of decency are always violated." *Hudson*, 503 U.S. at 9 (citing *Whitley*,

6    475 U.S. at 327).

7         In determining whether the use of force is excessive, courts are instructed to examine

8    "the extent of the injury suffered by an inmate[;]" "the need for application of force, the

9    relationship between that need and the amount of force used, the threat 'reasonably perceived by

10   the responsible officials,' and 'any efforts made to temper the severity of the forceful response.'"

11   *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 321).

12        An inmate need not establish serious injury; however, the lack of serious injury is

13   relevant to the Eighth Amendment inquiry. *See Wilkins v.  Gaddy*, 130 S.Ct.  1175, 1178 (2010).

14   "The extent of injury may also provide some indication of the amount of force applied." *Id*.

15        That being said, not "every malevolent touch by a prison guard gives rise to a federal

16   cause of action...The Eighth Amendment's prohibition of 'cruel and unusual' punishments

17   necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided

18   that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S.

19   at 9-10 (quoting *Whitley*, 475 U.S. at 327); *see also Wilkins*, 130 S.Ct. 1178 ("An inmate who

20   complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a

21   valid excessive force claim." (citing *Hudson*, 503 U.S. at 9)). "Injury and force, however, are

22   only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is

23   gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely

24   because he has the good fortune to escape without serious injury." *Wilkins*, 130 S.Ct. at 1178-79.

25   If the nature of the injuries is more than *de minimis*, but still "relatively modest," the inmate's

26   damages will likely be limited. *See id*. at 1180.

27         The parties have differing versions of the way events transpired on January 1, 2012.

28   Plaintiff claims that he ran away from Nguyen, who had been assaulting him, and then he lay

1    down on the ground and was approached by Collette and the other officers, who began kneeing

2    him violently in the back, causing him severe back pain for which he eventually received pain

3    medication. Collette, on the other hand, asserts that Plaintiff was fleeing from Nguyen and

4    disregarded orders to stop, had to be chased from the tier onto the yard, and was taken to the

5    ground, and carefully placed on the medical cart.

6         The court has reviewed the video submitted manually by Defendants as Exhibit B. The

7    disc contains files referred to by Defendants as a surveillance video and a medical video.

8         The surveillance video clips appear to show the interaction between Plaintiff and Nguyen

9    on the tier from different camera views. The court observed a discussion took place between an

10   inmate (whom the court presumes is Plaintiff) and a correctional officer (whom the court

11   presumes is Nguyen). Nguyen points down the hall, places his hand on the inmate's shoulder,

12   and then the video cuts to another camera. This view shows a correctional officer standing in the

13   middle of a room with an entrance to various hallways (possibly the sally port), when the same

14   inmate and correctional officer pictured in the first camera view come running through the room.

15   This is then shown from a different camera angle in the same room. Additional camera angles

16   then show the two officers depicted in the scenes, followed by others, begin to chase the inmate

17   down a hallway, out a door, and out onto the yard. That is where the surveillance video ends.

18        The medical video file, contains a clip taken by a hand-held camera (as opposed to the

19   stationery surveillance cameras in the prior video clip) which shows Plaintiff on the ground,

20   surrounded by correctional officers.  A correctional officer (presumably Nguyen) was

21   interviewed, but the audio is difficult to hear, and is largely irrelevant to the remaining claim

22   concerning Collette. The camera goes back outside to where Plaintiff is being restrained on the

23   ground, and medical was permitted to examine him outside. Plaintiff was lifted up and placed

24   against the fence for medical staff to examine him. The medical staff asked him questions, but

25   the questions and responses are difficult to decipher. The video reveals that Plaintiff's back was

26   examined, and Plaintiff indicated he had an injury to the lower back area. Plaintiff was then

27   escorted to the medical cart and was placed on the cart without incident. The medical staff

28

1    member indicated Plaintiff was going to be taken to the infirmary to have his back examined

2    further.

3           The videos do not show Plaintiff either getting on the ground on the yard or being taken

4    to the ground.[3] Instead, the video shows the interaction with Nguyen in the surveillance video

5    which ends with Plaintiff running outside. The medical video then commences when Plaintiff is

6    already on the ground. This is consistent with Plaintiff 's contention that the video footage does

7    not reflect the portion of the incident involving Collette. Plaintiff did propound a request for

8    production asking for any and all camera footage depicting the interaction between Collette and

9    Plaintiff from the cameras on the yard (and not the hand-held cameras), starting from the point

10   when he got down on the ground. (ECF No. 139 at 214, Request No. 1.) Defendants responded

11   that no such footage was located. (*Id.*, Response to Request No. 1.)

12          Therefore, the video does not contradict Plaintiff's statements about the incident, as

13   Defendants suggest (other than the fact that he was thrown onto the medical cart), because the

14   video apparently does not show the interaction with Collette.

15          While Defendants imply Plaintiff suffered no harm after the alleged incident, the medical

16   records do reflect that Plaintiff complained of back pain, and while the medical report indicated

17   there were no extraneous signs of back injury, he was nevertheless given pain medication.

18          In sum, a genuine dispute of material fact exists as to whether force was used and

19   whether Plaintiff suffered injury as a result of the interaction between Plaintiff and Collette on

20   January 1, 2012. Therefore, Collette's motion should be denied with respect to this claim.

21   **C. Excessive Force against Holliday**

22          Plaintiff claims that Holliday escorted him from the HDSP infirmary (following the

23   incidents with Nguyen and Collette) to the segregation unit and ordered him to walk into the cell,

24   and Plaintiff complied. (ECF No. 139 at 7, 67.) He states that Holliday then started punching

25   Plaintiff in the right jaw, causing Plaintiff to fall to the floor. (ECF No. 139 at 7, 67.) He

26

27   _____

28          [3] Incidentally, Collette's discovery responses acknowledge that when Plaintiff ran outside he lay on the
     ground before any officer reached him. (ECF No. 139 at 231.)

1    contends that he suffered a bruised and swollen face, bleeding mouth, dizziness, three loose

2    teeth, and felt like his jaw was broken. (*Id.*)

3         According to Holliday, Plaintiff's medical records are devoid of any mention of injuries

4    consistent with Plaintiff's claims that Holliday punched him causing severe bleeding, a broken

5    jaw, loose teeth and swelling. (ECF No. 131 at 15.) Plaintiff submitted a medical kite the next

6    day, on January 2, 2012, complaining only of shoulder pain, attributed to a fire that occurred in

7    December. (*Id.*; Ex. G, ECF No. 134-4.) Ten days later, on January 12, 2012, he complained of

8    back and neck pain due to the actions of Nguyen but failed to mention Holliday at all. (*Id.*) Nor

9    did he mention Holliday in kites submitted on January 22 and 25, 2012. (*Id.*) He did not discuss

10   Holliday in the grievance that discussed the events of that day. (ECF No. 131 at 16.) Finally,

11   Holliday maintains he did not hit Plaintiff. (ECF No. 131 at 16; Ex. I, ECF No. 131-9 at 4.)

12        Plaintiff counters that the medical records do not note the facial injuries caused by

13   Holliday because Holliday had refused to get him medical treatment. (ECF No. 139 at 8.) He

14   claims that he reported the injuries Holliday caused him in a kite written on January 2, 2012,

15   where he requested medical attention for the pain in his jaw, and that he grieved the issue in

16   February after he was transferred out of HDSP. (ECF No. 139 at 7, 9, 185.)

17        Once again, a genuine dispute of material fact exists as to whether Holliday used force

18   against Plaintiff on January 1, 2012, and whether Plaintiff suffered injuries as a result of the use

19   of force. Plaintiff maintains that Holliday needlessly punched him in the jaw, causing injuries,

20   while Holliday contests using force. While there are no medical records reflecting these injuries

21   around the time the incident allegedly occurred, Plaintiff explains that this is because Holliday

22   denied his requests for medical care that day, and he discussed the issue later on. A kite he sent

23   to medical dated January 2, 2012, asserts that after he came from medical following the attacks

24   by correctional officers, Holliday punched him in the jaw multiple times causing his mouth to

25   bleed, loosened his teeth, and caused his jaw to swell. (ECF No. 139 at 185.) He requested pain

26   medication for his jaw. (*Id.*) Defendants contest the authenticity of this kite, but that is an issue to

27   be resolved by the fact-finder.

28

1    As a result of these disputed facts, the court recommends that the motion for summary

2    judgment be denied with respect to this claim.

3    **D. Denial of Medical Care- Holliday**

4    A prisoner can establish an Eighth Amendment violation arising from deficient medical

5    care if he can prove that prison officials were deliberately indifferent to a serious medical need.

6    *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A claim for deliberate indifference involves the

7    examination of two elements: "the seriousness of the prisoner's medical need and the nature of

8    the defendant's response to that need." *McGuckin*, 974 F.2d at 1059; *see also Akhtar v. Mesa*,

9    698 F.3d 1202, 1213 (9th Cir. 2012) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

10   2006)). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

11   further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d

12   at 1059 (citing *Estelle*, 429 U.S. at 104);  *see also Akhtar*, 698 F.3d at 1213.

13   If the medical need is "serious," the plaintiff must show that the defendant acted with

14   deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Akhtar*, 698 F.3d at 1213 (citation

15   omitted). "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051,

16   1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or

17   even gross negligence. *Id*. Inadvertence, by itself, is insufficient to establish a cause of action

18   under section 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present

19   when a prison official "knows of and disregards an excessive risk to inmate health or safety; the

20   official must both be aware of the facts from which the inference could be drawn that a

21   substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*,

22   511 U.S. 825, 837 (1994); *see also Akhtar*, 698 F.3d at 1213 (citation omitted).

23   Deliberate indifference exists when a prison official "den[ies], delay[s] or intentionally

24   interfere[s] with medical treatment, or it may be shown by the way in which prison officials

25   provide medical care." *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal

26   quotation marks and citation omitted).

27

28

1     Plaintiff contends that after Holliday hit him in the jaw, Holliday denied his request for

2     medical care. (ECF No. 116 at 5; ECF No. 139 at 7.) He claims that Holliday said: "No! I bet

3     you' ass won't file another grievance." (*Id*.; ECF No. 139 at 67.)

4     Holliday contests that the alleged assault incident occurred; therefore, he disputes that he

5     denied Plaintiff medical care.

6     There is another genuine dispute of material fact as to whether Holliday denied Plaintiff's

7     request for medical attention on January 1, 2012. While Holliday  questions the authenticity of

8     the January 2, 2012 kite because there is no date stamp, this is again an issue for the fact-finder.

9     In any event, viewing the kite and Plaintiff's statement under penalty of perjury that Holliday

10    denied his request for care in the light most favorable to Plaintiff, it tends to corroborate

11    Plaintiff's claim that he did not receive medical care on January 1, 2012. Therefore, the motion

12    for summary judgment should be denied as to this claim.

13    **E. Retaliation-Holliday**

14    "Section 1983 provides a cause of action for prison inmates whose constitutionally

15    protected activity has resulted in retaliatory action by prison officials." *Jones v.  Williams*, 791

16    F.3d 1023, 1035 (9th Cir. 2015); *Pratt v.  Rowland*, 65 F.3d 802, 806 (9th Cir.  1995).  Such a

17    claim consists of five elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2)
> because of (3) that prisoner's protected conduct, and that such action (4) chilled
> the inmate's exercise of his First Amendment rights, and (5) the action did not
> reasonably advance a legitimate correctional goal.

*Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

21    "The First Amendment guarantees a prisoner a right to seek redress of grievances from

22    prison authorities as well as a right of meaningful access to the courts." *Id.* (citing *Bradley v.*

23    *Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)).

24    Plaintiff states that Holliday threatened to kill him if he filed a grievance after Holliday

25    had ascertained that Nguyen had attacked Plaintiff because Plaintiff tried to obtain a grievance.

26    (ECF No. 116 at 11; ECF No. 139 at 6, 7, 67.) He states that the adverse action of assaulting and

27    threatening Plaintiff was directly related to Plaintiff's history of filing grievance and requesting a

28    grievance on January 1, 2012. (ECF No. 139 at 15.) He claims this had a chilling effect on him,

1   and made him prolong filing a grievance against Holliday until he left HDSP, and that Holliday's

2   actions were not reasonably related to any legitimate penological interest. (*Id.*) He submitted a

3   grievance where he reported Holliday threatening to kill him on January 1, 2012, if he tried to

4   get another grievance. (ECF No. 139 at 103-106.)

5        Holliday contends there is no evidence Holiday knew Plaintiff requested a grievance

6   because Holliday was not at the scene when the events occurred around 3:00 p.m. on January 1,

7   2012. (ECF NO. 131 at 15.) He asserts that Plaintiff filed his grievance at 11 p.m., after the

8   alleged events occurred with Holliday; therefore, Holliday could not have known of his filing the

9   grievance. (ECF No. 131 at 15; Ex. H, ECF No. 131-8 at 2.)

10       Holliday asserts that no record puts him on the scene when Plaintiff was involved in the

11  alleged altercations with Nguyen and Collette so that he would know Plaintiff was attempting to

12  get a grievance. (ECF No. 140 at 6.) He argues that Plaintiff offers no evidence to rebut this;

13  however, Plaintiff does offer evidence to rebut this- his own sworn statement that Holliday was

14  there and threatened him if he filed another grievance, and that Holliday later assaulted him and

15  denied him medical care, and said: "No! I bet you' ass won't file another grievance." (*Id.*; ECF

16  No. 139 at 67.)

17       Plaintiff's sworn statement is sufficient to create a genuine dispute of material fact as to

18  whether Holliday in fact threatened Plaintiff concerning the filing of grievances. Therefore, the

19  motion for summary judgment should be denied as to this claim.

20  **F. Denial of Medical Care- Baker, Koehn, Rivas & Conditions- Exercise & Shower and**

21  **Washing with Toilet Water**

22       Plaintiff claims, as he did in consolidated case 3:14-cv-00213-RCJ-WGC, that Baker, Dr.

23  Koehn, and Dr. Rivas denied him medical care when they denied him a cane. He further avers

24  that not having a cane has precluded him from exercising of taking a shower, such that he had to

25  use toilet water to wash up.

26       The court has addressed these claims in detail, first in connection with Plaintiff's motion

27  for preliminary injunction (Report & Recommendation at ECF No. 89, adopted by District Judge

28

1  Du in ECF No. 94), and then in connection with the parties' motion for summary judgment in

2  3:14-cv-00213-RCJ-WGC (Report and Recommendation at ECF No. 138).

3        In connection with the motion for preliminary injunction, the court reviewed all of the

4  relevant medical evidence, and held a hearing where testimony was given by Plaintiff and

5  Dr. Koehn. (ECF No. 89.) At that time, it was proposed that Plaintiff be referred to an outside

6  orthopedic specialist to render an opinion regarding Plaintiff's complaints of back and knee pain,

7  and whether he required the use of a cane or wheelchair. (*Id.*) Plaintiff was examined by Dr.

8  Joseph Walls, an orthopedic specialist employed by Tahoe Fracture and Orthopedic Medical

9  Clinic in Carson City, Nevada, on September 3, 2014. (ECF No. 89, citing ECF No. 71-1.)

10  Dr. Walls opined that Plaintiff's subjective complaints of back and knee pain were unsupported

11  by any objective finding, and that the best course of treatment was for Plaintiff to take ibuprofen

12  as needed for pain, but that he did not need a cane or wheelchair. (*Id.*) In the end, the

13  undersigned concluded, and District Judge Du adopted the conclusion, that Plaintiff did not

14  demonstrate a likelihood of success on the merits of his claim that his physicians were

15  deliberately indifferent to his serious medical needs when they denied his requests for a cane.

16  (ECF No. 89 at 13-14.) The court summarized Plaintiff's relevant medical records in detail,

17  including the most recent records submitted by Plaintiff. (*Id.* at 14-16.) The court found that

18  while Plaintiff disagreed with the course of treatment, and felt he should be provided with a cane

19  or wheelchair, there was no evidence that the course of treatment undertaken by Defendants was

20  medically unacceptable or chosen in conscious disregard of an excessive risk to Plaintiff's

21  health. (*Id.* at 16.)

22        The court confronted the issue again when the parties filed their motions for summary

23  judgment in 3:14-cv-00213-RCJ-WGC. The court again reviewed the relevant medical evidence,

24  and found again that Plaintiff presented a difference of opinion concerning the treatment

25  provided, *i.e.,* whether or not he should be issued a cane. (ECF No. 138 at 19-20.) The court

26  confirmed that it could not find the decision to deny Plaintiff a cane was medically unacceptable

27  under the circumstances when every single physician (including Dr. Koehn, Dr. Rivas, Dr.

28  Walls, and Dr. Mar) to evaluate Plaintiff reached the same conclusion-that a cane was not

1   medically indicated. (*Id.*) Plaintiff argued then, as he does now, that Dr. Walls was hand-picked

2   by Dr. Koehn to examine Plaintiff and was biased against him, but that statement is unsupported

3   by any evidence and ignores Dr. Wall's declaration that prior to the examination he was not

4   contacted by any NDOC physician or staff other than to schedule the appointment. (*Id.* at 20.)

5   Plaintiff did not file an objection to the report and recommendation, and it remains pending

6   before District Judge Du.

7         "The law of the case doctrine, a judicial invention, aims to promote the efficient

8   operation of the courts." *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012)

9   (citation omitted). "It generally precludes a court from reconsidering an issue decided previously

10  by the same court or by a higher court in the identical case. The issue in question must have been

11  decided explicitly or by necessary implication in the previous disposition." *Id.* (citation omitted).

12  "Application of the law of the case is discretionary." *United States v. Jones*, 532 Fed.Appx. 769,

13  772 (9th Cir. 2013) (citing *Hall*, 697 F.3d at 1067 (9th Cir. 2012)). It also applies to interlocutory

14  orders that are not immediately appealable. *See United States v. Real Property Located at Incline*

15  *Village*, 976 F.Supp. 1327 (D. Nev. 1997).

16        The court exercises its discretion to apply the law of the case doctrine to these remaining

17  claims. The court explicitly addressed Plaintiff's Eighth Amendment claim concerning the denial

18  of a cane in 3:14-cv-00213-RCJ-WGC, which has been consolidated with this case. The claim

19  that these defendants denied Plaintiff's Eighth Amendment rights because he was unable to

20  shower or exercise as a result of their denial of a cane was implicitly decided in light of the

21  previous disposition. The conclusion was that all of Plaintiff's health care providers to examine

22  him determined that a cane was not medically necessary; therefore, they were not deliberately

23  indifferent in denying him a cane.

24        As such, the court recommends that Defendants' motion for summary judgment be

25  granted as to these claims.

26  ///

27  ///

28  ///

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order that:

(1) Defendants Osbun and Hageman a be **DISMISSED WITHOUT PREJUDICE** pursuant to Federal Rule of Civil Procedure 4(m);

(2) Defendant Sevier be **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Civil Procedure 25(a)(1);

(3) Defendant Evander Rivas be **DISMISSED WITH PREJUDICE**, as he is not the correct defendant;

(4) The Eighth Amendment claim that Neven and Morrow exacerbated Plaintiff's mental health condition be **DISMISSED WITH PREJUDICE**;

(5) The Eighth Amendment claim that Baker, Byrne, Neven, Nash and Baca refused Plaintiff's request to be sent to another prison should be **DISMISSED WITH PREJUDICE**;

(6) Defendants Baker, Nash, Carpenter, Neven, Baca, Cox and Morrow be **GRANTED** summary judgment as to Plaintiff's Eighth Amendment claim based on the allegation that they denied his requests for one-on-one counseling sessions;

(7) Defendants' motion be **DENIED** as to the Eighth Amendment excessive force claim against Collette;

(8) Defendants' motion be **DENIED** as to the Eighth Amendment excessive force claim against Holliday;

(9) Defendants' motion be **DENIED** as to the Eighth Amendment deliberate indifference to serious medical need claim against Holliday;

(10) Defendants' motion be **DENIED** as to the retaliation claim against Holliday;

(11) Defendants' motion be **GRANTED** as to the Eighth Amendment deliberate indifference to serious medical needs and conditions of confinement claims against Baker, Dr. Koehn and Dr. Rivas;

(12) Defendants' motion be **GRANTED** as to the supervisory liability claims against Nash, Baca, Neven, Keast, Cox and Carpenter.

In sum, the court is recommending that this action proceed with respect to the following claims and defendants only: (1) the Eighth Amendment excessive force claim against Collette; (2) the Eighth Amendment excessive force claim against Holliday; (3) the Eighth Amendment deliberate indifference to serious medical need claim against Holliday; and (4) the retaliation claim against Holliday.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: July 18, 2016.

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE